# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **MARK HEIMKES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIV. ACT. NO. 1:22-cv-448-TFM-M |
| | ) |
| **FAIRHOPE MOTORCOACH RESORT** | ) |
| **CONDOMINIUM OWNERS** | ) |
| **ASSOCIATION, INC.,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Preliminary Injunction.[1] *See* Doc. 2. Plaintiff requests the Court enter a preliminary injunction enjoining Defendant from engaging in any activity which would interfere with Plaintiff's use of his service animal and from issuing any new fines to Plaintiff and/or executing any lien or instituting any legal action to enforce said fines or liens. Defendant filed responses in opposition to the motion for preliminary injunction. *See* Docs. 6, 7, 13, 22, 28. The Court held an evidentiary hearing on the motion for preliminary injunction on December 12, 2022. The motion is ripe for the Court's review. After considering the motion, response, and evidence presented at the hearing, the Court **ORDERS** the motion for preliminary injunction is **DENIED**.

### I. PARTIES AND JURISDICTION

Plaintiff Mark Heimkes ("Plaintiff" or "Heimkes") is the owner and resident of Unit #44 at Fairhope Motorcoach Resort ("FMR"). Doc. 1 at 3. FMR is a 57-unit condominium resort

---

[1] Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction. Doc. 2. The Court previously denied Plaintiff's motion for temporary restraining order and only the motion for preliminary injunction remains pending. *See* Doc. 9.

located in Fairhope, Alabama. Defendant Fairhope Motorcoach Resort Condominium Association, Inc. ("Defendant" or "FMRCOA") handles the management and administration of FMR. *Id.* at 2. Plaintiff filed a complaint against Defendant pursuant to the Fair Housing Act, 42 U.S.C. §§ 3613 ("FHA") and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). *Id.* at 1-2. The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). The Court previously asked the parties to submit briefs on a potential *Rooker-Feldman* issue, in light of the previous state court litigation.[2] *See* Doc. 9 at 4. To the extent Plaintiff seeks relief for alleged acts of discrimination that occurred after the state court judgment, such claims are not barred by *Rooker-Feldman* and the Court has jurisdiction over those claims. *See Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 622 (11th Cir. 2015) (holding that the plaintiff's claims were not barred by *Rooker-Feldman* because the alleged discrimination occurred after the state judgment was rendered); *see also Salser v. Clarke County Sch. Dist.*, Civ. Act. No. 3:10-CV-17 (CDL), 2011 U.S. District LEXIS 1119, 2011 WL 56064, at *10 (M.D. Ga. Jan. 5, 2011) ("Each alleged denial of a reasonable accommodation is a discrete act 'that must be challenged as separate statutory discrimination and retaliation claims.'") (citing *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008)). The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## II.  PROCEDURAL AND FACTUAL BACKGROUND

### A.  State Court Litigation History

---

[2] *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1982). The Court also asked the parties to submit briefs regarding any potential res judicata and collateral estoppel issues. Those issues are affirmative defenses, however, and have no bearing on the question of jurisdiction.

The history of the litigation between Plaintiff and Defendant began in district court of Baldwin County, Alabama in June of 2021 when he filed a complaint with the Baldwin County District Court asserting the following claims: breach of covenant of quiet enjoyment, interference with a contractual relationship, intentional infliction of emotional distress, and discrimination under Ala. Code § 21-7-4, the Americans with Disabilities Act ("ADA"), and the Fair Housing Act of 1968 ("FHA"). *See* Doc. 7-1. Following oral argument on the parties' respective motions for summary judgment, the court entered an order stating that after considering the filings and arguments of all parties, the court "determines that there is no genuine issue of material fact as to the claims against these defendants and GRANTS the Motion for Summary Judgment. All claims against these Defendants are, therefore, DISMISSED with prejudice." Doc. 13-5. Plaintiff filed a notice of appeal to the Circuit Court of Baldwin County. Doc. 13-6. Then, however, Plaintiff filed a Motion to Deny Appeal for Lack of Subject Matter Jurisdiction, in which he argued that the claims asserted under the ADA and FHA were claims for declaratory judgment under Ala. Code. § 12-12-30(3) and the Baldwin County District Court did not have jurisdiction to hear claims for declaratory judgment. Doc. 13-7. Plaintiff made this argument despite the fact that Plaintiff's complaint specifically asserted that the court could award him actual and punitive damages, permanent injunction, and attorney's fees and costs under the ADA and FHA and was devoid of any request for declaratory judgment. Doc. 6-2.

The Baldwin County Circuit Court held oral argument on the Plaintiff's motion. It subsequently treated the motion as a motion to dismiss and entered an order allowing the plaintiff to dismiss his appeal with prejudice. Doc. 13-8. The court stated that the motion was granted in part, and there is no finding in the order that the Baldwin County District Court lacked subject matter jurisdiction. *Id.* Specifically, the court's order reads:

and HEIMKES JULIE is hereby GRANTED IN PART as follows:

Plaintiff voluntarily dismisses their case, with prejudice – GRANTED.

*Id.*  Plaintiff's voluntary dismissal concluded the state court litigation, and there has never been a finding by the state court system that the Baldwin County District Court did not have jurisdiction to decide Plaintiff's ADA and FHA claims.  Moreover, the voluntary dismissal resulted in the lower court's order becoming final.

**B.     Current Proceedings**

On November 9, 2022, Plaintiff filed his complaint with the Court.  Doc. 1.  That same day, Plaintiff filed a motion for temporary restraining order and preliminary injunction.  Doc. 2. Defendant filed a response in opposition to the motion for temporary restraining order.  Doc. 6, 7. On November 10, 2022, the Court denied Plaintiff's motion for temporary restraining order after holding a hearing on the matter.  *See* Docs. 8, 9.  At the Court's request, the parties submitted supplemental briefing on the motion for preliminary injunction and collateral issues, including res judicata, collateral estoppel, and *Rooker-Feldman*.  Docs. 12, 13, 14, 16.  On December 12, 2022, the Court held an evidentiary hearing on the motion for preliminary injunction.  At the Court's request, the parties submitted post-hearing supplemental briefs.  Docs. 22, 23.  The parties also submitted proposed findings of fact and conclusions of law.  Docs. 29, 30.  The motion for preliminary injunction is fully briefed and ripe for review.

### III.     STANDARD OF REVIEW

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated."  *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001) (quoting *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)).  The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court."  *Palmer v. Braun*,

287 F.3d 1325, 1329 (11th Cir. 2002) (citations omitted). The party seeking the preliminary injunction bears the burden of establishing its entitlement to relief. *Scott v. Roberts*, 612 F.3d 1279, 1289 (11th Cir. 2010).

To obtain a preliminary injunction, the moving party must establish the following prerequisites: "(1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015) (citing *Burk v. Augusta-Richmond Cnty.*, 365 F.3d 1247, 1262-63 (11th Cir. 2004)); *see also Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (stating same four requirements). "[A] preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." *GeorgiaCarry.Org*, 788 F.3d at 1322 (quoting *Suntrust Bank v. Houghton Mifflin Co.*, 252 F.3d 1165, 1166 (11th Cir. 2001)); *accord Café 207, Inc. v. St. Johns Cnty.*, 989 F.2d 1136, 1137 (11th Cir. 1993) ("A preliminary injunction is a drastic remedy and [the movant] bears the burden to clearly establish each of the four prerequisites."); *see also Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) ("[G]ranting a preliminary injunction is the exception rather than the rule" and movant must clearly carry the burden of persuasion.). The moving party's failure to demonstrate a single element may defeat the request regardless of the party's ability to establish any of the other elements. *See, e.g.*, *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (failure to show irreparable injury); *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) (failure to establish substantial likelihood of success on the merits).

## IV.   DISCUSSION AND ANALYSIS

Setting aside the issues of res judicata, collateral estoppel, and *Rooker-Feldman*, the only

inquiry before the Court at this stage of the proceedings is whether Plaintiff is entitled to a preliminary injunction enjoining Defendant from engaging in any activity which would threaten, interfere with, or otherwise jeopardize Plaintiff's right to use his service animal, Rex. The Court looks to the four elements: (1) a substantial likelihood of success on the merits; (2) that Plaintiff will suffer irreparable injury unless the injunction is issued; (3) that the threatened injury outweighs possible harm that the injunction may cause the opposing party; and (4) that the injunction would not disserve the public interest. All elements must be met or the request for an injunction fails.

Plaintiff argues that Defendant violated the ADA and FHA by denying his request for a reasonable accommodation and ordering him to either give up his service dog or keep his dog out of the Owner's Lodge and Pool area, all of which he is a proportional owner of. Docs. 2, 3. Defendant counters that Plaintiff never formally requested a reasonable accommodation and that Plaintiff's dog, Rex, is aggressive and therefore may be excluded under the ADA and FHA. *See* Doc. 6 at 1, 3; Doc. 13 at 13-14; Doc. 22 at 8. Additionally, Defendant argues that it is not subject to the ADA because it is not a place of public accommodation. Doc. 22 at 2.

As an initial matter, the Court notes that at times Plaintiff conflates his arguments under the ADA with his arguments under the FHA. However, the ADA and the FHA each provide a separate cause of action and, while similar, have separate legal standards. Accordingly, the Court addresses the claims under the ADA and the claims under the FHA each in turn.

**A. Plaintiff has not shown a substantial likelihood of success on the merits.**

    **i. ADA**

The ADA provides that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or

leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).  The ADA further provides, however, that:

> [n]othing in this title shall require an entity to permit an individual to participate in or benefit from the goods, services, facilities, privileges, advantages and accommodations of such entity where such individual poses a direct threat to the health or safety of others.  The term "direct threat" means a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures by the provision of auxiliary aids or services.

42 U.S.C. 12181(b)(3).  The Department of Justice provides additional guidance regarding service animals and the ADA on its website:

> Q23.  Can individuals with disabilities be refused access to a facility based solely on the breed of their service animal?
>
> A. No. A service animal may not be excluded based on assumptions or stereotypes about the animal's breed or how the animal might behave.  However, **if a particular service animal behaves in a way that poses a direct threat to the health or safety of others, has a history of such behavior, or is not under the control of the handler, that animal may be excluded.**  If an animal is excluded for such reasons, staff must still offer their goods or services to the person without the animal present.

U.S. DEPT. OF JUSTICE, FREQUENTLY ASKED QUESTIONS ABOUT SERVICE ANIMALS AND THE ADA (July 20, 2015), https://www.ada.gov/resources/service-animals-faqs/ (emphasis added) (last accessed on March 2, 2023).

At the evidentiary hearing, the Court heard from numerous witnesses regarding certain aggressive behaviors exhibited by Rex.  Mr. Hayes, a resident at FMR, testified that he observed Rex as being "very aggressive, barking and snapping and growling, and very disturbing" and that he would not allow his grandchildren in the pool area if the dog was present due to concerns for their safety.  Doc. 18 at 114, 119.  Mr. Wolfe, another resident, testified that he had to jump out of the side of his chair in the pool area because Plaintiff was unable to keep Rex from growling, barking, and jumping on the arm of the chair where Mr. Wolfe was seated.  *Id.* at 131-32.

Additionally, Mr. Duhe testified regarding an occasion where he saw Rex run across the street and "charge" at someone. *Id.* at 97.

Plaintiff argued in his post-hearing supplemental brief that the video footage and certain photographs would show different stories than those that the above-mentioned witnesses testified too. Doc. 23 at 25-27. However, Plaintiff did not present such video evidence to the Court and based on the evidence that **is** before the Court, the Court finds the testimony of the witnesses credible. Similarly, after the hearing Plaintiff's counsel filed an affidavit from Bob Kunowski, which challenged some of the testimony offered by Mr. Duhe. Doc. 19. In the affidavit, Mr. Kunowski states that he was never contacted by the FMRCOA Attorney or FMR Board of Directors about testifying at the hearing, and had he been made aware of the hearing he would have appeared and testified. *Id.* at 2. However, the burden of proof is on the party asking for the preliminary injunction, in this case, the Plaintiff. Defendant is not responsible for making sure witnesses for Plaintiff appear at hearings. Mr. Kunoswki's affidavit was not presented as evidence at the preliminary injunction hearing, and he has not been subject to cross examination. Accordingly, the Court gives his affidavit little weight in comparison to the several witnesses who testified at the hearing and were subject to cross examination.

Defendant also argues that the ADA does not apply to it, and therefore Plaintiff's ADA claim will be unsuccessful. Assuming, without deciding, that the ADA does apply, the Court finds that at this stage, the evidence shows that Rex's behavior is a "poses direct threat to the health or safety of others." Thus, Plaintiff has not shown a substantial likelihood of success on the merits because FMRCOA can exclude a service animal that poses a direct threat to the health or safety of others. Because the element of substantial likelihood of success on the merits fails with respect to Plaintiff's ADA claim, the Court need not proceed to analysis of the other elements. *See, e.g.*, *Siegel*, 234 F.3d at 1176 (holding that plaintiff's failure to show irreparable injury warranted denial

of the motion for preliminary injunction); *Church*, 30 F.3d at 1342 (holding that plaintiff's failure to establish substantial likelihood of success on the merits warranted denial of the motion for preliminary injunction).

### ii. FHA

"The FHA prohibits discriminating against a person on the basis of a 'handicap,' or a disability, by refusing to make reasonable accommodations when necessary to afford the person of equal opportunity to use and enjoy a dwelling." *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285 (11th Cir. 2014) (citing 42 U.S.C. § 3604(f)(3)(B)). To prevail on a failure to accommodate claim pursuant to Section 3604(f)(3)(B) of the FHA, a plaintiff "must establish that (1) he is disabled or handicapped within the meaning of the FHA, (2) he requested a reasonable accommodation, (3) such accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the requested accommodation." *Hawn v. Shoreline Towers Phase 1 Condo. Ass'n, Inc.*, 347 F. App'x 464, 467 (11th Cir. 2009) (quoting *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218-19 (11th Cir. 2008)).

First, Defendant argues that Plaintiff has failed to make a request for a reasonable accommodation. Doc. 6 at 1. Specifically, Defendant states:

> [t]he facts show that the Plaintiff alleged that he had a disability and required a service animal. However, he never formally requested a reasonable accommodation, nor did he provide the appropriate information for FMR COA to be able to determine the exact nature of the request, whether the request was reasonable and whether it adequately addressed the alleged disability.

Doc. 6 at 1-2. Second, Defendant argues that it is entitled to deny any alleged request for accommodation with respect to Rex because Rex is a dangerous animal. *See* Doc 13 at 13; Doc. 22 at 8. Defendant does not appear to contest that Plaintiff is disabled or handicapped within the meaning of the FHA. Further, Plaintiff provided a letter from the Department of Veterans Affairs indicating that he has a disability. Doc. 1-1. For purposes of this motion, the Court assumes that

Plaintiff is disabled within the meaning of the FHA. Accordingly, the remaining requirements for a failure to accommodate claim under the FHA are analyzed below in turn.

### a. Whether Plaintiff Requested a Reasonable Accommodation

Defendant argues that Plaintiff never made a request for a reasonable accommodation, and therefore Plaintiff does not have a failure to accommodate claim under the FHA. *See* Doc. 6 at 1-2. "[A] plaintiff can be said to have made a request for accommodation when the defendant has "enough information to know of both the disability and desire for an accommodation." *Hunt v. Amico Props., L.P.*, 814 F.3d 1213, 1226 (11th Cir. 2016).

In a letter to Defendant dated September 15, 2022, Plaintiff stated that he would be returning to FMR from his vacation shortly and requested clarification about his "Request for a Reasonable Accommodation." Doc. 21 at 2. Additionally, Plaintiff submitted a letter to Defendant on November 7, 2022, requesting a reasonable accommodation under the FHA "to record the upcoming FMR Owner's annual meeting." Doc. 1-8; Doc. 21 at 3. The letter also states:

> I am asking for "this reasonable accommodation" due to the fact that you continue to deny my reasonable accommodation request to take my service animal into the Owner's Lodge and pool area. [. . .]
>
> You are well aware of my disability and how my service dog ameliorates my symptoms. The ramifications of my PTSD and anxiety, are especially prevalent in crowds.

Doc. 1-8; Doc. 21 at 3.

> On September 21, 2022, Defendant sent Plaintiff a letter which stated, in part,
>
> based on the danger Rex poses to other owners and their guests, we cannot allow Rex to be in the pool area or Owners' Lodge as he is a danger to other persons. If you would like to make a request for a reasonable accommodation for a different service animal which has been properly trained, we will consider the request along with the supporting documentation and respond to the same in a timely manner.

Doc. 21 at 6. Taking these letters together, it appears that Plaintiff likely made a request for a reasonable accommodation.

### b. Whether Such Accommodation was Necessary to Afford Plaintiff an Opportunity to Use and Enjoy His Dwelling

The FHA does not require that housing providers "immediately grant all requests for accommodation." *Bhogaita*, 765 F.3d at 1285-86 (citing *Schwarz*, 544 F.3d at 1219). "Once a provider knows of an individual's request for accommodation, the provider has 'an opportunity to make a final decision . . . which necessarily includes the ability to conduct a meaningful review' to determine whether the FHA requires the requested accommodation." *Id.* at 1286 (citing *Schwarz*, 544 F.3d at 1219). "The failure to make a timely determination after a meaningful review amounts to a constructive denial of a requested accommodation, 'as an indeterminate delay has the same effect as an outright denial.'" *Id.* (citing *Groome Res. Ltd. V. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000)).

"Generally, housing providers need only the information necessary to apprise them of the disability and the desire and possible need for an accommodation." *Id.* (citing *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 506 (3d Cir. 2010)). A housing provider has the right to "request reliable disability-related information that (1) is necessary to verify that the person meets the [FHA's] definition of disability . . . (2) describes the needed accommodation, and (3) shows the relationship between the person's disability and the need for the requested accommodation." *Peklun v. Tierra Del Mar Condo. Ass'n*, Civ. Act. No. 15-CIV-80801-BLOOM/VALLE, 2015 U.S. Dist. LEXIS 163554, 2015 WL 8029840, at *44 (S.D. Fla. 2015). "It is reasonable to require the opinion of a physician who is knowledgeable about the subject disability and the manner in which a service dog can ameliorate the effects of the disability." *Id.*

Plaintiff has provided a list of 32 different tasks that he alleges his service dog, Rex, performs for him. Doc. 21 at 23. Plaintiff also provided a letter from the Department of Veteran Affairs, which states that Plaintiff is disabled. Doc. 1-1. However, the letter from the Department

of Veteran Affairs does not indicate Plaintiff's need for a service animal. Additionally, Plaintiff has not shown any documentation, other than the list of tasks which appear to be Plaintiff's own account, indicating Plaintiff's need for the requested accommodation.[3] Without such documentation, neither this Court nor Defendant can evaluate whether the requested accommodation is necessary to afford Plaintiff an opportunity to use an enjoy his dwelling. *See Bhogaita*, 765 F.3d at 1286-87 (holding that letters from the plaintiff's physician which explained the nature of the plaintiff's disability, that plaintiff's disability impaired a major life activity, and that plaintiff's dog alleviated his symptoms, were sufficient to show the requested accommodation was necessary). Accordingly, at this stage Plaintiff has not shown that his requested accommodation is necessary to afford him an opportunity to use and enjoy his dwelling.

### c. Whether Defendants Refused to Make the Requested Accommodation, and if so, Whether Such Refusal was Permitted Under the FHA

In addition to denying reasonable accommodations based on an undue administrative burden or a fundamental alteration to the nature of operations, the Department of Housing and Urban Development allows for the denial of a reasonable accommodation in the form of an assistance animal if the "animal's behavior poses a direct threat and its owner takes no effective action to control the animal's behavior so that the threat is mitigated or eliminated." *Warren v. Delvista Towers Condo. Ass'n*, 49 F. Supp. 3d 1082, 1087 (S.D. Fla. 2014) (citing *Schwarz*, 544 F.3d at 1220). Further, the presumption in favor of a reasonable accommodation is such that "the

---

[3] The FHA standard is somewhat different than ADA standard, and housing providers are permitted to ask for more substantiation under the FHA. *See Bhogaita*, 765 F.3d at 1286 ("Once a provider knows of an individual's request for accommodation, the provider has 'an opportunity to make a final decision . . ., which necessarily includes the ability to conduct a meaningful review' to determine whether the FHA requires the requested accommodation.") (quoting *Prindable v. Ass'n of Apt. Owners*, 304 F. Supp. 2d 1245, 1258 (D. Haw. 2003)).

Fair Housing Act requires the existence of a significant risk — not a remote or speculative risk."

*Id.*

As previously noted, On September 21, 2022, Defendant sent Plaintiff a letter which stated, in part,

> based on the danger Rex poses to other owners and their guests, we cannot allow Rex to be in the pool area or Owners' Lodge as he is a danger to other persons. If you would like to make a request for a reasonable accommodation for a different service animal which has been properly trained, we will consider the request along with the supporting documentation and respond to the same in a timely manner.

Doc. 21 at 6. Also as previously noted, at the evidentiary hearing, the Court heard from numerous witnesses regarding certain aggressive behaviors exhibited by Rex. Mr. Hayes, a resident at FMR, testified that he observed Rex as being "very aggressive, barking and snapping and growling, and very disturbing" and that he would not allow his grandchildren in the pool area if the dog was present due to concerns for their safety. Doc. 18 at 114, 119. Mr. Wolfe, another resident, testified that he had to jump out of the side of his chair in the pool area because Plaintiff was unable to keep Rex from growling, barking, and jumping on the arm of the chair where Mr. Wolfe was seated. *Id.* at 131-32. Additionally, Mr. Duhe testified regarding an occasion where he saw Rex run across the street and "charge" at someone. *Id.* at 97.

At this stage, the evidence currently before the Court is sufficient to show that Defendant's refusal to make the requested accommodation was permitted under the FHA because Rex poses a significant risk to the safety of other owners and their guests.

Accordingly, Plaintiff has not shown a substantial likelihood of success on the merits of his FHA claim because he has not demonstrated that the requested accommodation is necessary to afford him an opportunity to use and enjoy his dwelling, and because the "direct threat" exception to the FHA likely applies to Rex. Because the element of substantial likelihood of success on the merits fails with respect to Plaintiff's FHA claim, the Court need not proceed to analysis of the

other elements. *See, e.g.*, *Siegel*, 234 F.3d at 1176 (holding that plaintiff's failure to show irreparable injury warranted denial of the motion for preliminary injunction); *Church*, 30 F.3d at 1342 (holding that plaintiff's failure to establish substantial likelihood of success on the merits warranted denial of the motion for preliminary injunction).

## V. CONCLUSION

Based on the above, Plaintiff has not carried his burden of persuasion for preliminary injunction. Accordingly, Plaintiff's motion for a preliminary injunction (Doc. 2) is **DENIED**.

**DONE** and **ORDERED** this 6th day of March 2023.

/s/ Terry F. Moorer  
TERRY F. MOORER  
UNITED STATES DISTRICT JUDGE