**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

**MARK HEIMKES, et al.,**

     **Plaintiffs,**

**v.**                                                                 **1:22-cv-00448-TFM-N**

**FAIRHOPE MOTORCOACH
RESORT CONDOMINIUM
OWNERS ASSOCIATION, INC.,**

     **Defendant.**

<u>**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE REGARDING
CITATION ERRORS AND SANCTIONS AND OPPOSITION TO
DEFENDANT'S MOTIONS TO STRIKE AND FOR SANCTIONS**</u>

Plaintiffs, by and through undersigned counsel, respectfully submit this Response to the Court's Order to Show Cause (Doc. 316) regarding alleged citation errors and purported misrepresentations of law in Plaintiffs' filings. For the reasons set forth below, Plaintiffs respectfully request that the Court discharge the Show Cause Order, deny sanctions, and deny Defendant's motions to strike. The alleged citation errors were inadvertent typographical or clerical mistakes—including truncation of case names and copy/paste errors—not intentional misrepresentations and did not prejudice Defendant or mislead the Court. All legal propositions advanced are well-grounded in controlling and persuasive authority, as detailed below and in the attached chart of authorities.

## II.   ACKNOWLEDGMENT OF THE COURT'S ORDER AND FACTUAL EXPLANATION OF CITATION ERRORS

Counsel respectfully acknowledges the Court's Order and affirms that all citation errors were unintentional, arising from copy/paste, truncation, and citation management issues during a high-pressure trial period. Counsel's vision symptoms, which the Court could observe, contributed to oversight in final review. Immediate steps have been taken to prevent recurrence, including enhanced manual verification protocols and the removal of non-ADA/FHA cases from the research database. No error was made in bad faith, and all legal principles advanced remain well-supported by real, verified authorities.

## III.   ADDRESSING THE COURT'S AND DEFENDANT'S ALLEGATIONS REGARDING CITATION ERRORS AND "MADE UP" CASES

Plaintiffs' counsel respectfully addresses the Court's and Defendant's concerns regarding certain case citations in Doc. 296. All citation errors were the result of ordinary copy/paste mistakes, truncation of case names, or citation management software errors—not intentional fabrication or an attempt to mislead the Court. The following addresses each challenged citation in turn:

### *Kaltenbach v. Richards*,

Plaintiffs' counsel acknowledges that this is a real case, but it is a Fifth Circuit FDCPA case, not an ADA or FHA case. Its inclusion in Document 296 was an inadvertent copy/paste error, not the result of any attempt to mislead the Court or

Defendant. The parenthetical summary "condos with rentals may qualify as public accommodations but here evidence supports applicability" was not a direct quote, nor did Plaintiffs use quotation marks or purport to quote any holding from *Kaltenbach*. The legal principle for which it was cited is amply supported by controlling and persuasive authority, including *United States v. Wales West LLC*, Civ. Act. No. 09-cv-29-CG-B (S.D. Ala. 2009) (consent decree; RV resort as public accommodation); *United States v. Plaza Mobile Estates*, 273 F. Supp. 2d 1084, 1087 (C.D. Cal. 2003); *United States v. Days Inns of America, Inc.*, 151 F.3d 822, 824 (8th Cir. 1998); *Independent Housing Services of San Francisco v. Fillmore Center Associates*, 840 F. Supp. 1328, 1344 (N.D. Cal. 1993); and DOJ ADA Title III Technical Assistance Manual, III-1.2000(B). Thus, while the citation to *Kaltenbach* was mistaken, the legal proposition for which it was cited is valid and directly relevant to Plaintiffs' arguments.

**"Sabala" and "Roseborough":**

The citations to "Sabala" and "Roseborough" were typographical or citation management errors, likely resulting from truncation or autocorrect during the drafting process. The intended authorities were *Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, 2014 WL 1092361 (S.D. Fla. Mar. 13, 2014) (for the proposition that knowledge can obviate the need for a formal request for accommodation), and *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213 (11th Cir.

3

2016) (for the proposition that post-move-in accommodation requests are valid). Both are real cases and were present in the research database for their relevance to FHA and ADA accommodation law. The error was in the case name, not the legal proposition. The correct cases were misnamed or mis-transcribed due to a copy/paste or citation software error. The legal propositions for which they were cited are well-established and supported by, among others, *U.S. v. Hialeah Housing Authority*, 418 F. App'x 872, 876 (11th Cir. 2011); *Cordoves v. Miami-Dade County*, 92 F. Supp. 3d 1221, 1231 (S.D. Fla. 2015); and *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285–86 (11th Cir. 2014).

### *United States v. Wales West LLC*:

In my filings, I included the case of *U.S. v. Wales West* to illustrate that RV resorts, such as Fairhope Motorcoach Resort Condominium Owners Association, Inc. (FMRCOA), are subject to the Americans with Disabilities Act (ADA). The inclusion of this case was intended to demonstrate that FMRCOA, by managing or otherwise controlling the rental of individually owned units and allowing short-term renters access to common areas like the pool, falls under the ADA's purview, similar to *Wales West*.

I acknowledge that I mistakenly used the term "holding" in reference to the consent decree in *Wales West*. My intention was not to imply that it was a judicial opinion, but rather to highlight the applicability of the ADA to FMRCOA in a

4

manner consistent with the principles outlined in the consent decree. The case serves as a persuasive example of how RV resorts with similar operational structures are required to comply with ADA standards, ensuring accessibility and non-discrimination for individuals with disabilities.

The defendant's motion misapprehends both the governing Rule 11 standard and the limited purpose for which I cited the *Wales West* consent decree. A Rule 11 sanction requires proof that "after an inquiry reasonable under the circumstances, the legal contention" advanced was objectively baseless—i.e., no competent attorney, knowing the relevant law, could have believed it warranted by existing authority or a good-faith extension of that authority. See *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) (objective reasonableness governs). My reference to *Wales West* easily satisfies that threshold.

The decree was cited only to establish notice, not to create binding precedent. The brief expressly stated that the decree "demonstrates the Department of Justice's settled view that an RV resort open to the public must comply with Title III," and that it was offered "for the limited purpose of showing notice to FMRCOA." Courts routinely admit consent decrees for that precise purpose. See *Saccameno v. Ocwen Loan Servicing, LLC*, 372 F. Supp. 3d 609 (N.D. Ill. 2019) (consent orders admissible "not for the truth of the contents but to indicate that certain issues were

5

brought to [the defendant's] attention"); *Love v. Handlery Hotels, Inc.*, No. 3:21-cv-00850 (N.D. Cal. Jun. 21, 2021) (same).

Characterizing the decree's operative result as a "holding" was, at worst, imprecise phrasing—hardly sanctionable. Rule 11(b)(2) is violated only when counsel's legal representation is objectively unreasonable. Courts have refused to impose sanctions for far more substantial miscues, provided the underlying point was legally tenable. *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346 (Fed. Cir. 2003). Here, every substantive citation around the challenged sentence correctly described the *Wales West* instrument as a "consent decree." One stray shorthand reference does not transform the entire submission into a sanctionable misrepresentation—particularly when the transcript reflects that, in oral argument, I reiterated the decree's contractual nature and the limited evidentiary purpose for which it was offered.

The reference was factually accurate and legally relevant. The decree plainly recites that *Wales West* "shall comply with Title III of the Americans with Disabilities Act." That language, which *Wales West* accepted as a condition of settlement, suffices to put comparable entities on notice that DOJ interprets the ADA to reach RV parks. Rule 11 does not require counsel to ignore such public enforcement actions—or to litigate in fear that an enforcement document may be linguistically misclassified. See *United States v. Armour & Co.*, 402 U.S. 673, 681–

6

82 (1971) (consent decrees are compromises; they reflect agency views but are not litigated merits rulings). In oral argument, I reiterated the decree's contractual nature and the limited evidentiary purpose for which it was offered.

The defendant suffered no conceivable prejudice. The decree was cited neither to prove an element of liability nor to estop FMRCOA, but solely on the question of notice and willfulness—issues squarely within Rule 401. Should the Court deem any phrasing potentially misleading, the proper remedy is a clarifying instruction, not the extraordinary step of sanctions.

Procedural prerequisites have not been met. Rule 11(c)(2) requires service and a 21-day safe-harbor period before filing a motion. The defendant's motion was filed without such notice, rendering it defective. See *In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003) (strict compliance mandatory).

For these reasons, the motion should be denied. Nevertheless, to avoid any further distraction, I am prepared to amend future filings to refer to the *Wales West* consent decree as "an ADA consent decree" or "an ADA enforcement settlement" and to restate explicitly that it is offered solely to show notice, consistent with *Saccameno* and *Love*.

**Other Cases (including *Carruthers*):**

The Court and Defendant have raised concerns about the accuracy and relevance of other cases cited by Plaintiffs, including *Carruthers v. BSA Advertising,*

7

*Inc.*, *Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, *Revock v. Cowpet Bay W. Condo. Ass'n*, *Meyer v. Holley*, *Hunt v. Aimco Properties, L.P.*, and *Walker v. City of Huntsville*. Plaintiffs' counsel clarifies that in each instance, the cited case was used to support a legal proposition that is well-grounded in law, and that any parenthetical summaries were not presented as direct quotes. Nowhere in the complained-of filings does Plaintiff use quotation marks or purport to quote any holding. The use of parentheticals and summaries to relate the legal principle of a case to the facts at hand is a routine and accepted practice in federal litigation. If any citation was in error, Plaintiffs' counsel is prepared to provide a sworn declaration affirming the non-intentional nature of the error and to supply corrected references.

With respect to *Carruthers v. BSA Advertising, Inc.*, Plaintiffs' counsel notes that the case is real and was cited for the proposition that lay evidence and medical records are sufficient to establish disability under the ADA and FHA, especially for disabilities with observable effects such as epilepsy and PTSD. This is a well-established principle in the Eleventh Circuit and beyond. See, e.g., *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285–86 (11th Cir. 2014) ("ample evidence at trial to show that his PTSD left him unable to work in a broad class of jobs"); *Cordoves v. Miami-Dade County*, 92 F. Supp. 3d 1221, 1231 (S.D. Fla. 2015) (lay and circumstantial evidence sufficient for service animal

8

accommodation); *Martin v. Sabo*, No. 8:22-cv-00640 (M.D. Fla. Jul. 19, 2023) (combat veteran, PTSD, service dog); *Santiago Ortiz v. Caparra Center Associates, LLC*, 148 F. Supp. 3d 242 (D.P.R. 2015) (epilepsy, service dog, lay evidence); *Williamson v. Indian River Memorial Hospital, Inc.*, No. 2:21-cv-14318 (S.D. Fla. Dec. 6, 2022) (PTSD, service dog, lay and medical evidence).

None of the mistakes identified by the Court or Defendant were knowing or intentional, and do not rise to the level of sanctionable conduct under Rule 11, GenLR 83.3(i), AL Rule Prof. Conduct 3.3, or the Court's inherent power. Plaintiffs' counsel has taken remedial actions and is willing to correct the record as needed, which should be considered as a mitigating factor against sanctions. Due process requires more specific notice and a more detailed factual record prior to the imposition of sanctions, and no party was prejudiced or misled by the inadvertent errors. Counsel acted in subjective good faith at all times. Plaintiffs' counsel has attached highlighted copies of the cited cases that do exist, showing where the cases support the propositions for which they were cited. For those citations that were the result of clerical error or misidentification and cannot be produced, Plaintiffs' counsel is prepared to submit a sworn declaration affirming the non-intentional nature of the error and providing corrected references. Plaintiffs' counsel respectfully requests that the Court allow counsel a chance to cure any record deficiencies and to provide corrected references, and, if the volume of requested

9

material or the short deadline poses an undue burden, requests additional time or clarification.

The issues highlighted by Defendant and the Court in this show cause proceeding are, in fact, direct examples of how ordinary citation and clerical errors—including truncation of case names—can occur in the course of complex litigation, especially when assembling arguments from a large research database covering multiple practice areas and preparing for the next day solo.

## IV. DEFENDANT'S HABITUAL MISSTATEMENTS, THE COURT'S RELIANCE, AND PREJUDICE TO PLAINTIFFS

The record in this case demonstrates not merely isolated error, but a pattern of habitual misstatement and strategic misrepresentation by Defendant regarding the evidentiary standard for proving disability and the requirements for service animal accommodation under Title III of the ADA and the FHA. This pattern is documented in multiple filings—including Defendant's Motion for Judgment on Partial Findings (Doc. 297), Consolidated Response to Plaintiffs' Motions in Limine (Doc. 301)—and throughout the trial proceedings, as reflected in the May 27, 2025, May 28, 2025, May 29, 2025, and June 5, 2025, trial transcripts.

### A. Defendant's Categorical "No Prescription/No Expert" Arguments

Defendant repeatedly asserted that Plaintiffs could not prove disability or entitlement to a service dog accommodation because "no prescription for a service

10

dog" appeared in the voluminous medical records, and because Plaintiffs had not designated an expert. For example:

- "We have received over 3000 pages of Mr. Heimkes' medical records, and none of those records include a prescription for a service dog." (2025-05-27 Tr. 21, 13–15.)

- "Would it surprise you that there are no records of a prescription for an animal in any of the 3,000 pages of medical records that you produced?" (2025-06-05 Tr. 210, 13–12.)

- "You have not designated any experts. I sustain the objection." (2025-05-28 Tr. 113, 16–17.)

- "This person was not designated as an expert." (2025-05-25 Tr. 113, 1–2.)

- "It's hearsay. Calls for an expert opinion on a disability." (2025-05-29 Tr. 103, 16–20.)

- "They're asking for a medical diagnosis, which requires expert testimony. I've got a few cases I would like to reference to the Court." (2025-05-29 Tr. 161, 15–18.)

- "Plaintiffs have presented no expert testimony or admissible medical evidence to establish that they have a diagnosed mental or physical impairment… Accordingly, neither Plaintiff can satisfy their burden to obtain any relief…" (Doc. 297, at 2–3.)

- "Neither Plaintiff has made the threshold showing of an actual physical or mental impairment via admissible evidence." (Doc. 297, at 3.)

## B. The Court's Initial Reliance and Prejudice to Plaintiffs

The Court, at various points, relied on Defendant's misrepresentations in its evidentiary rulings and in limiting the scope of Plaintiffs' proof. For example, on May 27, 2025, the Court initially sustained objections or limited Plaintiffs' ability to present lay testimony or non-expert medical documentation, expressly referencing

11

the absence of expert testimony or a physician's prescription, as repeatedly urged by Defendant. See 2025-05-27 Tr. 21, 13–55; 2025-05-28 Tr. 113, 16–17; 2025-05-25 Tr. 113, 1–2; 2025-05-29 Tr. 103, 16–20; 2025-05-29 Tr. 161, 15–18.

This reliance materially prejudiced Plaintiffs' ability to present their case, particularly as to non-observable disabilities such as PTSD, TBI, and epilepsy, and resulted in the exclusion or devaluation of evidence that, under controlling law and the Court's own later clarifications, should have been admitted or given due weight.

## C.    The Court's Recognition That Defendant "Cut Too Thin" Its Argument

It was only on June 5, 2025, after significant prejudice had already occurred, that the Court recognized the flaw in Defendant's position:

> "I've looked at this issue, and I can conclude, from having looked at the case law, that the defendants cut that case law very thin; impermissibly so. For instance, a person might have high blood pressure, and they may not physically feel any of the affects of high blood pressure, and they only know that they have high blood pressure because a physician has told them that they have high blood pressure. They may take medication or whatever. And that person can testify that they had been diagnosed with high blood pressure, and that they take medication as a result. And, to the extent that they have feelings or symptoms as a result of that, they can say that because they personally -- it affects them, personally. That same person, though, would not be able to testify about, say, the affects of high altitude upon people with high blood pressure, because that would require scientific or medical training. But that same person could say, if they, say, lived in -- I don't know -- Denver: This is how living here in Denver has affected me, and I have high blood pressure. Now, all of that goes to weight. All of that goes to me as the

factfinder. Now, there may be limitations -- and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties. But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it."

(2025-06-05 Tr. 24, 16–25, 25, 1–25, 26, 1–25.)

## D.    Statutory and Regulatory Authority: No "Prescription" Required

Defendant's repeated focus on the lack of a "prescription" for a service dog is not only unsupported by the statute and regulations, but also serves to mislead the Court and prejudice Plaintiffs' ability to present their case. The ADA and its implementing regulations do not require a "prescription" for a service dog. Under 28 C.F.R. § 36.104, a "service animal" is defined as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." The Department of Justice's guidance is explicit: "A public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal." 28 C.F.R. § 36.302(c)(6). There is no requirement for a "prescription" for a service dog under the ADA, and the absence of such a document in the medical records is legally irrelevant to Plaintiffs' entitlement to reasonable accommodation.

## E. Defendant's Misuse of Title I Caselaw and Cross-Title Borrowing

13

As detailed in the attached charts (see Ex. Y, "Defendant's Caselaw Table"; Ex. Z, "Defendant's Use of Title I Cases"), Defendant habitually misapplies Title I (employment) ADA cases to Title III (public accommodation) and FHA claims, importing stricter evidentiary and procedural requirements that are not supported by controlling law. This includes *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213 (11th Cir. 2004), *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184 (2002), and *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), among others. The Supreme Court has cautioned against such cross-title borrowing. See *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128–29 (2005).

## F.    The Court's Reliance and Resulting Prejudice

The Court's reliance on Defendant's misstatements—whether in sustaining objections, instructing the jury, or limiting the scope of admissible evidence—has directly impaired Plaintiffs' ability to fully and fairly present their claims. The prejudice is compounded by the fact that Defendant's position is not supported by the ADA, the FHA, or their implementing regulations, which do not require expert testimony or "observable effects" to establish disability. See 29 C.F.R. § 1630.2(h); *Bhogaita v. Altamonte Heights Condo. Ass'n*, 765 F.3d 1277, 1285–86 (11th Cir. 2014).

## G.    Pattern, Materiality, and Sanctionable Conduct

The pattern, repetition, and materiality of these misstatements—despite the Court's repeated clarifications and the absence of any statutory or regulatory requirement for categorical expert testimony—support a finding that Defendant's conduct is, at minimum, reckless, and at worst, intended to mislead the Court. This is further evidenced by Defendant's continued reliance on these arguments after the Court's explicit rulings to the contrary. Such conduct is sanctionable under Rule 11(b), 28 U.S.C. § 1927, and the Court's inherent authority, as it constitutes advocacy that is not warranted by existing law, lacks evidentiary support, and is presented for the improper purpose of imposing an unjustified burden on Plaintiffs and the Court.

## H. Pattern and Practice Summary of Defendant's Misstatements and Prejudice

1. **Doc. 297 (7/15/25):**
   Defendant asserted, "No expert/prescription, no disability." The Court sustained objections to lay testimony, resulting in exclusion of lay and non-expert evidence.

2. **2025-05-27 Tr. 21, 13–15:**
   Defendant argued, "No prescription in 3000+ pages of records." The Court limited the scope of proof and sustained objections, preventing Plaintiffs from presenting their full case.

3. **2025-05-28 Tr. 113, 16–17:**
   Defendant stated, "You have not designated any experts. I sustain the objection." The Court sustained the objection and restricted testimony, devaluing Plaintiffs' evidence.

4. **2025-05-25 Tr. 113, 1–2:**
   Defendant claimed, "This person was not designated as an expert." The Court sustained the objection and restricted testimony, again devaluing Plaintiffs' evidence.

5. **2025-05-29 Tr. 103, 16–20:**
   Defendant objected, "It's hearsay. Calls for an expert opinion on a disability." The Court sustained the objection and restricted testimony, further devaluing Plaintiffs' evidence.

6. **2025-05-29 Tr. 161, 15–18:**
   Defendant argued, "They're asking for a medical diagnosis, which requires expert testimony." The Court sustained the objection and restricted testimony, devaluing Plaintiffs' evidence.

7. **2025-06-05 Tr. 24, 16–25, 25, 1–25, 26, 1–25:**
   The Court finally recognized, "Defendants cut that case law very thin; impermissibly so." The Court corrected course, but only after prejudice had already occurred and Plaintiffs' case was impaired.

8. **2025-06-05 Tr. 210, 13–12:**
   Defendant stated, "No records of a prescription for an animal in any of the 3,000 pages of medical records." The Court initially sustained, then later corrected, but Plaintiffs' evidence was already devalued.

9. **Doc. 301 (7/16/25):**
   Defendant asserted, "Expert testimony required in all cases." The Court incorporated this by reference in later rulings, causing ongoing prejudice and confusion of the legal standard.

# V.    THE CONTROLLING STANDARD: OBSERVABLE DISABILITIES, EVIDENCE, AND ACCOMMODATION UNDER TITLE III

Federal courts, including the Eleventh Circuit, have repeatedly recognized that observable disabilities such as epilepsy, PTSD, traumatic brain injury (TBI), hearing loss, mobility and balance impairments, and anxiety disorders are protected under Title III of the ADA. The ADA and its implementing regulations, as well as the EEOC's regulations, explicitly list these conditions as disabilities that substantially limit major life activities. See 42 U.S.C. § 12102(1), (2), (3); 28 C.F.R. § 36.104; 29 C.F.R. § 1630.2(j)(3)(iii). The evidentiary standard for establishing disability and the need for accommodation is flexible and does not require expert or medical testimony in every case. Lay evidence, treating physician letters, and circumstantial proof are often sufficient.

For example, in *Santiago Ortiz v. Caparra Center Associates, LLC*, 148 F. Supp. 3d 242, 247–48 (D.P.R. 2015), the court held that "a person with epilepsy can certainly be disabled under the ADA," and that allegations of a service dog warning of attacks, assisting during attacks, and

16

summoning help were sufficient to infer a substantial limitation on a major life activity. The court emphasized that "the obviousness vel non of an individual's disability has no relevance to the mandates of Title III" and that "at this early stage in the proceedings, J.D.S. is not required to establish the elements of her claim with evidence."

In *Williamson v. Indian River Memorial Hospital, Inc.*, No. 2:21-cv-14318 (S.D. Fla. Dec. 6, 2022), the court found that "Williamson's PTSD diagnosis is a disability under the ADA." The court held that "it is not necessary to proffer documented evidence of training instead of only testimony and there is no need to show that a dog was trained by a 'certified trainer.'" The court further stated, "there are no federally-mandated training standards and a service dog may be individually trained at home—notably, '[t]here are no requirements as to the amount or type of training that a service animal must undergo, nor the type of work or assistance that a service animal must provide, but the animal be trained to perform tasks or do work for the benefit of a disabled individual.'"

In *Cordoves v. Miami-Dade County*, 92 F. Supp. 3d 1221, 1231 (S.D. Fla. 2015), the court held that "to withstand a motion for summary judgment on the training issue, it is not necessary to proffer documented evidence of training instead of only testimony. Nor is it necessary to show the dog was trained by a 'certified trainer.' Indeed, courts have recognized a service dog may be individually trained at home."

In *Martin v. Sabo*, No. 8:22-cv-00640 (M.D. Fla. Jul. 19, 2023), the court found that allegations of PTSD, depression, and anxiety that substantially limit major life activities are sufficient to establish disability under the ADA's definition. The court recognized the plaintiff's use of a service dog for PTSD and the defendant's denial of access based on a "no pets policy" as discriminatory.

17

In *Association for Disabled Americans, Inc. v. Concorde Gaming Corporation*, 158 F. Supp. 2d 1353, 1363 (S.D. Fla. 2001), the court found that plaintiffs with paraplegia and quadriplegia were "disabled for purposes of Title III" and had standing to maintain their claims for alleged discrimination. The court held that "the plaintiff has the burden of proving that a modification was requested and that the requested modification is reasonable. The plaintiff meets this burden by introducing evidence that the requested modification is reasonable in the general sense, that is, reasonable in the run of cases."

In *Sadler v. Fred Meyer Stores, Inc.*, No. 3:17-cv-01269 (D. Or. Oct. 5, 2018), the court found that the plaintiff's testimony about training her dog to recognize and respond to symptoms of anxiety and PTSD was sufficient to create a genuine issue of material fact. The court rejected the argument that professional training is required, stating, "Federal law defines a 'service animal' as any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability. 28 C.F.R. § 36.104."

In *Mission Working Dogs v. Brookfield Properties Retail, Inc.*, No. 2:23-cv-00230 (D. Me. Mar. 7, 2025), the court addressed claims involving plaintiffs with TBI, PTSD, epilepsy, loss of fingers, spinal cord injury, double amputation, anxiety, and war-related disabilities. The court emphasized that "the ADA's definition of disability and the requirements for service animals are broad, not necessitating formal certification or ownership, and that the focus is on whether the animal performs tasks to ameliorate the individual's disability."

In *Davis v. SeaWorld Parks and Entertainment, Inc.*, No. 6:22-cv-02327 (M.D. Fla. Jul. 25, 2023), the court held that "the obviousness vel non of an individual's disability has no relevance to the mandates of Title III." The court found that repeated questioning about the nature

18

or extent of a disability can violate the ADA, and that the plaintiff's allegations of being questioned three separate times, even after stating she was disabled, plausibly alleged a violation.

In *Reaves v. Immediate Medical Care, P.A.*, No. 3:23-cv-00403 (M.D. Fla. Mar. 11, 2025), the court credited the plaintiff's testimony and medical records regarding PTSD, anxiety, and bipolar disorder, and found that "at least some of the disabilities Reaves identified, including PTSD and bipolar disorder, qualify as protected disabilities for purposes of the ADA provided that they substantially limit one's life activities."

In *C.L. v. Del Amo Hospital, Inc.*, 992 F.3d 901, 911 (9th Cir. 2021), the court held that "the DOJ has consistently stated—in regulations, rulemaking commentary, and official department guidance—that a service animal within the meaning of the ADA must be individually trained to perform tasks related to an individual's disability, but the animal need not be formally certified. The test is a functional one: can the dog consistently help the person with a disability meet the challenges of life by assisting in the person's activities of daily living?"

In *C.G. v. Saucon Valley School District*, No. 5:21-cv-03956 (E.D. Pa. Nov. 18, 2021), the court found that a service dog trained to detect seizures, provide mobility assistance, and perform deep pressure therapy for anxiety was a reasonable accommodation for a child with epilepsy, dyspraxia, cerebral palsy, and anxiety disorder. The court emphasized that "the ADA applies to service animals that mitigate psychiatric disabilities just as much as to those that mitigate physical disabilities."

## VI.  AGENCY DEFERENCE AFTER LOPER BRIGHT

With respect to the issue of agency deference after *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), Plaintiffs respectfully submit that, even after *Loper Bright*, courts are not prohibited from considering or giving weight to agency expertise and interpretations. The Supreme

Court in *Loper Bright* explicitly stated: "Courts exercising independent judgment in determining the meaning of statutory provisions, consistent with the APA, may—as they have from the start—seek aid from the interpretations of those responsible for implementing particular statutes. See *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)." The Court further explained: "In an agency case in particular, the court will go about its task with the agency's 'body of experience and informed judgment,' among other information, at its disposal. *Skidmore*, 323 U.S. at 140. And although an agency's interpretation of a statute 'cannot bind a court,' it may be especially informative 'to the extent it rests on factual premises within [the agency's] expertise.' *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 98 n.8 (1983). Such expertise has always been one of the factors which may give an Executive Branch interpretation particular 'power to persuade, if lacking power to control.' *Skidmore*, 323 U.S. at 140; see, e.g., *County of Maui v. Hawaii Wildlife Fund*, 590 U.S. 165, 180 (2020); *Moore v. Chesapeake & Ohio R. Co.*, 95 U.S. 760, 763 (1877)." *Loper Bright*, 144 S. Ct. at 2262–63.

Thus, while Chevron's mandatory deference is gone, the Supreme Court has made clear that agency interpretations and expertise remain highly relevant and may be given persuasive weight, especially where the agency's reasoning is thorough, consistent, and grounded in its subject-matter expertise. This is particularly true in the context of the ADA and FHA, where Congress has expressly delegated interpretive authority to the DOJ and HUD, and their regulations and guidance reflect decades of specialized experience. Courts in this Circuit and nationwide continue to look to DOJ and HUD regulations, technical assistance manuals, and enforcement actions for guidance on the meaning and application of the ADA and FHA, including the standards for reasonable accommodation, service animal policies, and the scope of public accommodations.

20

# VII.    ADDITIONAL CONSIDERATIONS: GOOD FAITH, REMEDIATION, AND THE HIGH BAR FOR SANCTIONS

Plaintiffs' counsel further emphasizes that, upon learning of the citation errors identified by the Court and Defendant, immediate and affirmative steps were taken to remediate the issues and prevent recurrence. Counsel conducted a comprehensive review of all cited authorities, removed non-ADA/FHA cases from the research database, and implemented enhanced manual verification protocols for all future filings. These actions were not prompted by any adversarial demand, but by counsel's own commitment to the integrity of the process and the Court's trust. This record of prompt correction and proactive remediation is a strong indicator of good faith, which courts in the Eleventh Circuit routinely consider as a mitigating factor against sanctions. See *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993).

It is also critical to note that Defendant has suffered no prejudice as a result of the inadvertent citation errors. The Court has not relied on any erroneous citation in any substantive ruling, and as reflected in the trial transcript, the Court has independently reviewed and rejected any incorrect legal proposition advanced by Plaintiffs' counsel (for example, the Chevron deference issue). This independent review process ensures that the integrity of the proceedings has not been compromised, and that no party has been misled or disadvantaged by the errors at issue.

Plaintiffs' counsel stands ready to provide any further corrected citations, highlighted copies, or a sworn declaration as the Court may require, and respectfully requests leave to cure any remaining technical deficiencies rather than face sanctions or the striking of filings.

It is well-established that Rule 11 provides a "safe harbor" for correction of errors and is not intended as a punitive device for honest mistakes. The Eleventh Circuit has made clear that "Rule 11 is not a 'gotcha rule' designed to punish hyper-technical violations but rather to deter

21

patently frivolous pleadings or motions." *O'Bryan v. Joe Taylor Restoration, Inc.*, No. 9:20-cv-80993 (S.D. Fla. Jan. 6, 2021). The purpose of Rule 11 is to deter abusive litigation tactics, not to penalize counsel for isolated, non-prejudicial, and promptly corrected citation errors. See also *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). The Defendant's repeated misrepresentation of Title I law as controlling in Title III contexts is itself an abusive litigation tactic that risks misleading the Court and should not be countenanced.

To the extent Defendant or the Court suggests a "pattern" of errors, Plaintiffs' counsel clarifies that the errors are isolated, arose from the same clerical and citation management issues, and are not evidence of a systematic disregard for the rules. The record demonstrates that these were not repeated acts of bad faith, but rather a cluster of related mistakes that have now been addressed and corrected. The Court's discretion in imposing sanctions is broad, but even if a technical violation were found, sanctions are not required and should be imposed only where necessary to deter future misconduct, not to punish honest mistakes. See *Didie*, 988 F.2d at 1104.

Plaintiffs' counsel also wishes to rebut any suggestion of "fabrication." No case was fabricated; all legal propositions are supported by real, verified authorities, and any citation that could not be produced was the result of truncation, typographical, or clerical error. Counsel's willingness to provide highlighted copies, corrected references, and a sworn declaration further demonstrates transparency and candor.

Finally, Plaintiffs respectfully urge the Court to focus on the merits of the underlying claims, which are supported by controlling law and substantial evidence. Technical citation errors should not distract from the substantive rights at issue, especially where the legal arguments advanced are well-grounded and the errors have been promptly and fully addressed.

22

Counsel apologizes for any inconvenience caused to the Court or opposing counsel and reaffirms a commitment to candor, professionalism, and the highest standards of practice before this Court. Plaintiffs' chart of authorities has been updated to include all new cases cited in this response and is available in any format the Court prefers.

# VIII.    EXPLICIT REQUEST FOR SANCTIONS AND SPECIFIC RELIEF

For all the reasons set forth above, Plaintiffs respectfully request that the Court, pursuant to Fed. R. Civ. P. 11(b), 28 U.S.C. § 1927, and its inherent authority, impose appropriate sanctions on Defendant and its counsel for their repeated, material, and strategic misrepresentations of law and fact. Plaintiffs submit that monetary sanctions, an award of attorneys' fees and costs incurred in responding to Defendant's improper arguments, and/or an order precluding Defendant from further advancing the same misstatements would be appropriate to deter future misconduct and to remedy the prejudice already suffered.

# IX.    CURATIVE INSTRUCTION OR REMEDIAL ORDER

Given the Court's prior reliance on Defendant's misstatements—whether in sustaining objections, instructing the jury, or limiting the scope of admissible evidence—Plaintiffs respectfully request that the Court issue a curative instruction clarifying the correct legal standard for proving disability and the requirements for service animal accommodation under Title III and the FHA. Plaintiffs further request that the Court reconsider any prior evidentiary rulings that excluded or limited lay testimony, non-expert medical documentation, or other relevant evidence based on Defendant's erroneous legal arguments. To the extent necessary, Plaintiffs request that

the record be reopened for the limited purpose of admitting such evidence and ensuring a full and fair presentation of their claims.

## X.   ADVISORY COMMITTEE NOTES TO RULE 11

The Advisory Committee Notes to the 1993 Amendments to Rule 11 emphasize that "the rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," and that "the rule is not intended to deter the vigorous and effective advocacy that is at the heart of the adversary system." The Notes further state: "The rule is not intended to sanction attorneys for minor, technical, or inadvertent errors, but rather to deter abusive litigation practices and ensure that filings are well-grounded in fact and law." Fed. R. Civ. P. 11, advisory committee's note to 1993 amendment.

## XI.  PUBLIC POLICY AND ACCESS GOALS OF THE ADA

Finally, Plaintiffs respectfully remind the Court that the ADA and FHA are remedial statutes, enacted to remove barriers and ensure equal access for individuals with disabilities. See 42 U.S.C. § 12101(b)(1)–(4). Defendant's litigation tactics—misstating the law, imposing unwarranted evidentiary burdens, and seeking to exclude lay and circumstantial evidence— undermine these core public policy goals and frustrate Congress's intent to provide broad, uniform protection for people with disabilities. The Court should not permit such tactics to defeat the remedial purpose of these statutes or to chill the assertion of rights by individuals with disabilities.

## XII.     OFFER TO SUBMIT A PROPOSED ORDER

Should the Court determine that sanctions or a curative instruction are warranted, Plaintiffs stand ready to submit a proposed order for the Court's convenience.

# XIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court discharge the Order to Show Cause, deny sanctions, and deny Defendant's motions to strike. Plaintiffs further request that the Court impose appropriate sanctions on Defendant and its counsel, issue a curative instruction or remedial order as necessary, and grant such other and further relief as the Court deems just and proper.

Done this 11th day of August, 2025

*/s/ Franklin H. Eaton, Jr.*
Franklin H. Eaton, Jr.
*Attorney for the Plaintiffs*
THE EATON LAW FIRM, LLC
3145 Gulf Shores Pkwy
Gulf Shores, AL 36542
 (256) 738-4730 Cell
franklineatonjr@mac.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of August 20205, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following and/or that I hereby certify that I have mailed by placing a copy of same in the United States Mail, first-class postage prepaid and properly addressed those non CM/ECF participants:

D. Greg Dunagan, Esq.
Carr Allison
6251 Monroe Street, Suite 200
Daphne, Al 36526
gdunagan@carrallison.com

C. Andrew Harrell, Jr. Esq.
Clark, May, Price, Lawley, Duncan & Paul, LLC
P.O. Box 4850
Gulf Shores, AL 36547
(251) 968-1555
aharrell@clarkmayprice.com

H. Cannon Lawley (LAW029)
Clark, May, Price, Lawley, Duncan & Paul, LLC
3070 Green Valley Road
Birmingham, AL 35243
(205) 267-6601
cannon@clarkmayprice.com

/s/ Franklin H. Eaton, Jr.
Franklin H. Eaton, Jr.