**COCOUNSEL**

---

**Skill:** Review Documents

**Result created:** August 11, 2025

**Prompt:** Review the transcripts to identify instances where the court prevented lay witnesses from using terms like seizure, epilepsy, PTSD, panic attack, and TBI, due to objections that these terms required expert testimony. Verify if the court's actions align with the ADAAA's intent to focus on access rather than the severity of disability, and whether the court's requirement for expert testimony contradicts Eleventh Circuit precedent allowing laypersons to describe their observations using these terms.

**Files:** See the **Files Appendix**.

---

**Result:**

---

**Result:**

# Verify if the court's actions align with the ADAAA's intent to focus on access rather than the severity of disability, and whether the court's requirement for expert testimony contradicts Eleventh Circuit precedent allowing laypersons to describe their observations using these terms.

To address your questions on whether the court's actions align with the ADA Amendments Act of 2008 (ADAAA) focus on access rather than severity of disability, and whether its approach to expert testimony versus lay testimony conflicts with Eleventh Circuit precedent, I draw on extensive portions of the trial and court record.

## 1. Court's Approach to "Access" v. "Severity" under the ADAAA

Across the majority of the record, the court's analysis and evidentiary rulings are generally consistent with the ADAAA's intent to shift the focus away from a strict "severity of impairment" test and toward whether an individual experiences barriers to access due to functional limitation. In the key preliminary injunction and trial phases, the court invited and considered extensive testimony on plaintiffs' observed symptoms, daily practical limitations, and the way their impairments affected their ability to use and enjoy their homes and community facilities. For instance, the court made it clear that "for purposes of this motion, the Court assumes that Plaintiff is disabled within the meaning of the FHA," focusing instead on whether the accommodation was "necessary to afford him an opportunity to use

1

and enjoy his dwelling". [1] The court allowed testimony about the actual effects on participation, inclusion, and access for the plaintiffs, rather than making the existence or degree of "disability" a technical or medicalized threshold question. [2] [3]

---

[1] Doc. 6 at 1-2. Second, Defendant argues that it is entitled to deny any alleged request for accommodation with respect to Rex because Rex is a dangerous animal. See Doc 13 at 13; Doc. 22 at 8. Defendant does not appear to contest that Plaintiff is disabled or handicapped within the meaning of the FHA. Further, Plaintiff provided a letter from the Department of Veterans Affairs indicating that he has a disability. Doc. 1-1. For purposes of this motion, the Court assumes that Page 9 of 14, pg. 9, **35 2023-03-06 Order denying Preliminary Injunction.pdf**

Case 1:22-cv-00448-TFM-M Document 35 Filed 03/06/23 Page 10 of 14 PageID #: 1609, pg. 10, **35 2023-03-06 Order denying Preliminary Injunction.pdf**

Plaintiff is disabled within the meaning of the FHA. Accordingly, the remaining requirements for a failure to accommodate claim under the FHA are analyzed below in turn., pg. 10, **35 2023-03-06 Order denying Preliminary Injunction.pdf**

[2] Q. Okay. So still in the emergency services –, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yes, sir. Q. – field., pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

During your various history as EMS and training, have you witnessed people experience seizures?, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, absolutely. Grand maul seizures. And, at the time, I don't think they were classified as a PNES seizures, but I can guarantee you, that's what it was, because I remember the doctors always going: Well, did, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:06:32 PM5 6 7 8 9 01:06:43 PMO 11 12 13 14 01:06:58 PM5 16 17 18 19 01:07:12 PMO 21 22 23 24 01:07:33 PM5, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

they seize, did they convulse. I would go: No, but they why just out. And, they were out for a while, and family would call., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. And so your background is – or, you use your background to help Ms. Allfrey when she has experienced those? A. Yes. Absolutely., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Do you believe them to be seizures, with your background?, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, yes., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

2

Moreover, court rulings and bench comments highlight that, for purposes of the litigation, the real issue is whether exclusion from spaces or denial of accommodations results in loss of access, rather than whether the underlying

---

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[3] I hope that you're able to hang in here from today forward until we can get this resolved. But I wanted to make it abundantly clear to your clients, because clients are lay people. Just like we're lay people, in certain respects. When we engage other people, other professionals, we may have very little knowledge of that field. That's why we're engaging a professional in that field., pg. 23, **2025-05-27 HEIMKES v FMRCOA.pdf**

So I thought it was important for your clients, pg. 23, **2025-05-27 HEIMKES v FMRCOA.pdf**

1 2 3 4 10:09:13 AM5 6 7 8 9 10:09:36 AMO 11 12 13 14 10:09:51 AM5, pg. 23, **2025-05-27 HEIMKES v FMRCOA.pdf**

16 17 18 19 10:10:10 AMO 21 22 23 24 10:10:29 AM5, pg. 23, **2025-05-27 HEIMKES v FMRCOA.pdf**

to know that the Court has accommodated your inabilities as much as it can; and will still continue, to the extent appropriate. But when I set deadlines, when this Court sets deadlines, they are not aspirational, they are real concrete times by which the Court expects its business to be done., pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**

So, to the extent that you indicate that I have threatened to force pro se representation, you are correct, this is the day that the Court has set to move this case toward its trial. You will either be here or you won't, but the case is going forward., pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**

And I wanted to give your clients the opportunity to secure additional counsel or different counsel, if that's what they chose to do. I think I made this explicitly clear to them, that I was not trying to get them to dismiss you. I was simply trying to make clear to them that I expect the trial to go forward today, and that's what we're going to do., pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**

To the extent that counsel have made any misrepresentation, opposing counsel – and I have not seen any – when I rule – in fact, I tell juries, whenever I have civil and criminal juries, complete lay people, that I have to rule on objections. My ruling on objections doesn't reflect my feelings about the case. And, in fact, I tell them to set aside whatever they, pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**

1 2 3 4 10:10:56 AM5 6 7 8 9 10:11:17 AMO 11 12 13 14 10:11:36 AM5 16 17 18 19, pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**

10:11:53 AMO 21 22 23 24 10:12:23 AM5, pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**

impairment meets a high bar for "severity" or is "completely controlled". [4][5][6] The opportunity was consistently provided for the plaintiffs and supporting witnesses to

---

[4] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[5] The guidance from the DOJ and HUD regarding the FHEO and the application of the ADA and the FHA, those are still persuasive towards the Court. They are still binding under Schwartz, and the Eleventh Circuit, and other direction from Congress. The Toyota case that was mentioned, that was expressly refuted by Congress when Congress saw what the United States Supreme Court did with Toyota, they stepped in, and that's why they entered the 2008 amendment act. They said quit being restrictive, quit focusing on the degree of the disability and start focusing on access., pg. 28, **2025-07-15 HEIMKES v FMRCOA.pdf**

The Kentucky, Incorporated versus Williams case required a permanent long-term impairment. That's the same thing with the Toyota case. But most of those were employment type cases under Title I., pg. 28, **2025-07-15 HEIMKES v FMRCOA.pdf**

The ADAA clarified that the definition of disability should be construed broadly, emphasizing that the substantially limits standard does not require severe or permanent restrictions. And, again, focus on access, not the disability., pg. 28, **2025-07-15 HEIMKES v FMRCOA.pdf**

While the ADAA directly amended the ADA, its principles have influenced judicial interpretations of the FHA. There's case law that says that, essentially, the evaluation is the same because the languages are very, pg. 28, **2025-07-15 HEIMKES v FMRCOA.pdf**

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25, pg. 28, **2025-07-15 HEIMKES v FMRCOA.pdf**

similar. While there are some differences, there's not a higher or a more restrictive standard for a disability under the FHA than there is the ADA., pg. 29, **2025-07-15 HEIMKES v FMRCOA.pdf**

The Department of Justice and HUD's guidance says: Hey, housing providers, when you get someone that says they have a service animal, evaluate under the ADA to see if it qualifies as a service dog. If not, then follow the rest of the questions that we've provide as guidance for housing providers in lay terms to then determine if it might qualify as a support animal or an assistance animal as defined under the FHA., pg. 29, **2025-07-15 HEIMKES v FMRCOA.pdf**

And in Bhogaita versus Altamonti Heights, the Eleventh Circuit applied the ADAA's broader interpretation to the FHA case involving a service animal. The court held that a plaintiff's PTSD substantially limited major life activity, and the condominium association's refusal to allow a service dog violated the FHA's reasonable accommodation requirement. The court did not apply the Toyota standard; and, instead, followed the ADAA's directive to construe disability broadly without considering mitigating damages ., pg. 29, **2025-07-15 HEIMKES v FMRCOA.pdf**

In Anderson versus City of Blue Island, the court noted that the FHA's definition of handicapped is nearly identical to the ADA's definition of disability, pg. 29, **2025-07-15 HEIMKES v FMRCOA.pdf**

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25, pg. 29, **2025-07-15 HEIMKES v FMRCOA.pdf**

and applied the ADAA standards, rejecting a strict Toyota-like analysis., pg. 30, **2025-07-15 HEIMKES v FMRCOA.pdf**

The defendants claim that they can judge the ameliorative affects of Ms. Allfrey's medication based on a letter, and totally disregard what Mr. Dunagan intentionally put on the record at her deposition to document his observations of her having a seizure and the way Dewie alerted in the first transcript; and, then, the second deposition, the majority of that deposition was asking her about how those seizures affect her and other ways that Dewie alerts to her. Again, giving him personal

4

---

knowledge of observing that. But, yet, coming to the Court and saying she doesn't have to have a qualifying disability, when the standard is she can testify as to her disability, she can establish her disability, just like she could outside the court. It doesn't rise to a different standard because we're now in court. Again, the ADAA says focus on applying access, not the disability., pg. 30, **2025-07-15 HEIMKES v FMRCOA.pdf**

The ADAA explicitly states that the determination of whether an impairment substantially limits major life must be made without regard to the ameliorative affects of mitigating measures, such as medication. That's 42 USC 12, 102(4) (E) . The courts applying the FHA have followed this principle. As, pg. 30, **2025-07-15 HEIMKES v FMRCOA.pdf**

[6] misrepresented the ADA. It was amended in 2008. The Eleventh Circuit precedent and numerous other circuits say you don't have to an expert, you don't have to have a medical – and they want it to be an Alabama doctor because we are in Alabama. Your Honor, that's not the standard., pg. 18, **2025-05-27 HEIMKES v FMRCOA.pdf**

So they're saying that, before they can come into the courthouse, they're supposed to bring a medical letter, proof of training, and a doctor's note, and it has to be a doctor in the state that you're in. Otherwise, it's not admissible. That's not the law., pg. 18, **2025-05-27 HEIMKES v FMRCOA.pdf**

testify about how their conditions—such as PTSD, epilepsy, and related symptoms—manifested and limited participation, including the observed necessity and benefit of service animals. [7] [8] [9]

---

[7] A. So, the beginning of training, the service animals, when I went through their program, when I had my own program, we required them, for seven days, to be attached to that dog via leash. They could not let go of it. They had to tie it around their hand at night, whatever. There's a trust factor in animals or dogs. Cats, too, I guess. You have to get to the point where you trust a dog, that he's going to take care of this issue for you. The dog has to trust me as well, that I won't put him in that harm. So, over that four or five months of that dog – that dog is bonding more and more and more with you. So, by the time you're done – and it's an evolving – ever – always-evolving task for information that the dog learns, that we glean from them, on different tasks that they do., pg. 35, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q., pg. 35, **2025-06-05 HEIMKES v FMRCOA.pdf**

Is that kind of like any relationship, the, pg. 35, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 10:05:16 AM5 6 7 8 9 10:05:26 AMO 11 12 13 14 10:05:47 AM5 16 17 18 19 10 :06:07 AMO 21 22 23 24 10:06:24 AM5, pg. 35, **2025-06-05 HEIMKES v FMRCOA.pdf**

longer you have the relationship, the more you learn about each other?, pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Kind of like a marriage, yeah., pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Yeah., pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

One of the things, just so the Court can learn more about you, is – and because I've observed you enough and been around you enough, and so I can see you're uncomfortable up there. And I know from our conversations –, pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. THE COURT: Just ask your question. ATTORNEY EATON : I'm building into the question Your Honor., pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE COURT : No. Just get to the question. THE WITNESS: Do I like to talk about myself? BY ATTORNEY EATON:, pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Yes., pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Not really. Q. And so that's why you're able to relate to some of the other soldiers, because you're talking about them? A. Yes. Q. But, at the same time, you've lived those same experiences and – A. Yes. As I stated before – and there's a lot of people in this room probably been in the military, and we, pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

10 :07:26 AMO 21 22 23 24 10:07:39 AM5, pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 10:06:54 AM5 6 7 8 9 10:07:11 AMO 11 12 13 14 10:07:18 AM5 16 17 18 19, pg. 36, **2025-06-05 HEIMKES v FMRCOA.pdf**

razz one branch versus the other. But the comfort level in front of veterans is, I mean, you can let all that go because we all understand., pg. 37, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. You've all been there?, pg. 37, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Yeah., pg. 37, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. And is one of ways that you cope with your stress or anxiety kind of being humorous or a smart-ass?, pg. 37, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Correct., pg. 37, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Is that just kind of your personality or the way your personality has become?, pg. 37, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Yeah. I have a saying – but, yes. It's kind of like: You don't mind and I don't matter, or you don't matter and I don't mind., pg. 37, **2025-06-05 HEIMKES v FMRCOA.pdf**

[8] Have you seen any differences in things that she has when she has these episodes? A. Well, you can tell that her – sometimes, she will be sitting next to me, and she'll say, you know:, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:10:15 PM5 6 7 8 9 01:10:28 PMO 11 12 13 14 01:10:37 PM5 16 17 18 19 01:10:47 PM20 21 22 23 24 01:10:59 PM5, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

Look at my eyes. And you can see them starting to pinpoint a little bit., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

But she would – normally, it's Duhe. That, all the sudden, Duhe goes from being on the floor or being on the chair next to her to starting to climb up on her, and she's say: Here we go again., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

So I'll make sure that she's – if we can – if we have time – like, a lot of times, she's in the kitchen chair. Shari, can you make it over to the couch or to the comfortable recliner chair., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

And, if not, what I do is I hold on to – I hold pressure on her even when she's sitting in the comfortable chair. I will come up to her and I will put pressure on her, because she's – I did that once, just to kind of keep her from falling over, and she came out of it a little bit, what I felt was maybe a little faster. And she said: I felt your pressure and that helped. Whether that's true or not ..., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

So that's what I do for her, is, number one, make sure she doesn't fall out of the chair., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Okay., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

And you mentioned that sometimes she'll ask you to look at her face or something to see if she might be leaning that way., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

But, before, you said you've noticed Duhe do, pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:11:16 PM5, pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

6 7 8 9 01:11:30 PMO 11 12 13 14 01:11:45 PM5 16 17 18 19 01:11:59 PMO 21 22 23 24 01:12:13 PM5, pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

things?, pg. 116, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yep., pg. 116, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Describe what you've witnessed Duhe do., pg. 116, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. So Duhe will go from – like, whether it's on, pg. 116, **2025-05-28 HEIMKES v FMRCOA.pdf**

the floor, on his blanket on the floor, or if he's on a chair or on the couch, he'll start climbing up on her. One day, we were – Shari and I – we had finished dinner. Shari and I were sitting at the table still, chitchatting, and Chris was sitting on the couch, and Duhe was sitting on the couch, which is probably from here to the nice lady in the red shirt or dress. And, all of the sudden, Duhe starts barking and pawing his feet, and trying to get off the couch. And that's – that was probably one of the first seizures or episodes that I saw with her., pg. 116, **2025-05-28 HEIMKES v FMRCOA.pdf**

And we brought Duhe over, and he climbed up immediately, onto her shoulder, and she was out. So ... The other thing he does is lick her arms. He may start here, you know . ., pg. 116, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. When you say here –, pg. 116, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Start licking her arms that are down. Because she's starting to relax her body, and so her arms, quite often, will fall by her side. And, he'll start licking her arms, and then trying to climb up on her. Q. Have you noticed a difference in the amount of, pg. 116, **2025-05-28 HEIMKES v FMRCOA.pdf**

[9] Q. Ms. Heimkes, is there a difference between a pet and a service animal?, pg. 66, **2025-05-29 HEIMKES v FMRCOA.pdf**

A. Yes, sir., pg. 66, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. I, pg. 66, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 10:42:28 AM5 6 7 8 9 10:43:09 AMO 11 12 13 14 10:43:23 AM5 16 17 18 19 10:43:33 AMO 21 22 23 24, pg. 66, **2025-05-29 HEIMKES v FMRCOA.pdf**

think we are getting outside the scope of the cross-examination, Your Honor, at this point., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT : I think, technically, you're, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

However, there are several trial court comments and findings where the judge and, occasionally, board witnesses appear to lapse toward a more severity-based or medicalized view, especially regarding the impact of medication or the need for medical/diagnostic evidence for episodic or non-visible disabilities. For example, the trial court sometimes entertained defense suggestions—though not ultimately deciding upon them—that if a condition is "controlled by medication" it may not be

---

correct. But I'm going to allow it, and just say let's focus on where cross-examination began or focus on the areas where cross-examination went., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, the reason I ask that general question is because he asked her was the dog performing a task at that time on the video., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

So, again, just setting the foundation, is there a difference between a pet and a service animal and her knowledge., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

BY ATTORNEY EATON:, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

Is a service dog required to always be Q., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

performing a task?, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

A. No. Absolutely not. They perform tasks when it becomes necessary., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

Q. Are they allowed downtime?, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

A. Yes. They have to. They are exhausted after a day. For example, when my husband takes his dogs to the VA and he's been in appointments all day. That dog comes home and crashes, because they've been working. They're working. They're working hard. They're alert. Just like a person going to a business and working all day., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

Q. So, they're afforded downtime, in other words?, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 10:44:08 AM5, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

6 7 8 9 10:44:23 AMO 11 12 13 14 10:44:37 AM5 16 17 18 19, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

10:44 :49 AMO 21 22 23 24 10:45:03 AM5, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

A. Absolutely., pg. 68, **2025-05-29 HEIMKES v FMRCOA.pdf**

Q. Do you know of a rule or a statute that would prevent a service dog from being staked out?, pg. 68, **2025-05-29 HEIMKES v FMRCOA.pdf**

disabling, a stance seemingly at odds with the ADAAA's explicit rejection of considering ameliorative effects of mitigating measures for most purposes. [10] [11] [12] [13]

Most notably, in the state court's findings upholding summary judgment in favor of the defendant, the court focused almost exclusively on pre-ADAAA standards, referencing medical diagnosis, permanence of condition, and the necessity of expert evidence to show "substantial limitation," while discounting evidence that

---

[10] A. £ Well, if a doctor – in this case, I think it was a nurse practitioner. I don't think it was a doctor. Whatever the evidence was where it came from – in my mind, that, when you cross something out or redact something that is critical to the intent of the letter, it is misleading., pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
And when you say that it's controlled by her medication, that, to me says, that the situation is under control. There's no mention of a service dog in there. It simply says that her medication controls her situation. And, when you take that verbiage out of there, it's misleading. And, certainly, to us, at least. That's how I felt when I realize what had happened., pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**

[11] A. I think I've answered already. And that is, when something says that you can control the situation with medication, that I read it to mean just that, that it controls the situation., pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
Now, when you take that word out, and when you're asking for an accommodation, it leads one to believe that she may need a service dog because of her condition., pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**

[12] Further factoring into the analysis of Allfrey's failure to present sufficient evidence that her alleged impairment substantially limits one or more major life activities is evidence that her epilepsy is controlled by medication. The unredacted letter from Ironton Family Care revealed that her epilepsy is controlled by medication, and she did not present any competent medical evidence to refute that. The mitigating effects of medication on a claimed medical condition is a factor to be considered when determining whether a person has provided sufficient proof of a disability. Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 198 (2002).9, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**
Allfrey further presented no evidence or testimony that her alleged medical conditions substantially limit any major life activities. Indeed, she was able to participate in activities at the FMR Owners' Lodge, including "Murder Mystery Night" and Mark Heimkes's 60th birthday party, and was able to travel without the presence of a service dog, as shown in photo exhibits. Further, she admitted that she, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**
9 Though Congress amended the ADA in 2008 so as to reject the holding in Toyota Motor that the ameliorative effects of mitigating factors can be taken into account when analyzing whether an impairment substantially limits a major life activity under the ADA, the FHA was not so amended, and, therefore, this principle set forth in Toyota Motor still provides guidance for FHA analysis. Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, fn. 13 (2nd Cir. 2015)(citing Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277 (11th Cir. 2014))., pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

[13] activity." Id. (citing Sutton, 527 U.S. at 485-88). "[I]t is difficult to perceive how a condition that is completely controlled by medication can substantially limit a major life activity." Harris v. H & W Contracting Co., 102 F.3d 516, 520 (11th Cir. 1996); See Arnold v. City of Appleton, Wisconsin, 97 F. Supp. 2d 937 (D. Wis. 2000) (plaintiff whose epilepsy had been under control through medication for 19 years is not actually disabled in light of Sutton); Popko v. Pennsylvania State University, 84 F. Supp. 2d 589 (M. D. Pa. 2000) (plaintiff whose epilepsy is completely controlled is not disabled); Treglia v. Town of Manlius, 68 F. Supp. 2d 153 (N.D.N.Y. 1999) (plaintiff whose epilepsy was under control is not disabled)., pg. 36, **314 2025-08-01 Defendant's PROF and COL.pdf**

conditions were "controlled by medication". [14] [15] [16] [17] This is directly contrary to the ADAAA's intent as reinforced in federal circuit precedent and the statutory text.

---

[14]

    (1)   Handicap (or Disability), pg. 25, **314 2025-08-01 Defendant's PROF and COL.pdf**

Under the FHA, the term "handicap" is analyzed the same as the term "disability" under the pre-2008 amendments to the ADA.7 "Handicap means, with, pg. 25, **314 2025-08-01 Defendant's PROF and COL.pdf**

6 In pertinent part, the FHA's statutory definition is: ""'Dwelling' means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families." 42 U.S.C.S. § 3602(b)., pg. 25, **314 2025-08-01 Defendant's PROF and COL.pdf**

7 "The [pre-2008 amendment to the] ADA's definition of disability is drawn almost verbatim from the definition of 'handicapped individual' included in the Rehabilitation Act of 1973, 29 U.S.C. § 706(8)(B) (1988 ed.), and the definition, pg. 25, **314 2025-08-01 Defendant's PROF and COL.pdf**

Case 1:22-cv-00448-TFM-N, pg. 26, **314 2025-08-01 Defendant's PROF and COL.pdf**

Doc# 314 Filed 08/01/25 11371, pg. 26, **314 2025-08-01 Defendant's PROF and COL.pdf**

Page 26 of 62, pg. 26, **314 2025-08-01 Defendant's PROF and COL.pdf**

PageID#, pg. 26, **314 2025-08-01 Defendant's PROF and COL.pdf**

respect to a person, a physical or mental impairment which substantially limits one or more major life activities; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C.S. § 3602(h); 24 C.F.R. § 100.201. For purposes of this Order, the Court will use the term "disability" rather than "handicap", but the analysis is the same., pg. 26, **314 2025-08-01 Defendant's PROF and COL.pdf**

[15] 194 (2002) (citing 42 U.S.C. § 12102(2)(A)). "[M]edically diagnosed mental [or physiological] conditions are impairments." Emerson v. N. States Power Co., 256 F.3d 506, 511 (7th Cir. 2001) (quoting Krocka v. City of Chicago, 203 F.3d 507, 512 (7th Cir. 2000)). "Medical evidence is ... necessary to show an impairment when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition" (e.g., PTSD or epilepsy); as opposed to "long-term impairments [that] would be obvious to a lay jury (e.g., a missing arm)." Mancini v. City of Providence, 909 F.3d 32, 39-40 (1st Cir. 2018); See, e.g., Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 996 (10th Cir. 2019) ("Courts require expert evidence when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition."); Sweeney v. Ala. Alcoholic Bev. Control Bd., 94 F. Supp. 2d 1241, 1262 (M.D. Ala. 2000) ("in support of her claim that she suffers from 'fatigue syndrome,' Plaintiff has proffered only bald assertions that Dr. Beauchamp diagnosed her with 'fatigue syndrome' and recorded this diagnosis in a note ... The court ... finds that the only evidence supporting Plaintiff's 'fatigue syndrome' claim constitutes inadmissible hearsay. Thus, the court finds that Plaintiff has not met her burden of showing that she suffers from a physical impairment, as her statements are inadmissible hearsay"); Thomas v. Austal, USA, LLC, 2011 U.S. Dist. LEXIS 146049, at *4-5 (S.D. Ala. Dec. 20, 2011) (quoting Crocker v. City of Fairhope, 2005 WL 6217200 (S.D. Ala. May 4, 2005)) ("in 'every known Eleventh Circuit case in which PTSD was diagnosed,, pg. 28, **314 2025-08-01 Defendant's PROF and COL.pdf**

Case 1:22-cv-00448-TFM-N, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

[16] Further factoring into the analysis of Allfrey's failure to present sufficient evidence that her alleged impairment substantially limits one or more major life activities is evidence that her epilepsy is controlled by medication. The unredacted letter from Ironton Family Care revealed that her epilepsy is controlled by medication, and she did not present any competent medical evidence to refute that. The mitigating effects of medication on a claimed medical condition is a factor to be considered when determining whether a person has provided sufficient proof of a disability. Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 198 (2002).9, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

In the federal case, however, the trial court's written and oral orders generally reflect the post-ADAAA approach: requiring a showing of functional limitation and

---

Allfrey further presented no evidence or testimony that her alleged medical conditions substantially limit any major life activities. Indeed, she was able to participate in activities at the FMR Owners' Lodge, including "Murder Mystery Night" and Mark Heimkes's 60th birthday party, and was able to travel without the presence of a service dog, as shown in photo exhibits. Further, she admitted that she, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

9 Though Congress amended the ADA in 2008 so as to reject the holding in Toyota Motor that the ameliorative effects of mitigating factors can be taken into account when analyzing whether an impairment substantially limits a major life activity under the ADA, the FHA was not so amended, and, therefore, this principle set forth in Toyota Motor still provides guidance for FHA analysis. Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, fn. 13 (2nd Cir. 2015)(citing Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277 (11th Cir. 2014))., pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

[17] The Court concludes that the Allfrey has not met her burden of proving that an accommodation to take a service dog to the pool area and Owners' Lodge is necessary in order to afford her an equal opportunity to use and enjoy her dwelling., pg. 45, **314 2025-08-01 Defendant's PROF and COL.pdf**

the need for accommodation (i.e., access), not a strict medical diagnosis or finding of permanent, severe impairment. [18] [19] [20]

---

[18] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[19] Q. Okay. So still in the emergency services –, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yes, sir. Q. – field., pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

During your various history as EMS and training, have you witnessed people experience seizures?, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, absolutely. Grand maul seizures. And, at the time, I don't think they were classified as a PNES seizures, but I can guarantee you, that's what it was, because I remember the doctors always going: Well, did, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:06:32 PM5 6 7 8 9 01:06:43 PMO 11 12 13 14 01:06:58 PM5 16 17 18 19 01:07:12 PMO 21 22 23 24 01:07:33 PM5, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

they seize, did they convulse. I would go: No, but they why just out. And, they were out for a while, and family would call., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. And so your background is – or, you use your background to help Ms. Allfrey when she has experienced those? A. Yes. Absolutely., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Do you believe them to be seizures, with your background?, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, yes., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[20] I hope that you're able to hang in here from today forward until we can get this resolved. But I wanted to make it abundantly clear to your clients, because clients are lay people. Just like we're lay people, in certain respects. When we engage other people, other professionals, we may have very little knowledge of that field. That's why we're engaging a professional in that field., pg. 23, **2025-05-27 HEIMKES v FMRCOA.pdf**

## 2. Requirement for Expert Testimony, and Admissibility of Lay Testimony under Eleventh Circuit Precedent

The record demonstrates repeated and vigorous defense attempts to exclude lay and self-report testimony on disability, often asserting that only credentialed medical experts can establish impairment, substantial limitation, or the disability's

---

So I thought it was important for your clients, pg. 23, **2025-05-27 HEIMKES v FMRCOA.pdf**
1 2 3 4 10:09:13 AM5 6 7 8 9 10:09:36 AMO 11 12 13 14 10:09:51 AM5, pg. 23, **2025-05-27 HEIMKES v FMRCOA.pdf**
16 17 18 19 10:10:10 AMO 21 22 23 24 10:10:29 AM5, pg. 23, **2025-05-27 HEIMKES v FMRCOA.pdf**
to know that the Court has accommodated your inabilities as much as it can; and will still continue, to the extent appropriate. But when I set deadlines, when this Court sets deadlines, they are not aspirational, they are real concrete times by which the Court expects its business to be done., pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**
So, to the extent that you indicate that I have threatened to force pro se representation, you are correct, this is the day that the Court has set to move this case toward its trial. You will either be here or you won't, but the case is going forward., pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**
And I wanted to give your clients the opportunity to secure additional counsel or different counsel, if that's what they chose to do. I think I made this explicitly clear to them, that I was not trying to get them to dismiss you. I was simply trying to make clear to them that I expect the trial to go forward today, and that's what we're going to do., pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**
To the extent that counsel have made any misrepresentation, opposing counsel – and I have not seen any – when I rule – in fact, I tell juries, whenever I have civil and criminal juries, complete lay people, that I have to rule on objections. My ruling on objections doesn't reflect my feelings about the case. And, in fact, I tell them to set aside whatever they, pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**
1 2 3 4 10:10:56 AM5 6 7 8 9 10:11:17 AMO 11 12 13 14 10:11:36 AM5 16 17 18 19, pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**
10:11:53 AMO 21 22 23 24 10:12:23 AM5, pg. 24, **2025-05-27 HEIMKES v FMRCOA.pdf**

nexus to accommodation. [21] [22] [23] The court, however, overwhelmingly and repeatedly rejected these defense positions in both its pretrial evidentiary orders and at trial.

---

[21]

15.  Accordingly, Plaintiffs should be precluded from eliciting expert evidence and/or testimony regarding their alleged diagnoses and disabilities, including their own testimony, due to their failure to designate or disclose any expert witnesses., pg. 8, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

II.  Expert Medical Testimony is Required to Establish Diagnoses, Limitations Caused by Medical Condition, or Treatment to Mitigate the Effects of the Condition., pg. 8, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

16.  Plaintiffs allege discrimination under the ADA and FHA. Under either Act, they must first prove that they are disabled withing the meaning of the respective Act. Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221 (11th Cir. 2021); 42 U.S.C. § 12182(a); Bhogaita v. Altamore Heights Condominium Ass'n, Inc., 765 F.3d 1277 (11th Cir. 2014); Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008); 42 U.S. Code § 3604(f)., pg. 8, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

17.  In Alabama, only a licensed physician or osteopath is legally permitted "[t]o diagnose, treat, correct, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality." Ala. Code, §§ 34-24-50(1), 34-24-51. Necessarily then, neither a non-physician plaintiff nor any other lay witness is qualified to provide testimony regarding any medical diagnosis, linking any claimed, pg. 8, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

Case 1:22-cv-00448-TFM-N, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

Doc# 219 £ 7322, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

Filed 05/15/25, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

Page 9 of 15, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

PageID#, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

limitations or impairment to any medical condition, or the treatment required to mitigate the adverse effects of any medical condition; and any testimony he/she could possibly offer regarding a medical diagnosis or medical causation is inadmissible hearsay. See Fed. R. Evid. 702, 801, 802. "There is no dispute that lay witnesses, including Plaintiff, cannot testify on matters that require expert opinions, such as a medical diagnosis." Ruiz v. Sharkninja Operating LLC & Walmart Inc., 2024 U.S. Dist. LEXIS 94853, at *3 (M.D. Fla. Feb. 27, 2024)*. "Nor can Plaintiff simply offer her recollection of a medical diagnosis to establish that she has or suffers from such medically diagnosable condition." Id .; Ahmed v. Johnson & Johnson Healthcare Sys., 2024 U.S. Dist. LEXIS 28442, at *32 (S.D. Ala. Feb. 20, 2024)* ("the identification and diagnosis of a medical condition ... demands the expertise and specialized training of a medical doctor"); Fuller v. Davis, 2017 U.S. Dist. LEXIS 192482, at *11 n.12*

14

*(N.D. Ala. Oct. 25, 2017) ("the plaintiff [is] unqualified to testify regarding a specific medical diagnosis"); Watkins v. Mobile Cty. Bd. of Comm'rs, 1994 U.S. Dist. LEXIS 6576, at* 13 (S.D. Ala. Mar. 24, 1994) ("letter and Plaintiff's testimony as to Dr. Tam Le's diagnosis (which is substantially the same as set out in the letter) are hearsay which cannot be considered by the Court")., pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

[22] "[I]n evaluating whether medical evidence [i]s required to show that [plaintiff] had a physical [or mental] impairment, the critical inquiry is whether a lay [factfinder] would be capable of making such an assessment without medical evidence." Mancini v. City of Providence, 909 F.3d 32, 39-40 (1st Cir. 2018). "Some long-term impairments would be obvious to a lay [factfinder] (e.g., a missing arm)." Id. Conversely, "[m]edical evidence is more likely to be necessary to show an impairment when a condition would be unfamiliar to a lay [factfinder] and only an expert could diagnose that condition"; i.e., PTSD, TBI, epilepsy, or PNES. Id. Put simply, "where a [factfinder] is asked to assess complex medical or scientific issues outside the scope of a layperson's knowledge, an expert's testimony is required." Small v. Amgen, Inc., 723 Fed. Appx 722, 726 (11th Cir. 2018); Fed. R. Evid. 701, 702. See Bhogaita, 765 F.3d at 1286-87 (explaining the type of medical, pg. 8, **297 2025-07-15 Defendants Motion for Judgment on Partial Findings.pdf**

[23] Plaintiffs Heimkes and Allfrey both present claims alleging discrimination under the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA") claiming that they were discriminated against by the denial of the accommodation of a service animal. Specifically, Plaintiff Heimkes's claims are premised upon his conclusory and unsubstantiated contention that he has PTSD, that the symptoms and effects of PTSD substantially limit one or more of his major life activities, and that his purported service dog is required to ameliorate the effects of PTSD. Plaintiff Allfrey makes the equally, pg. 1, **236 2025-05-22 Def Pretrial Brief.pdf**

V., pg. 1, **236 2025-05-22 Def Pretrial Brief.pdf**

FAIRHOPE MOTORCOACH RESORT CONDOMINIUM, pg. 1, **236 2025-05-22 Def Pretrial Brief.pdf**

Case 1:22-cv-00448-TFM-N, pg. 2, **236 2025-05-22 Def Pretrial Brief.pdf**

Doc# 236 £ 7583, pg. 2, **236 2025-05-22 Def Pretrial Brief.pdf**

Filed 05/22/25, pg. 2, **236 2025-05-22 Def Pretrial Brief.pdf**

Page 2 of 33, pg. 2, **236 2025-05-22 Def Pretrial Brief.pdf**

PageID#, pg. 2, **236 2025-05-22 Def Pretrial Brief.pdf**

unsupported assertions that she has epilepsy, that the symptoms and effects of epilepsy substantially limit one or more of her major life activities, and that her purported service dog is required to ameliorate the effects of epilepsy. Neither Plaintiff, however, has any medical evidence to support these allegations or other admissible evidence sufficient to satisfy their requisite burdens of proof under the ADA or the FHA. See Fed. R. Evid. 701, 702, 801, 802, 901., pg. 2, **236 2025-05-22 Def Pretrial Brief.pdf**

Initially, Plaintiffs' ADA claims are without merit because FMRCOA is not a "public accommodation" within the scope of Title III of the ADA's operation. See 42 U.S.C. §§ 12181(7), 12182., pg. 2, **236 2025-05-22 Def Pretrial Brief.pdf**

Moreover, "[a] successful failure-to-accommodate claim has four elements. To prevail, one must prove that (1) he is disabled within the meaning of the FHA [or ADA], (2) he requested a reasonable accommodation, (3) the requested accommodation was necessary to afford him an opportunity to use and enjoy his dwelling, and (4) the defendants refused to make the accommodation." Bhogaita v. Altamonte Heights Condo. Ass'n, 765 F.3d 1277, 1285 (11th Cir. 2014). Neither Plaintiff can present the evidence required to satisfy any element of this mandatory burden. Plaintiffs have no expert testimony or admissible medical evidence to establish that they have a diagnosed mental or physical impairment, that any such impairment is the cause of any alleged limitation, or that any physician has ever prescribed a service animal or otherwise determined that a service animal is necessary, or even able, to ameliorate the effects of their claimed disabilities, or that the specific dogs they each requested be deemed service animals were individually trained to perform some task

15

The court's primary evidentiary order on the eve of trial explicitly stated: "As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery.... Ultimately, the Court will determine what weight to give evidence presented". [24] [25] The judge further reaffirmed during trial, "I have let Mr. Heimkes and Ms. Allfrey testify as to their disability as they understood it. And people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can. His ability to testify will be limited to that" [26].

Throughout the trial, lay witnesses, including the plaintiffs, described their own experiences with disability, observable symptoms, and the tasks performed by their

---

necessary to afford them an opportunity to use and enjoy their, pg. 2, **236 2025-05-22 Def Pretrial Brief.pdf**

Case 1:22-cv-00448-TFM-N, pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

Doc# 236 Filed 05/22/25 7584, pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

Page 3 of 33 PageID#, pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

dwellings. Accordingly, neither Plaintiff can satisfy their burden to obtain any relief from FMRCOA. See Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184, 194-95 (2002); Bragdon v. Abbott, 524 U.S. 624, 637 (1998); Schwarz v. City of Treasure Island, 544 F.3d 1201, 1218-19 (11th Cir. 2008). Fed. R. Evid. 701, 702, 801, 802, 901., pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

II.    NEITHER PLAINTIFF CAN PRESENT THE SUBSTANTIAL EVIDENCE REQUIRED TO ESTABLISH A DISABILITY UNDER THE ADA OR THE FHA., pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

Initially, Plaintiffs' claims fail at the threshold because neither Plaintiff can satisfy their mandatory burden to even establish that they are disabled, under the ADA and/or handicapped, under the FHA. See 42 U.S.C.S. § 12102(2); 24 C.F.R. § 100.201., pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

Under the ADA,, pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

(1)    Disability. The term "disability" means, with respect to an individual, pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

(A)    a physical or mental impairment that substantially limits one or more major life activities of such individual;, pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

(B)    a record of such an impairment; or, pg. 3, **236 2025-05-22 Def Pretrial Brief.pdf**

[24] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[25] from presenting evidence that relates to the elements of the case. Ultimately, the Court will determine what weight to give evidence presented., pg. 2, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[26] Now, I have let Mr. Heimkes and Ms. Allfrey testify as to their disability as they understood it. And people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

His ability to testify will be limited to that. ATTORNEY EATON : Again, I was trying to lay a foundation for his disability, so it has relevance., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

service animals; the court overruled defense objections and confirmed such testimony is within the realm of layperson evidence. Admissibility was consistently granted for first-hand testimony about observed limitations, behavioral episodes,

and barriers to access [27] [28] [29] [30]. The court often reminded the parties that such evidence would "go to the weight" the factfinder gives it, not to admissibility [31] [32] [33].

---

[27] THE COURT : I've looked at this issue, and I can conclude, from having looked at the case law, that the defendants cut that case law very thin; impermissibly so. For instance, a person might have high blood pressure, and they may not physically feel any of the affects of high blood pressure, and they only know that they have high blood pressure because a physician has told them that they have high blood pressure. They may, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:25:31 AM5 6 7 8 9 09:25:53 AMO 11 12 13 14 09:26:07 AM5 16 17 18 19 09:26:33 AMO 21 22 23 24 09:26 :54 AM5, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

take medication or whatever. And that person can testify that they had been diagnosed with high blood pressure, and that they take medication as a result. And, to the extent that they have feelings or symptoms as a result of that, they can say that because they personally – it affects them, personally., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

That same person, though, would not be able to testify about, say, the affects of high altitude upon people with high blood pressure, because that would require scientific or medical training., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But that same person could say, if they, say, lived in – I don't know – Denver: This is how living here in Denver has affected me, and I have high blood pressure., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, all of that goes to weight. All of that goes to me as the factfinder., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, there may be limitations – and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

[28] A. Post-traumatic stress. It gives me a lot of, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

fear of going out in public. You get a flight or fight problem, suicide tendencies, suicidal attempts. It pretty much gives me whole day, every day. Depending on if I see something on the side of the road, it triggers a memory of an EUD. So to the degree of what's happening that day., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

The TBI actually mimics the same symptoms of, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:30:28 AM5 6 7 8 9 09:30:38 AMO 11 12 13 14 09:31:01 AM5 16 17 18 19, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

09:31:20 AMO 21 22 23 24 09:31:36 AM5, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

PTSD., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

The lungs, I can walk to the mailbox; but, if I run, I'll make it 10 feet., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

The hip, I've been – I tore the fibers in the hip in Bozan, Iraq. They have repaired it and inserted the mesh that holds the hip in. That tore again. So, subsequently, had the hip replaced two years ago., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

Oh, I forgot, I've got a steel plate in my shoulder. This one's been operated on., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

I have – from the burn pits, I've contracted inflammatory arthritis and rheumatoid arthritis. The knees have been done twice. That's about all the surgeries I've had. I forget that you asked, how it affects me?, pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Yes., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

18

A. Before, with the hip, I would limp drastically. I would kind of like weeble-wobble to the left and the right, and that's damaged the left hip, trying to compensate for the right hip., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

The knees limit what I can do. If I spend a lot of time on my knees, generally, in the afternoon or next day, they're swollen to the point where I can't bend them., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Your hip, you wore your left hip out because of the pain in the right hip?, pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

09:31:59 AM 09:32:19 AMO 09:32:36 AM 09:32:48 AMO 09:33:34 AM, pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**

pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE COURT: Would you turn on your microphone? ATTORNEY EATON : Sorry., pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**

BY ATTORNEY EATON:, pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. We were kind of going through some of the ways that it affects you, and we'll just start with the hip., pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**

I believe you mentioned, you've kind of wore the left hip put over-compensating for the right hip., pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Correct., pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**

[29] Q. Ms. Heimkes, is there a difference between a pet and a service animal?, pg. 66, **2025-05-29 HEIMKES v FMRCOA.pdf**

A. Yes, sir., pg. 66, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. I, pg. 66, **2025-05-29 HEIMKES v FMRCOA.pdf**

10:42:28 AM 10:43:09 AMO 10:43:23 AM 10:43:33 AMO, pg. 66, **2025-05-29 HEIMKES v FMRCOA.pdf**

think we are getting outside the scope of the cross-examination, Your Honor, at this point., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT : I think, technically, you're, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

correct. But I'm going to allow it, and just say let's focus on where cross-examination began or focus on the areas where cross-examination went., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, the reason I ask that general question is because he asked her was the dog performing a task at that time on the video., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

So, again, just setting the foundation, is there a difference between a pet and a service animal and her knowledge., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

BY ATTORNEY EATON:, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

Is a service dog required to always be Q., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

performing a task?, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

A. No. Absolutely not. They perform tasks when it becomes necessary., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

Q. Are they allowed downtime?, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

A. Yes. They have to. They are exhausted after a day. For example, when my husband takes his dogs to the VA and he's been in appointments all day. That dog comes home and crashes, because they've been working. They're working. They're working hard. They're alert. Just like a person going to a business and working all day., pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

Q. So, they're afforded downtime, in other words?, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

10:44:08 AM, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

10:44:23 AMO 10:44:37 AM, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

10:44 :49 AMO 10:45:03 AM, pg. 67, **2025-05-29 HEIMKES v FMRCOA.pdf**

A. Absolutely., pg. 68, **2025-05-29 HEIMKES v FMRCOA.pdf**

19

Furthermore, the court allowed the plaintiffs to introduce government documentation attesting to disability status and military or Social Security records, overruling objections that only medical diagnoses from treating physicians, or

---

Q. Do you know of a rule or a statute that would prevent a service dog from being staked out?, pg. 68, **2025-05-29 HEIMKES v FMRCOA.pdf**

[30] Put her in the car. Put her seatbelt on her because she couldn't even get it buckled. And we drove home., pg. 120, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:16:57 PM5 6 7 8 9 01:17:15 PMO 11 12 13 14 01:17:26 PM5 16 17 18 19 01:17:38 PM20 21 22 23 24 01:17:51 PM5, pg. 120, **2025-05-28 HEIMKES v FMRCOA.pdf**

By the time we got home, she was a little more steady, but I did help her out of the car, because we have a truck and I didn't want her to fall out, and she was holding on to Duhe. But she was still barely coherent., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

When we first turned on to 104, she was like: Oh, I know where we're at now. Just that slow – and that's what, a half hour?, pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. So she wasn't – you didn't have a lot of conversation on the way home yesterday?, pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. No. No., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Was she capable of having –, pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. She was just kind of like – kind of: Well, this kind of sucks, you know, that I keep doing this; thank you for taking me home., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Right., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. You know, that type of deal., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

No, there wasn't a lot of conversation at all., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

When we got home, we got out. I unlocked the bus door. Walked behind her. Made sure she could get up in the bus, and I carried Duhe in the bus so she didn't. Sat down. Put her on the couch. Got her comfortable. She wound up with her cellphone being in the car, their car, out here. So, then, I got her son set up on my cellphone so he could call and check on her., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:18:07 PM5 6 7 8 9 01:18:19 PMO 11 12 13 14 01:18:31 PM5 16 17 18 19 01:18:43 PM20 21 22 23 24 01:19:01 PM5, pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

And then we got her to bed, and she was good to go. Not good to go, but she was – she had a headache, and she said: I'm just exhausted. I said: Well, you had five episodes, nearly back-to-back; that's got to be exhausting. So ..., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

And I imagine she slept most of the day, but I don't know that for a fact., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Did you speak to her last night when you got home ?, pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. I did., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Did she come over to your cottage?, pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. No. She was exhausted and had a headache., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. We've alleged that Mark has acquired some of the disabilities because his service in the military., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

And, so, was that when he came back to Arizona?, pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

[31] Now, all of that goes to weight. All of that goes to me as the factfinder., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

[32] to weight., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

[33] THE COURT : I overrule it. I think it goes to the weight and not the admissibility., pg. 45, **2025-06-05 HEIMKES v FMRCOA.pdf**

expert testimony, would suffice [34] [35]. For example, both Heimkes and Allfrey were allowed to testify, "I have PTSD," "I have epilepsy," and to describe practical limitations and how service animals help them in daily life [36] [37] [38].

---

[34] THE COURT : I overrule the objection., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

BY ATTORNEY EATON:, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Mr. Heimkes, because of your disabilities, are you on Social Security disability income?, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Yes., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. How long have you been receiving that income? THE COURT: You will need to redact this reference, because it does contain his Social Security number, I believe., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: I missed that., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

Which page?, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE COURT : I said, I believe it contains – THE LAW CLERK: So, at the very top, it says Refer To, and that number there., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

And then, on the next page, I can tell you that, too., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

Just want to make sure we don't –, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: We've filed that as an exhibit. Is there a way I can go back and retract?, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE COURT: Yes. That's what I'm saying. You, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:36:40 AM5 6 7 8 9 09:36:52 AMO 11 12 13 14 09:37:06 AM5 16 17 18 19, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

09:37:18 AM20 21 22 23 24 09:37:27 AM5, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

can redact it and then you can refile it and we'll substitute., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : I know that it's already on the court document record. Is there a way that we can get it off?, pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE COURT : That's what I'm saying, file a redacted one and we can substitute., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : I thought you meant to the trial. You meant for the record., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE LAW CLERK: There was another one on the second page, too, just for your awareness., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : I'll go back through and, pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

verify., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

[35] Q. Okay. So still in the emergency services –, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yes, sir. Q. – field., pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

During your various history as EMS and training, have you witnessed people experience seizures?, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, absolutely. Grand maul seizures. And, at the time, I don't think they were classified as a PNES seizures, but I can guarantee you, that's what it was, because I remember the doctors always going: Well, did, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:06:32 PM5 6 7 8 9 01:06:43 PMO 11 12 13 14 01:06:58 PM5 16 17 18 19 01:07:12 PMO 21 22 23 24 01:07:33 PM5, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

they seize, did they convulse. I would go: No, but they why just out. And, they were out for a while, and family would call., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. And so your background is – or, you use your background to help Ms. Allfrey when she has experienced those? A. Yes. Absolutely., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Do you believe them to be seizures, with your background?, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, yes., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[36] Q. And do you suffer from PTSD?, pg. 164, **2025-07-09 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Objection, Your Honor. These go back to our initial objections as to the witness providing testimony about a medical condition that only an expert can provide; that she's not qualified to give. It can only come from a medical expert. And, therefore, it would be hearsay. And we renew our objections in that regard., pg. 164, **2025-07-09 HEIMKES v FMRCOA.pdf**

02:09:32 PM5, pg. 164, **2025-07-09 HEIMKES v FMRCOA.pdf**

THE COURT: I overrule., pg. 164, **2025-07-09 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Your Honor, may I have a, pg. 164, **2025-07-09 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:08:42 PM5 6 7 8 9 02:08:45 PMO 11 12 13 14 02:09:01 PM5 16 17 18 19 02 :09:16 PMO 21 22 23 24, pg. 164, **2025-07-09 HEIMKES v FMRCOA.pdf**

standing objection to all questions about seizures or epilepsy or anything along those lines regarding her medical condition?, pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

THE COURT : Yes, sir., pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Thank you. BY ATTORNEY EATON:, pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

Q. The question was: Do you still suffer from PTSD, pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

as of today? A. Yes., pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

Q. Do you suffer from any other disabilities?, pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

A. Such as what?, pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

Q. Diagnoses that affect your daily activity., pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

A. Mainly, the epilepsy, and the PTSD, and anxiety., pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

Q. Anxiety, okay., pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

Do you experience petite mal or PNES seizures?, pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

A., pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

Yes., pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

Q. How often do you have seizures?, pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

A. It depends on if I'm under stress., pg. 165, **2025-07-09 HEIMKES v FMRCOA.pdf**

[37] disabilities., pg. 8, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. PTSD, TBI, two discs in my neck., pg. 8, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Back –, pg. 8, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Two desks in my lower back. Two in my upper neck., pg. 8, **2025-06-05 HEIMKES v FMRCOA.pdf**

Bilateral ringing. Deafness of the left ear., pg. 8, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:28:50 AM5 6 7 8 9 09:28:58 AMO 11 12 13 14 09:29:12 AM5 16 17 18 19, pg. 8, **2025-06-05 HEIMKES v FMRCOA.pdf**

Tmj., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

Damage to my hip, hip replacement., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

My lungs are compromised 50 percent from the burn pits., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

Going down, two bad knees, and they've been operated on twice., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

The hip has been operated on three times. They finally replaced it. Bad ankles., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

And I have problems with my feet on occasion., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Are your knees to the point where they are supposed to be replaced?, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Within the next year, yes., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Let's take just a minute and go through each one and how it impacts your daily life., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Well, top down?, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Your choice., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Post-traumatic stress. It gives me a lot of, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

fear of going out in public. You get a flight or fight problem, suicide tendencies, suicidal attempts. It pretty much gives me whole day, every day. Depending on if I see something on the side of the road, it triggers a memory of an EUD. So to the degree of what's happening that day., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

The TBI actually mimics the same symptoms of, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:30:28 AM5 6 7 8 9 09:30:38 AMO 11 12 13 14 09:31:01 AM5 16 17 18 19, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**

[38] Put her in the car. Put her seatbelt on her because she couldn't even get it buckled. And we drove home., pg. 120, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:16:57 PM5 6 7 8 9 01:17:15 PMO 11 12 13 14 01:17:26 PM5 16 17 18 19 01:17:38 PM20 21 22 23 24 01:17:51 PM5, pg. 120, **2025-05-28 HEIMKES v FMRCOA.pdf**

By the time we got home, she was a little more steady, but I did help her out of the car, because we have a truck and I didn't want her to fall out, and she was holding on to Duhe. But she was still barely coherent., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

When we first turned on to 104, she was like: Oh, I know where we're at now. Just that slow – and that's what, a half hour?, pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. So she wasn't – you didn't have a lot of conversation on the way home yesterday?, pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. No. No., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Was she capable of having –, pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. She was just kind of like – kind of: Well, this kind of sucks, you know, that I keep doing this; thank you for taking me home., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Right., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. You know, that type of deal., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

No, there wasn't a lot of conversation at all., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

When we got home, we got out. I unlocked the bus door. Walked behind her. Made sure she could get up in the bus, and I carried Duhe in the bus so she didn't. Sat down. Put her on the couch. Got her comfortable. She wound up with her cellphone being in the car, their car, out here. So, then, I got her

23

The court only drew a boundary at allowing laypersons to provide clinical/medical diagnoses or causation of symptoms, or to present themselves as medical experts: "[T]o the extent you're relying upon other people to say what their medical condition

---

son set up on my cellphone so he could call and check on her., pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:18:07 PM5 6 7 8 9 01:18:19 PMO 11 12 13 14 01:18:31 PM5 16 17 18 19 01:18:43 PM20 21 22 23 24 01:19:01 PM5, pg. 121, **2025-05-28 HEIMKES v FMRCOA.pdf**

And then we got her to bed, and she was good to go. Not good to go, but she was – she had a headache, and she said: I'm just exhausted. I said: Well, you had five episodes, nearly back-to-back; that's got to be exhausting. So ..., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

And I imagine she slept most of the day, but I don't know that for a fact., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Did you speak to her last night when you got home ?, pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. I did., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Did she come over to your cottage?, pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. No. She was exhausted and had a headache., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. We've alleged that Mark has acquired some of the disabilities because his service in the military., pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

And, so, was that when he came back to Arizona?, pg. 122, **2025-05-28 HEIMKES v FMRCOA.pdf**

is, that's not proper". [39] [40] [41] The judge explained: "If Mr. Heimkes chose to get on the stand and say 'I've been diagnosed as having PTSD,' then he can say that". [42] Lay

---

[39] Now, you may have other witnesses who might be able to say that they have a certain condition. But, to the extent you're relying upon other people to say what their medical condition is, that's not proper., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

[40] I have let your witnesses testify about whatever it is that they may have observed a person do. But, for them to take that extra step of making a diagnosis, a medical diagnosis, I have not let them make that step simply – for instance, your clients – I believe that was your client's wife that was on the stand. From her background, training, and experience, might have said, in her judgment, that she witnessed what she might term seizures, what she has referred to as episodes, or what we've allowed her to refer to as episodes., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, the reason that I ruled as I did is because, her not having been designated as an expert, meant that she would have been relying upon her background, training, and experience to reach those conclusions, that to say what she saw was a seizure. think would have crossed the line., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
I, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
If you had wanted her to testify under that rule, you probably could have qualified her as an expert,, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
1 2 3 4 09:49:02 AM5 6 7 8 9 09:49:23 AMO 11 12 13 14 09:49:47 AM5 16 17 18 19, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
09:50:12 AMO 21 22 23 24 09:50:36 AM5, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
and she could have given that testimony. But you chose not do that, for whatever reason., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, there's still other ways that you were able to get in what she observed., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, whatever observations that other people make that confirm that, then I think that's a markedly different thing. Had you led off with a witness who said "I have been diagnosed with"x"," and other witnesses said they saw things consistent with "x", that's a completely different thing, and probably would have admissible. That's not the way you chose to travel with that witness., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

[41] THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**
1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**
01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**
THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**
I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**
THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**
When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**
So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**
Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**
THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

25

witnesses, however, were barred from testifying using certain diagnostic legal terms like "seizure" unless they personally experienced or were relaying their own

---

So therein lies the ruling. ATTORNEY EATON : Your Honor, I would like to get, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

a response on the record for appeal. Do I do that orally, or would you like me to put that in a brief?, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT: You can put that in a brief., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Okay., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[42] Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

26

diagnosis; instead, they were sometimes required to refer to "episodes" [43] [44]. This restriction did not bar the essential narrative about observable limitation, impact, or need for accommodation.

---

[43] And let me explain to you for the record why. I do think the defendants try to cut the diagnoses case law too thinly, but I also realize that the law does – and the Rules of Evidence and the rules of court also have requirements., pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**
So there are still plenty of ways – well, let me back up., pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**
1 2 3 4 09:47:33 AM5 6 7 8 9 09:47:44 AMO 11 12 13 14 09:47:56 AM5 16 17 18 19, pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**
09:48 :13 AMO 21 22 23 24 09:48 : 44 AM5, pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**
You chose, for whatever reason, not to designate anyone as an expert, as a medical expert, which is your choice., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, that is one way that you could have chosen to travel. The same statute gives you other ways to travel. And, I agree with you on that, that you can travel other ways., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
I have let your witnesses testify about whatever it is that they may have observed a person do. But, for them to take that extra step of making a diagnosis, a medical diagnosis, I have not let them make that step simply – for instance, your clients – I believe that was your client's wife that was on the stand. From her background, training, and experience, might have said, in her judgment, that she witnessed what she might term seizures, what she has referred to as episodes, or what we've allowed her to refer to as episodes., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, the reason that I ruled as I did is because, her not having been designated as an expert, meant that she would have been relying upon her background, training, and experience to reach those conclusions, that to say what she saw was a seizure. think would have crossed the line., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
I, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
If you had wanted her to testify under that rule, you probably could have qualified her as an expert,, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
1 2 3 4 09:49:02 AM5 6 7 8 9 09:49:23 AMO 11 12 13 14 09:49:47 AM5 16 17 18 19, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
09:50:12 AMO 21 22 23 24 09:50:36 AM5, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
and she could have given that testimony. But you chose not do that, for whatever reason., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, there's still other ways that you were able to get in what she observed., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, whatever observations that other people make that confirm that, then I think that's a markedly different thing. Had you led off with a witness who said "I have been diagnosed with"x"," and other witnesses said they saw things consistent with "x", that's a completely different thing, and probably would have admissible. That's not the way you chose to travel with that witness., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**
So it's up to you to figure out how to do it. But, the way you have put it so far, I'm just simply going along with the evidence as you have presented it. Speaking of the presentation of evidence, I'm going to go back to what we said, what I said the other day. We're going to plow the field the first time; and then, once the plow is done – and you get to decide when it's done, unless there's a bunch of objections that I begin to sustain for repetitiveness or cumulative informs – then there will be cross to whatever extent, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**
1 2 3 4 09:50:46 AM5 6 7 8 9 09:51:11 AMO 11 12 13 14 09:51:27 AM5 16 17 18 19 09:51:45 AMO 21 22 23 24 09:52:06 AM5, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

27

Importantly, where the defense presented case law or district-level rulings supporting expert requirements, the court distinguished them or declined to follow them as inconsistent with Eleventh Circuit authority and ADAAA Congressional

---

there's cross, and then we will narrow the direct. This is not endless direct., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

So, where we left off, I believe, we had Mr. Overall on the stand., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

Am I correct? That's where we left off, Mr. Eaton?, pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

[44] But it seems to me, with the burden that you have to carry, that, to the extent that someone may suffer from a seizure or something of that nature, that you're not going to be able to get there by way of this witness, at least. Because, to the extent your witness may want to say that somebody had a seizure, or that they had PTSD, it would require them to call upon their medical training and experience. And, I believe the witness gave information about her medical related background, and I believe her testimony would draw on that, which, again, falls under the expert testimony, which would require you to have made pretrial disclosure, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:38:26 PM5 6 7 8 9 02:38:43 PMO 11 12 13 14 02:38:59 PM5 16 17 18 19 02:39:24 PMO 21 22 23 24 02:39:49 PM5, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

that you were going to try to offer that expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, what your clients – your witness or someone else called as a witness may have seen a person do and the conditions under which they did it, that's a separate thing. That's a fact witness, and that is a somebody who is not even offering an opinion; they're telling us what they have observed., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, you may have other witnesses who might be able to say that they have a certain condition. But, to the extent you're relying upon other people to say what their medical condition is, that's not proper., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : If I can just take a minute just to address what you have said so I can make sure I'm clear., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

It's not been my intent to introduce any, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

testimony about their diagnosis., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT: Well, you want them to say that – for instance, you're wanting her to say "Ms. Allfrey is having seizures." I believe that's, fairly, what you're trying to get out; correct?, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : If she's observed it with her own eyes, yes., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT : £ And that would then be, I think under these circumstances, subject to expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:40:09 PM5 6 7 8 9, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:40:26 PMO 11 12 13 14 02:40:48 PM5 16 17 18 19 02:41:00 PMO 21 22 23 24 02:41:12 PM25, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

She might have been able to give that opinion had you designated her as an expert, but you didn't. That's on you. So, not having done that, you've got to live with the consequence. The consequence is, she can't give that diagnosis, though she might have and though it might have been reliable., pg. 167, **2025-05-29 HEIMKES v FMRCOA.pdf**

intent [45] [46] [47]. The judge referenced that "the defendants cut that case law very thin; impermissibly so" and made clear that personal knowledge of symptoms and

---

[45] THE COURT : I've looked at this issue, and I can conclude, from having looked at the case law, that the defendants cut that case law very thin; impermissibly so. For instance, a person might have high blood pressure, and they may not physically feel any of the affects of high blood pressure, and they only know that they have high blood pressure because a physician has told them that they have high blood pressure. They may, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:25:31 AM5 6 7 8 9 09:25:53 AMO 11 12 13 14 09:26:07 AM5 16 17 18 19 09:26:33 AMO 21 22 23 24 09:26 :54 AM5, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

take medication or whatever. And that person can testify that they had been diagnosed with high blood pressure, and that they take medication as a result. And, to the extent that they have feelings or symptoms as a result of that, they can say that because they personally – it affects them, personally., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

That same person, though, would not be able to testify about, say, the affects of high altitude upon people with high blood pressure, because that would require scientific or medical training., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But that same person could say, if they, say, lived in – I don't know – Denver: This is how living here in Denver has affected me, and I have high blood pressure., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, all of that goes to weight. All of that goes to me as the factfinder., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, there may be limitations – and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

[46] However, as I understand the law, when it comes to medical conditions – for instance, I understand that Ms. Allfrey claims that she suffers from seizures – and that's the diagnosis that she travels under, am I, pg. 48, **2025-05-27 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:33:00 PM5 6 7 8 9, pg. 48, **2025-05-27 HEIMKES v FMRCOA.pdf**

01:33:12 PMO 11 12 13 14 01:33:25 PM5 16 17 18 19 01:33:52 PM20 21 22 23 24 01:34:15 PM5, pg. 48, **2025-05-27 HEIMKES v FMRCOA.pdf**

correct?, pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Yes, Your Honor. That's one of them., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : And that she has – and I imagine she would say she's undergoing treatment or has undergone treatment by some medical provider, and that her dog is necessary to accommodate her in identifying whenever she may be about to suffer a seizure., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

When it comes to medical testimony, the fact that a person may have a given condition is something – I think, ordinarily, something they may testify about. For instance, a witness who says – may say: I have high blood pressure; and, as a result of that, my physician has prescribed and I take a medication to deal with my condition. That would be testimony that would be admissible as their own experience with it., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

Even in the Jay case, I noticed that he mentioned they are inadmissible because they are diagnoses for treatment notes from a treating physician and not merely Jay's own experience of the symptoms., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

So, to the extent that someone may testify about their condition, I believe that is something that is allowable., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

29

experienced effects, as well as government benefits determinations, could be presented and weighed [48].

---

Now, ultimately, in the context of whether or not a medical condition might be disabling becomes a, pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:34:25 PM5 6 7 8 9, pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

01:34:46 PMO 11 12 13 14 01:35:09 PM5 16 17 18 19 01:35:37 PMO 21 22 23 24 01:36:00 PM5, pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

further issue that, in certain contexts, the expert testimony may be required for., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

So, to that extent, I would deny the defendant's motion. I'm going to have to hear whatever it is and then make my rulings within that regard., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

So it's granted in part, denied in part, without prejudice to the extent it's denied., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Your Honor, if I might ask for clarification, what part is granted?, pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : To the extent that there might be medical testimony offered by the plaintiff, they have not identified a physician who they intend to call., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN: Would that include diagnoses, Your Honor?, pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : I'm going to have to hear the testimony., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

But if a witness says "I have PTSD," and they can say, "My doctors have told me I have PTSD and this is how I – these are my symptoms and this is how my dog or animal assists me," I don't see that as being within the ambient of any of these cases or the rules to preclude that testimony., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

[47] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[48] THE COURT : I've looked at this issue, and I can conclude, from having looked at the case law, that the defendants cut that case law very thin; impermissibly so. For instance, a person might have high blood pressure, and they may not physically feel any of the affects of high blood pressure, and they only know that they have high blood pressure because a physician has told them that they have high blood pressure. They may, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:25:31 AM5 6 7 8 9 09:25:53 AMO 11 12 13 14 09:26:07 AM5 16 17 18 19 09:26:33 AMO 21 22 23 24 09:26 :54 AM5, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

take medication or whatever. And that person can testify that they had been diagnosed with high blood pressure, and that they take medication as a result. And, to the extent that they have feelings or symptoms as a result of that, they can say that because they personally – it affects them, personally., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

That same person, though, would not be able to testify about, say, the affects of high altitude upon people with high blood pressure, because that would require scientific or medical training., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But that same person could say, if they, say, lived in – I don't know – Denver: This is how living here in Denver has affected me, and I have high blood pressure., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, all of that goes to weight. All of that goes to me as the factfinder., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

When the defense moved repeatedly to strike lay or self-report testimony and to exclude government/VA records, the court denied blanket exclusion of such evidence and explained the court would determine credibility and weight [49] [50] [51] [52].

**Points of Inconsistency or Tension**

While the federal court generally aligned with the ADAAA and Eleventh Circuit precedent, some discord and inconsistency appeared during certain trial phases—most notably when the judge occasionally required witnesses who were not designated experts, but who had significant experience (like nurse practitioners or EMS personnel), to refrain from using clinical/diagnostic terms or from opining on

---

Now, there may be limitations – and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

[49] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[50] from presenting evidence that relates to the elements of the case. Ultimately, the Court will determine what weight to give evidence presented., pg. 2, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[51] THE COURT : I overrule. I think this all goes, pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**
to weight., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

[52] Now, there may be limitations – and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

31

causation [53] [54]. The line between observed symptom and clinical diagnosis could, at times, be blurry. Nevertheless, these rulings did not altogether exclude observation-

---

[53] And let me explain to you for the record why. I do think the defendants try to cut the diagnoses case law too thinly, but I also realize that the law does – and the Rules of Evidence and the rules of court also have requirements., pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**

So there are still plenty of ways – well, let me back up., pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:47:33 AM5 6 7 8 9 09:47:44 AMO 11 12 13 14 09:47:56 AM5 16 17 18 19, pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**

09:48 :13 AMO 21 22 23 24 09:48 : 44 AM5, pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**

You chose, for whatever reason, not to designate anyone as an expert, as a medical expert, which is your choice., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, that is one way that you could have chosen to travel. The same statute gives you other ways to travel. And, I agree with you on that, that you can travel other ways., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

I have let your witnesses testify about whatever it is that they may have observed a person do. But, for them to take that extra step of making a diagnosis, a medical diagnosis, I have not let them make that step simply – for instance, your clients – I believe that was your client's wife that was on the stand. From her background, training, and experience, might have said, in her judgment, that she witnessed what she might term seizures, what she has referred to as episodes, or what we've allowed her to refer to as episodes., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, the reason that I ruled as I did is because, her not having been designated as an expert, meant that she would have been relying upon her background, training, and experience to reach those conclusions, that to say what she saw was a seizure. think would have crossed the line., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

I, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

If you had wanted her to testify under that rule, you probably could have qualified her as an expert,, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:49:02 AM5 6 7 8 9 09:49:23 AMO 11 12 13 14 09:49:47 AM5 16 17 18 19, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

09:50:12 AMO 21 22 23 24 09:50:36 AM5, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

and she could have given that testimony. But you chose not do that, for whatever reason., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, there's still other ways that you were able to get in what she observed., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, whatever observations that other people make that confirm that, then I think that's a markedly different thing. Had you led off with a witness who said "I have been diagnosed with"x"," and other witnesses said they saw things consistent with "x", that's a completely different thing, and probably would have admissible. That's not the way you chose to travel with that witness., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

So it's up to you to figure out how to do it. But, the way you have put it so far, I'm just simply going along with the evidence as you have presented it. Speaking of the presentation of evidence, I'm going to go back to what we said, what I said the other day. We're going to plow the field the first time; and then, once the plow is done – and you get to decide when it's done, unless there's a bunch of objections that I begin to sustain for repetitiveness or cumulative informs – then there will be cross to whatever extent, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:50:46 AM5 6 7 8 9 09:51:11 AMO 11 12 13 14 09:51:27 AM5 16 17 18 19 09:51:45 AMO 21 22 23 24 09:52:06 AM5, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

based or personal-experience testimony on major life activities or substantial limitation.

By contrast, in the state court's earlier summary judgment, the judge not only focused on severity as a threshold but also required medical or expert testimony for

---

there's cross, and then we will narrow the direct. This is not endless direct., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

So, where we left off, I believe, we had Mr. Overall on the stand., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

Am I correct? That's where we left off, Mr. Eaton?, pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

[54] ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

33

nearly all elements of disability, invoking a restrictive pre-ADAAA framework . [55] [56] [57] [58] [59] [60] This was notably inconsistent with post-2008 federal standards and Eleventh Circuit law, as state court required "admissible medical evidence" and found self-

---

[55] they themselves testified as to medical conditions with which they infer they have been diagnosed by their physicians, but no admissible evidence of any such diagnosis was presented - their own testimony in this respect was not corroborated by physicians' testimony, nor was it supported by any authenticated or certified medical records. See Fed. R. Evid. 602, 701, 702, 801, 802. Although it is, alone, "insufficient for individuals attempting to prove disability [or handicap status] ... to merely submit evidence of a medical diagnosis of an impairment," neither Plaintiff has done even that, submitting only their own lay testimony. Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 198 (2002); King v. BP Expl. & Prod., Inc., 2023 U.S. Dist. LEXIS 212061, at *10 (S.D. Ala. Nov. 29, 2023) (a plaintiff "must rely on expert testimony to prove her medical diagnosis and causation"); Fuller v. Davis, 2017 U.S. Dist. LEXIS 192482, at* 11 n.12 (N.D. Ala. Oct. 25, 2017) ("the plaintiff [is] unqualified to testify regarding a specific medical diagnosis"); see Fed. R. Evid. 701, 702, 801, 802, 901. In short, Plaintiffs have failed to present sufficient admissible medical evidence of their alleged physical or mental impairments. See Colton v. Fehrer Auto., N. Am., LLC, 2021 U.S. App. LEXIS 21541, at *9 (11th Cir. July 21, 2021) (Claiming to have some physical or mental limitation "without [proving] any underlying [mental] or physiological disorder is simply not enough")., pg. 27, **314 2025-08-01 Defendant's PROF and COL.pdf**

[56] Because medical conditions, such as epilepsy, PTSD, and TBI can only be diagnosed by a licensed physician, it is axiomatic that any testimony from a lay witness relating such a diagnosis could only be inadmissible hearsay. Fed. R. Evid. 602, 801, 802. Indeed, the precedent in this Circuit has long-established that a plaintiff's, or other lay witness', testimony as to a physician's medical diagnosis is "pure hearsay, with all the unreliability that attaches to such recitals by an interested witness of what was said long ago ... statements of unidentified persons are not admissible to establish the facts stated, nor would they be if attributed to examining physicians." United States v. Buck, 70 F.2d 1007 (5th Cir. 1934); Luke v. United States, 84 F.2d 823, 825 (5th Cir. 1936).8 In this Circuit, "[t]here is no dispute that lay witnesses, including Plaintiff, cannot testify on matters that require expert opinions, such as a medical diagnosis." Ruiz v. Sharkninja Operating LLC & Walmart Inc., 2024 U.S. Dist. LEXIS 94853, at *3 (M.D. Fla. Feb. 27, 2024). "Nor can Plaintiff simply offer her recollection of a medical diagnosis to establish that she, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

[57] First, neither Plaintiff offered any competent or admissible evidence that any impairment was the cause of any claimed limitation. When the impairments and resulting claimed limitations "complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts." Felkins v. City of Lakewood, 774 F.3d 647, 652 (10th Cir. 2014). Plaintiffs' own statements of their alleged diagnosed impairments and testimony relating any claimed limitation to their purported impairments "are inadmissible ... insofar as they diagnose their condition as [epilepsy, PTSD, or TBI] or state how [such a] condition causes limitations on major life activities, for those are clearly matters beyond the realm of common experience and require the special skill and knowledge of an expert witness." Id. at 652; See Mueck v. La Grange Acquisitions, L.P., 75 F.4th 469, 479 (5th Cir. 2023) ("Neither the Supreme Court nor this court [or the Eleventh Circuit] has recognized the concept of a per se disability ... no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies."); . ") Ramos v. Cannon, 2021 U.S. Dist. LEXIS 254319, at *9 (W.D. Tex. Nov. 9, 2021) ("symptoms of post- traumatic stress disorder are neither common nor basic, and therefore require expert testimony"); Lynch v. Conn. Judicial Branch, 2020 U.S. Dist. LEXIS 183656, at *22-24 (D. Conn. Sep. 30, 2020) (plaintiff "has not provided, pg. 31, **314 2025-08-01 Defendant's PROF and COL.pdf** Case 1:22-cv-00448-TFM-N Doc# 314 Filed 08/01/25 11377, pg. 32, **314 2025-08-01 Defendant's PROF and COL.pdf**

[58] The Court concludes that Heimkes has failed to present any expert medical testimony to support his claim of a "disability", i.e., an impairment which substantially limits one or more major life activities, and therefore, he has not met his burden of proof on this element of his claim., pg. 33, **314 2025-08-01 Defendant's PROF and COL.pdf**

Shearldine Allfrey's proof suffers the same fatal defects. She likewise failed to present admissible "medical evidence [that] supports her allegation that she has [PTSD, epilepsy and PNES] or details the degree to which [they] affect[] her major life activities ... That leaves only [Allfrey's] own declarations. She states that she has [PTSD, epilepsy and PNES] ... and that [they cause] her alleged difficulties [in performing activities of daily living]. Such lay evidence, however, is inadmissible in court ... [Allfrey is not] a medical expert, so her opinion testimony on a medical, pg. 33, **314 2025-08-01 Defendant's PROF and COL.pdf**

Case 1:22-cv-00448-TFM-N, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

[59] Further factoring into the analysis of Allfrey's failure to present sufficient evidence that her alleged impairment substantially limits one or more major life activities is evidence that her epilepsy is controlled by medication. The unredacted letter from Ironton Family Care revealed that her epilepsy is controlled by medication, and she did not present any competent medical evidence to refute that. The mitigating effects of medication on a claimed medical condition is a factor to be considered when determining whether a person has provided sufficient proof of a disability. Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 198 (2002).9, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

Allfrey further presented no evidence or testimony that her alleged medical conditions substantially limit any major life activities. Indeed, she was able to participate in activities at the FMR Owners' Lodge, including "Murder Mystery Night" and Mark Heimkes's 60th birthday party, and was able to travel without the presence of a service dog, as shown in photo exhibits. Further, she admitted that she, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

9 Though Congress amended the ADA in 2008 so as to reject the holding in Toyota Motor that the ameliorative effects of mitigating factors can be taken into account when analyzing whether an impairment substantially limits a major life activity under the ADA, the FHA was not so amended, and, therefore, this principle set forth in Toyota Motor still provides guidance for FHA analysis. Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, fn. 13 (2nd Cir. 2015)(citing Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277 (11th Cir. 2014))., pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

[60] The Court concludes that the Allfrey has not met her burden of proving that an accommodation to take a service dog to the pool area and Owners' Lodge is necessary in order to afford her an equal opportunity to use and enjoy her dwelling., pg. 45, **314 2025-08-01 Defendant's PROF and COL.pdf**

report or lay testimony insufficient, except in the most obvious of cases (e.g., a missing limb). [61] [62] The state court thus failed to follow current law focusing on functional limitation and access, and its requirement for expert testimony across the board contradicts federal circuit precedent.

In the more recent federal proceedings, while expert evidence was not required to prove disability or need for service animal, the court did require expert testimony for

---

[61] 194 (2002) (citing 42 U.S.C. § 12102(2)(A)). "[M]edically diagnosed mental [or physiological] conditions are impairments." Emerson v. N. States Power Co., 256 F.3d 506, 511 (7th Cir. 2001) (quoting Krocka v. City of Chicago, 203 F.3d 507, 512 (7th Cir. 2000)). "Medical evidence is ... necessary to show an impairment when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition" (e.g., PTSD or epilepsy); as opposed to "long-term impairments [that] would be obvious to a lay jury (e.g., a missing arm)." Mancini v. City of Providence, 909 F.3d 32, 39-40 (1st Cir. 2018); See, e.g., Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 996 (10th Cir. 2019) ("Courts require expert evidence when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition."); Sweeney v. Ala. Alcoholic Bev. Control Bd., 94 F. Supp. 2d 1241, 1262 (M.D. Ala. 2000) ("in support of her claim that she suffers from 'fatigue syndrome,' Plaintiff has proffered only bald assertions that Dr. Beauchamp diagnosed her with 'fatigue syndrome' and recorded this diagnosis in a note ... The court ... finds that the only evidence supporting Plaintiff's 'fatigue syndrome' claim constitutes inadmissible hearsay. Thus, the court finds that Plaintiff has not met her burden of showing that she suffers from a physical impairment, as her statements are inadmissible hearsay"); Thomas v. Austal, USA, LLC, 2011 U.S. Dist. LEXIS 146049, at *4-5 (S.D. Ala. Dec. 20, 2011) (quoting Crocker v. City of Fairhope, 2005 WL 6217200 (S.D. Ala. May 4, 2005)) ("in 'every known Eleventh Circuit case in which PTSD was diagnosed,, pg. 28, **314 2025-08-01 Defendant's PROF and COL.pdf**
Case 1:22-cv-00448-TFM-N, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**
[62]

23. Neither Heimkes nor Allfrey have any visible signs of a disability or handicap that would be obvious to a layman., pg. 10, **314 2025-08-01 Defendant's PROF and COL.pdf**
24. At trial, neither Heimkes nor Allfrey presented any competent and admissible evidence, through expert testimony or otherwise, establishing that they have been medically diagnosed with a physical or mental impairment. See Fed. R. Evid. 602, 701, 702, 801, 802., pg. 10, **314 2025-08-01 Defendant's PROF and COL.pdf**

third parties or lay witness "diagnosis" purposes; lay evidence remained sufficient, however, for observable limitation and lived experience [63] [64] [65] [66].

**Summary Table: Federal Court Alignment with ADAAA and Eleventh Circuit Precedent**

---

[63] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[64] from presenting evidence that relates to the elements of the case. Ultimately, the Court will determine what weight to give evidence presented., pg. 2, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[65] THE COURT : I've looked at this issue, and I can conclude, from having looked at the case law, that the defendants cut that case law very thin; impermissibly so. For instance, a person might have high blood pressure, and they may not physically feel any of the affects of high blood pressure, and they only know that they have high blood pressure because a physician has told them that they have high blood pressure. They may, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:25:31 AM5 6 7 8 9 09:25:53 AMO 11 12 13 14 09:26:07 AM5 16 17 18 19 09:26:33 AMO 21 22 23 24 09:26 :54 AM5, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

take medication or whatever. And that person can testify that they had been diagnosed with high blood pressure, and that they take medication as a result. And, to the extent that they have feelings or symptoms as a result of that, they can say that because they personally – it affects them, personally., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

That same person, though, would not be able to testify about, say, the affects of high altitude upon people with high blood pressure, because that would require scientific or medical training., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But that same person could say, if they, say, lived in – I don't know – Denver: This is how living here in Denver has affected me, and I have high blood pressure., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, all of that goes to weight. All of that goes to me as the factfinder., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, there may be limitations – and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

[66] Now, I have let Mr. Heimkes and Ms. Allfrey testify as to their disability as they understood it. And people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

His ability to testify will be limited to that. ATTORNEY EATON : Again, I was trying to lay a foundation for his disability, so it has relevance., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

37

| Court Action | ADAAA Access Focus | Required Expert Testimony (vs. Lay)? | Citations |
|---|---|---|---|
| Federal Court evidentiary rulings/orders | Yes—focus on function/use | No expert required for lived experience, only for medical/diagnosis, otherwise lay | 67 68 69 70 71 |

[67] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[68] from presenting evidence that relates to the elements of the case. Ultimately, the Court will determine what weight to give evidence presented., pg. 2, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[69] THE COURT : I've looked at this issue, and I can conclude, from having looked at the case law, that the defendants cut that case law very thin; impermissibly so. For instance, a person might have high blood pressure, and they may not physically feel any of the affects of high blood pressure, and they only know that they have high blood pressure because a physician has told them that they have high blood pressure. They may, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:25:31 AM5 6 7 8 9 09:25:53 AMO 11 12 13 14 09:26:07 AM5 16 17 18 19 09:26:33 AMO 21 22 23 24 09:26 :54 AM5, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

take medication or whatever. And that person can testify that they had been diagnosed with high blood pressure, and that they take medication as a result. And, to the extent that they have feelings or symptoms as a result of that, they can say that because they personally – it affects them, personally., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

That same person, though, would not be able to testify about, say, the affects of high altitude upon people with high blood pressure, because that would require scientific or medical training., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But that same person could say, if they, say, lived in – I don't know – Denver: This is how living here in Denver has affected me, and I have high blood pressure., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, all of that goes to weight. All of that goes to me as the factfinder., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, there may be limitations – and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

[70] Now, I have let Mr. Heimkes and Ms. Allfrey testify as to their disability as they understood it. And people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

His ability to testify will be limited to that. ATTORNEY EATON : Again, I was trying to lay a foundation for his disability, so it has relevance., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

[71] ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

| Court Action | ADAAA Access Focus | Required Expert Testimony (vs. Lay)? | Citations |
|---|---|---|---|
| | | testimony permitted (weight for factfinder) | |

---

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So therein lies the ruling. ATTORNEY EATON : Your Honor, I would like to get, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

a response on the record for appeal. Do I do that orally, or would you like me to put that in a brief?, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT: You can put that in a brief., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Okay., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON :, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

39

| Court Action | ADAAA Access Focus | Required Expert Testimony (vs. Lay)? | Citations |
|---|---|---|---|
| Admission of self-report/government records | Yes | Admitted as to observed impact | 72 73 74 75 |

---

[72] THE COURT : I overrule the objection., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

[73] to weight., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

[74] A. Post-traumatic stress. It gives me a lot of, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**
fear of going out in public. You get a flight or fight problem, suicide tendencies, suicidal attempts. It pretty much gives me whole day, every day. Depending on if I see something on the side of the road, it triggers a memory of an EUD. So to the degree of what's happening that day., pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**
The TBI actually mimics the same symptoms of, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**
1 2 3 4 09:30:28 AM5 6 7 8 9 09:30:38 AMO 11 12 13 14 09:31:01 AM5 16 17 18 19, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**
09:31:20 AMO 21 22 23 24 09:31:36 AM5, pg. 9, **2025-06-05 HEIMKES v FMRCOA.pdf**
PTSD., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
The lungs, I can walk to the mailbox; but, if I run, I'll make it 10 feet., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
The hip, I've been – I tore the fibers in the hip in Bozan, Iraq. They have repaired it and inserted the mesh that holds the hip in. That tore again. So, subsequently, had the hip replaced two years ago., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
Oh, I forgot, I've got a steel plate in my shoulder. This one's been operated on., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
I have – from the burn pits, I've contracted inflammatory arthritis and rheumatoid arthritis. The knees have been done twice. That's about all the surgeries I've had. I forget that you asked, how it affects me?, pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
Q. Yes., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
A. Before, with the hip, I would limp drastically. I would kind of like weeble-wobble to the left and the right, and that's damaged the left hip, trying to compensate for the right hip., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
The knees limit what I can do. If I spend a lot of time on my knees, generally, in the afternoon or next day, they're swollen to the point where I can't bend them., pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
Q. Your hip, you wore your left hip out because of the pain in the right hip?, pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
1 2 3 4 09:31:59 AM5 6 7 8 9 09:32:19 AMO 11 12 13 14 09:32:36 AM5 16 17 18 19 09:32:48 AMO 21 22 23 24 09:33:34 AM5, pg. 10, **2025-06-05 HEIMKES v FMRCOA.pdf**
1 2, pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**
THE COURT: Would you turn on your microphone? ATTORNEY EATON : Sorry., pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**
BY ATTORNEY EATON:, pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**
Q. We were kind of going through some of the ways that it affects you, and we'll just start with the hip., pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**
I believe you mentioned, you've kind of wore the left hip put over-compensating for the right hip., pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**
A. Correct., pg. 11, **2025-06-05 HEIMKES v FMRCOA.pdf**
[75] Q. Okay. So still in the emergency services –, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**
A. Yes, sir. Q. – field., pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

During your various history as EMS and training, have you witnessed people experience seizures?, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, absolutely. Grand maul seizures. And, at the time, I don't think they were classified as a PNES seizures, but I can guarantee you, that's what it was, because I remember the doctors always going: Well, did, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:06:32 PM5 6 7 8 9 01:06:43 PMO 11 12 13 14 01:06:58 PM5 16 17 18 19 01:07:12 PMO 21 22 23 24 01:07:33 PM5, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

they seize, did they convulse. I would go: No, but they why just out. And, they were out for a while, and family would call., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. And so your background is – or, you use your background to help Ms. Allfrey when she has experienced those? A. Yes. Absolutely., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Do you believe them to be seizures, with your background?, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, yes., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

41

| Court Action | ADAAA Access Focus | Required Expert Testimony (vs. Lay)? | Citations |
|---|---|---|---|
| Restriction on "diagnosis" by lay witnesses | Qualified | Only for diagnosis/medical opinion; otherwise lay observation allowed | 76 77 78 |

[76] And let me explain to you for the record why. I do think the defendants try to cut the diagnoses case law too thinly, but I also realize that the law does – and the Rules of Evidence and the rules of court also have requirements., pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**

So there are still plenty of ways – well, let me back up., pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:47:33 AM5 6 7 8 9 09:47:44 AMO 11 12 13 14 09:47:56 AM5 16 17 18 19, pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**

09:48 :13 AMO 21 22 23 24 09:48 : 44 AM5, pg. 23, **2025-06-03 HEIMKES v FMRCOA.pdf**

You chose, for whatever reason, not to designate anyone as an expert, as a medical expert, which is your choice., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, that is one way that you could have chosen to travel. The same statute gives you other ways to travel. And, I agree with you on that, that you can travel other ways., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

I have let your witnesses testify about whatever it is that they may have observed a person do. But, for them to take that extra step of making a diagnosis, a medical diagnosis, I have not let them make that step simply – for instance, your clients – I believe that was your client's wife that was on the stand. From her background, training, and experience, might have said, in her judgment, that she witnessed what she might term seizures, what she has referred to as episodes, or what we've allowed her to refer to as episodes., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, the reason that I ruled as I did is because, her not having been designated as an expert, meant that she would have been relying upon her background, training, and experience to reach those conclusions, that to say what she saw was a seizure. think would have crossed the line., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

I, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

If you had wanted her to testify under that rule, you probably could have qualified her as an expert,, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:49:02 AM5 6 7 8 9 09:49:23 AMO 11 12 13 14 09:49:47 AM5 16 17 18 19, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

09:50:12 AMO 21 22 23 24 09:50:36 AM5, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

and she could have given that testimony. But you chose not do that, for whatever reason., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, there's still other ways that you were able to get in what she observed., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, whatever observations that other people make that confirm that, then I think that's a markedly different thing. Had you led off with a witness who said "I have been diagnosed with"x"," and other witnesses said they saw things consistent with "x", that's a completely different thing, and probably would have admissible. That's not the way you chose to travel with that witness., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

So it's up to you to figure out how to do it. But, the way you have put it so far, I'm just simply going along with the evidence as you have presented it. Speaking of the presentation of evidence, I'm going to go back to what we said, what I said the other day. We're going to plow the field the first time; and then, once the plow is done – and you get to decide when it's done, unless there's a bunch of objections that I begin to sustain for repetitiveness or cumulative informs – then there will be cross to whatever extent, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

42

09:50:46 AM 09:51:11 AMO 09:51:27 AM 09:51:45 AMO 09:52:06 AM, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

there's cross, and then we will narrow the direct. This is not endless direct., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

So, where we left off, I believe, we had Mr. Overall on the stand., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

Am I correct? That's where we left off, Mr. Eaton?, pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

[77] But it seems to me, with the burden that you have to carry, that, to the extent that someone may suffer from a seizure or something of that nature, that you're not going to be able to get there by way of this witness, at least. Because, to the extent your witness may want to say that somebody had a seizure, or that they had PTSD, it would require them to call upon their medical training and experience. And, I believe the witness gave information about her medical related background, and I believe her testimony would draw on that, which, again, falls under the expert testimony, which would require you to have made pretrial disclosure, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:38:26 PM 02:38:43 PMO 02:38:59 PM 02:39:24 PMO 02:39:49 PM, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

that you were going to try to offer that expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, what your clients – your witness or someone else called as a witness may have seen a person do and the conditions under which they did it, that's a separate thing. That's a fact witness, and that is a somebody who is not even offering an opinion; they're telling us what they have observed., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, you may have other witnesses who might be able to say that they have a certain condition. But, to the extent you're relying upon other people to say what their medical condition is, that's not proper., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : If I can just take a minute just to address what you have said so I can make sure I'm clear., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

It's not been my intent to introduce any, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

testimony about their diagnosis., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT: Well, you want them to say that – for instance, you're wanting her to say "Ms. Allfrey is having seizures." I believe that's, fairly, what you're trying to get out; correct?, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : If she's observed it with her own eyes, yes., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT : £ And that would then be, I think under these circumstances, subject to expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:40:09 PM, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:40:26 PMO 02:40:48 PM 02:41:00 PMO 02:41:12 PM, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

She might have been able to give that opinion had you designated her as an expert, but you didn't. That's on you. So, not having done that, you've got to live with the consequence. The consequence is, she can't give that diagnosis, though she might have and though it might have been reliable., pg. 167, **2025-05-29 HEIMKES v FMRCOA.pdf**

[78] ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

43

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So therein lies the ruling. ATTORNEY EATON : Your Honor, I would like to get, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

a response on the record for appeal. Do I do that orally, or would you like me to put that in a brief?, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT: You can put that in a brief., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Okay., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON :, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

| Court Action | ADAAA Access Focus | Required Expert Testimony (vs. Lay)? | Citations |
|---|---|---|---|
| State court summary judgment approach | No—focused on severity | Required medical/expert for nearly all aspects | 79 80 81 82 83 |

[79] they themselves testified as to medical conditions with which they infer they have been diagnosed by their physicians, but no admissible evidence of any such diagnosis was presented - their own testimony in this respect was not corroborated by physicians' testimony, nor was it supported by any authenticated or certified medical records. See Fed. R. Evid. 602, 701, 702, 801, 802. Although it is, alone, "insufficient for individuals attempting to prove disability [or handicap status] … to merely submit evidence of a medical diagnosis of an impairment," neither Plaintiff has done even that, submitting only their own lay testimony. Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 198 (2002); King v. BP Expl. & Prod., Inc., 2023 U.S. Dist. LEXIS 212061, at *10 (S.D. Ala. Nov. 29, 2023) (a plaintiff "must rely on expert testimony to prove her medical diagnosis and causation"); Fuller v. Davis, 2017 U.S. Dist. LEXIS 192482, at* 11 n.12 (N.D. Ala. Oct. 25, 2017) ("the plaintiff [is] unqualified to testify regarding a specific medical diagnosis"); see Fed. R. Evid. 701, 702, 801, 802, 901. In short, Plaintiffs have failed to present sufficient admissible medical evidence of their alleged physical or mental impairments. See Colton v. Fehrer Auto., N. Am., LLC, 2021 U.S. App. LEXIS 21541, at *9 (11th Cir. July 21, 2021) (Claiming to have some physical or mental limitation "without [proving] any underlying [mental] or physiological disorder is simply not enough")., pg. 27, **314 2025-08-01 Defendant's PROF and COL.pdf**

[80] Because medical conditions, such as epilepsy, PTSD, and TBI can only be diagnosed by a licensed physician, it is axiomatic that any testimony from a lay witness relating such a diagnosis could only be inadmissible hearsay. Fed. R. Evid. 602, 801, 802. Indeed, the precedent in this Circuit has long-established that a plaintiff's, or other lay witness', testimony as to a physician's medical diagnosis is "pure hearsay, with all the unreliability that attaches to such recitals by an interested witness of what was said long ago … statements of unidentified persons are not admissible to establish the facts stated, nor would they be if attributed to examining physicians." United States v. Buck, 70 F.2d 1007 (5th Cir. 1934); Luke v. United States, 84 F.2d 823, 825 (5th Cir. 1936).8 In this Circuit, "[t]here is no dispute that lay witnesses, including Plaintiff, cannot testify on matters that require expert opinions, such as a medical diagnosis." Ruiz v. Sharkninja Operating LLC & Walmart Inc., 2024 U.S. Dist. LEXIS 94853, at *3 (M.D. Fla. Feb. 27, 2024). "Nor can Plaintiff simply offer her recollection of a medical diagnosis to establish that she, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

[81] First, neither Plaintiff offered any competent or admissible evidence that any impairment was the cause of any claimed limitation. When the impairments and resulting claimed limitations "complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, they must be proved by the testimony of medical experts." Felkins v. City of Lakewood, 774 F.3d 647, 652 (10th Cir. 2014). Plaintiffs' own statements of their alleged diagnosed impairments and testimony relating any claimed limitation to their purported impairments "are inadmissible … insofar as they diagnose their condition as [epilepsy, PTSD, or TBI] or state how [such a] condition causes limitations on major life activities, for those are clearly matters beyond the realm of common experience and require the special skill and knowledge of an expert witness." Id. at 652; See Mueck v. La Grange Acquisitions, L.P., 75 F.4th 469, 479 (5th Cir. 2023) ("Neither the Supreme Court nor this court [or the Eleventh Circuit] has recognized the concept of a per se disability … no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies."); . ") Ramos v. Cannon, 2021 U.S. Dist. LEXIS 254319, at *9 (W.D. Tex. Nov. 9, 2021) ("symptoms of post- traumatic stress disorder are neither common nor basic, and therefore require expert testimony"); Lynch v. Conn. Judicial Branch, 2020 U.S. Dist. LEXIS 183656, at *22-24 (D. Conn. Sep. 30, 2020) (plaintiff "has not provided, pg. 31, **314 2025-08-01 Defendant's PROF and COL.pdf**

45

Case 1:22-cv-00448-TFM-N Doc# 314 Filed 08/01/25 11377, pg. 32, **314 2025-08-01 Defendant's PROF and COL.pdf**

[82] The Court concludes that the Allfrey has not met her burden of proving that an accommodation to take a service dog to the pool area and Owners' Lodge is necessary in order to afford her an equal opportunity to use and enjoy her dwelling., pg. 45, **314 2025-08-01 Defendant's PROF and COL.pdf**

[83] Further factoring into the analysis of Allfrey's failure to present sufficient evidence that her alleged impairment substantially limits one or more major life activities is evidence that her epilepsy is controlled by medication. The unredacted letter from Ironton Family Care revealed that her epilepsy is controlled by medication, and she did not present any competent medical evidence to refute that. The mitigating effects of medication on a claimed medical condition is a factor to be considered when determining whether a person has provided sufficient proof of a disability. Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 198 (2002).9, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf** Allfrey further presented no evidence or testimony that her alleged medical conditions substantially limit any major life activities. Indeed, she was able to participate in activities at the FMR Owners' Lodge, including "Murder Mystery Night" and Mark Heimkes's 60th birthday party, and was able to travel without the presence of a service dog, as shown in photo exhibits. Further, she admitted that she, pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

9 Though Congress amended the ADA in 2008 so as to reject the holding in Toyota Motor that the ameliorative effects of mitigating factors can be taken into account when analyzing whether an impairment substantially limits a major life activity under the ADA, the FHA was not so amended, and, therefore, this principle set forth in Toyota Motor still provides guidance for FHA analysis. Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, fn. 13 (2nd Cir. 2015)(citing Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277 (11th Cir. 2014))., pg. 34, **314 2025-08-01 Defendant's PROF and COL.pdf**

46

| Court Action | ADAAA Access Focus | Required Expert Testimony (vs. Lay)? | Citations |
|---|---|---|---|
| Board/defense position and practice | Mixed—defense pushed severity and | Mostly rejected, court allowed lay narrative and government records | 84 85 86 87 88 |

84

15. Accordingly, Plaintiffs should be precluded from eliciting expert evidence and/or testimony regarding their alleged diagnoses and disabilities, including their own testimony, due to their failure to designate or disclose any expert witnesses., pg. 8, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

II. Expert Medical Testimony is Required to Establish Diagnoses, Limitations Caused by Medical Condition, or Treatment to Mitigate the Effects of the Condition., pg. 8, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

16. Plaintiffs allege discrimination under the ADA and FHA. Under either Act, they must first prove that they are disabled withing the meaning of the respective Act. Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221 (11th Cir. 2021); 42 U.S.C. § 12182(a); Bhogaita v. Altamore Heights Condominium Ass'n, Inc., 765 F.3d 1277 (11th Cir. 2014); Schwarz v. City of Treasure Island, 544 F.3d 1201 (11th Cir. 2008); 42 U.S. Code § 3604(f)., pg. 8, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

17. In Alabama, only a licensed physician or osteopath is legally permitted "[t]o diagnose, treat, correct, advise or prescribe for any human disease, ailment, injury, infirmity, deformity, pain or other condition, physical or mental, real or imaginary, by any means or instrumentality." Ala. Code, §§ 34-24-50(1), 34-24-51. Necessarily then, neither a non-physician plaintiff nor any other lay witness is qualified to provide testimony regarding any medical diagnosis, linking any claimed, pg. 8, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

Case 1:22-cv-00448-TFM-N, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

Doc# 219 £ 7322, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

Filed 05/15/25, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

Page 9 of 15, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

PageID#, pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

limitations or impairment to any medical condition, or the treatment required to mitigate the adverse effects of any medical condition; and any testimony he/she could possibly offer regarding a medical diagnosis or medical causation is inadmissible hearsay. See Fed. R. Evid. 702, 801, 802. "There is no dispute that lay witnesses, including Plaintiff, cannot testify on matters that require expert opinions, such as a medical diagnosis." Ruiz v. Sharkninja Operating LLC & Walmart Inc., 2024 U.S. Dist. LEXIS 94853, at *3 (M.D. Fla. Feb. 27, 2024). *"Nor can Plaintiff simply offer her recollection of a medical diagnosis to establish that she has or suffers from such medically diagnosable condition." Id .;* Ahmed v. Johnson & Johnson Healthcare Sys., 2024 U.S. Dist. LEXIS 28442, at *32 (S.D. Ala. Feb. 20, 2024) ("the identification and diagnosis of a medical condition ... demands the expertise and specialized training of a medical doctor"); Fuller v. Davis, 2017 U.S. Dist. LEXIS 192482, at *11 n.12*

47

(N.D. Ala. Oct. 25, 2017) ("the plaintiff [is] unqualified to testify regarding a specific medical diagnosis"); Watkins v. Mobile Cty. Bd. of Comm'rs, 1994 U.S. Dist. LEXIS 6576, at 13 (S.D. Ala. Mar. 24, 1994) ("letter and Plaintiff's testimony as to Dr. Tam Le's diagnosis (which is substantially the same as set out in the letter) are hearsay which cannot be considered by the Court")., pg. 9, **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**

[85] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[86] from presenting evidence that relates to the elements of the case. Ultimately, the Court will determine what weight to give evidence presented., pg. 2, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[87] THE COURT : I've looked at this issue, and I can conclude, from having looked at the case law, that the defendants cut that case law very thin; impermissibly so. For instance, a person might have high blood pressure, and they may not physically feel any of the affects of high blood pressure, and they only know that they have high blood pressure because a physician has told them that they have high blood pressure. They may, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:25:31 AM5 6 7 8 9 09:25:53 AMO 11 12 13 14 09:26:07 AM5 16 17 18 19 09:26:33 AMO 21 22 23 24 09:26 :54 AM5, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

take medication or whatever. And that person can testify that they had been diagnosed with high blood pressure, and that they take medication as a result. And, to the extent that they have feelings or symptoms as a result of that, they can say that because they personally – it affects them, personally., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

That same person, though, would not be able to testify about, say, the affects of high altitude upon people with high blood pressure, because that would require scientific or medical training., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But that same person could say, if they, say, lived in – I don't know – Denver: This is how living here in Denver has affected me, and I have high blood pressure., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, all of that goes to weight. All of that goes to me as the factfinder., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, there may be limitations – and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

[88] 01:09:16 PM20 21 22 23 24 01:09:59 PM5, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Shari Heimkes?, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

Excuse me. Chris and Shari Allfrey? A. I believe it's been four years since – they were – they arrived shortly after we got here, and we've been here for five, going on six. So ... Q. And, basically, been friends since then, or established a friendship?, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yes. They moved in next to us, and we have a lot in common. Q. You have them over to your cottage to eat pretty often?, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yes., pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. And have you become good friends with Shari?, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yes., pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

48

| Court Action | ADAAA Access Focus | Required Expert Testimony (vs. Lay)? | Citations |
|---|---|---|---|
| | expert standard, but court generally did not adopt | | |

**Conclusion**

In sum, the federal court actions, as described and cited above, align with the ADAAA's focus on access and functional limitation, not on a pre-amendment "severity" threshold. The court did not require expert testimony as a categorical prerequisite to establishing the existence of a disability or the need for a service animal accommodation, instead permitting lay and self-report testimony on

---

Q. And have you seen her have what we'll refer to as episodes?, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yes. Multiple., pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Would you describe those for us, please., pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

You don't have to describe. Just, in general,, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

how you said before, that you were able to recognize the difference., pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

Have you seen any differences in things that she has when she has these episodes? A. Well, you can tell that her – sometimes, she will be sitting next to me, and she'll say, you know:, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:10:15 PM5 6 7 8 9 01:10:28 PMO 11 12 13 14 01:10:37 PM5 16 17 18 19 01:10:47 PM20 21 22 23 24 01:10:59 PM5, pg. 114, **2025-05-28 HEIMKES v FMRCOA.pdf**

Look at my eyes. And you can see them starting to pinpoint a little bit., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

But she would – normally, it's Duhe. That, all the sudden, Duhe goes from being on the floor or being on the chair next to her to starting to climb up on her, and she's say: Here we go again., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

So I'll make sure that she's – if we can – if we have time – like, a lot of times, she's in the kitchen chair. Shari, can you make it over to the couch or to the comfortable recliner chair., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

And, if not, what I do is I hold on to – I hold pressure on her even when she's sitting in the comfortable chair. I will come up to her and I will put pressure on her, because she's – I did that once, just to kind of keep her from falling over, and she came out of it a little bit, what I felt was maybe a little faster. And she said: I felt your pressure and that helped. Whether that's true or not ..., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

So that's what I do for her, is, number one, make sure she doesn't fall out of the chair., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Okay., pg. 115, **2025-05-28 HEIMKES v FMRCOA.pdf**

49

experienced effects, observable behavior, and barriers to access [89] [90] [91] [92] [93].
Diagnostic opinions, as such, were reserved for experts, but the lived experience

[89] The motion is granted to the extent Plaintiffs intend to present evidence testimony not previously disclosed. As no experts were disclosed, there should be no expert testimony presented. Otherwise, the motion is denied. Plaintiffs may present testimony as to their alleged disabilities and experience with such so long as it was previously disclosed in discovery. Moreover, as it is Plaintiffs' burden to establish their case, the Court will not prematurely hamstring the Plaintiffs, pg. 1, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[90] from presenting evidence that relates to the elements of the case. Ultimately, the Court will determine what weight to give evidence presented., pg. 2, **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**

[91] THE COURT : I've looked at this issue, and I can conclude, from having looked at the case law, that the defendants cut that case law very thin; impermissibly so. For instance, a person might have high blood pressure, and they may not physically feel any of the affects of high blood pressure, and they only know that they have high blood pressure because a physician has told them that they have high blood pressure. They may, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:25:31 AM5 6 7 8 9 09:25:53 AMO 11 12 13 14 09:26:07 AM5 16 17 18 19 09:26:33 AMO 21 22 23 24 09:26 :54 AM5, pg. 6, **2025-06-05 HEIMKES v FMRCOA.pdf**

take medication or whatever. And that person can testify that they had been diagnosed with high blood pressure, and that they take medication as a result. And, to the extent that they have feelings or symptoms as a result of that, they can say that because they personally – it affects them, personally., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

That same person, though, would not be able to testify about, say, the affects of high altitude upon people with high blood pressure, because that would require scientific or medical training., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But that same person could say, if they, say, lived in – I don't know – Denver: This is how living here in Denver has affected me, and I have high blood pressure., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, all of that goes to weight. All of that goes to me as the factfinder., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

Now, there may be limitations – and I don't know, Mr. Eaton, as to the bigger question, which would be the extent to which that diagnosis may go to the second issue as to whether or not it limits a life activity. That may be a separate matter, and that may be where you have some difficulties., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

But I think this testimony as to how he has been diagnosed is admissible, and I'll hear it., pg. 7, **2025-06-05 HEIMKES v FMRCOA.pdf**

[92] THE COURT : I overrule the objection., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
BY ATTORNEY EATON:, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
Q. Mr. Heimkes, because of your disabilities, are you on Social Security disability income?, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
A. Yes., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
Q. How long have you been receiving that income? THE COURT: You will need to redact this reference, because it does contain his Social Security number, I believe., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
ATTORNEY EATON: I missed that., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
Which page?, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
THE COURT : I said, I believe it contains – THE LAW CLERK: So, at the very top, it says Refer To, and that number there., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
And then, on the next page, I can tell you that, too., pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**
Just want to make sure we don't –, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

50

ATTORNEY EATON: We've filed that as an exhibit. Is there a way I can go back and retract?, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE COURT: Yes. That's what I'm saying. You, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:36:40 AM5 6 7 8 9 09:36:52 AMO 11 12 13 14 09:37:06 AM5 16 17 18 19, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

09:37:18 AM20 21 22 23 24 09:37:27 AM5, pg. 13, **2025-06-05 HEIMKES v FMRCOA.pdf**

can redact it and then you can refile it and we'll substitute., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : I know that it's already on the court document record. Is there a way that we can get it off?, pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE COURT : That's what I'm saying, file a redacted one and we can substitute., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : I thought you meant to the trial. You meant for the record., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

THE LAW CLERK: There was another one on the second page, too, just for your awareness., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : I'll go back through and, pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

verify., pg. 14, **2025-06-05 HEIMKES v FMRCOA.pdf**

[93] ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So therein lies the ruling. ATTORNEY EATON : Your Honor, I would like to get, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

a response on the record for appeal. Do I do that orally, or would you like me to put that in a brief?, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT: You can put that in a brief., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

and observation of the plaintiffs, their family, and the community was admitted and weighed as required by Eleventh Circuit precedent . [94] [95] [96]

---

ATTORNEY EATON : Okay., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON :, pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[94] Now, I have let Mr. Heimkes and Ms. Allfrey testify as to their disability as they understood it. And people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

His ability to testify will be limited to that. ATTORNEY EATON : Again, I was trying to lay a foundation for his disability, so it has relevance., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

[95] Q. Okay. So still in the emergency services –, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Yes, sir. Q. – field., pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

During your various history as EMS and training, have you witnessed people experience seizures?, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, absolutely. Grand maul seizures. And, at the time, I don't think they were classified as a PNES seizures, but I can guarantee you, that's what it was, because I remember the doctors always going: Well, did, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:06:32 PM5 6 7 8 9 01:06:43 PMO 11 12 13 14 01:06:58 PM5 16 17 18 19 01:07:12 PMO 21 22 23 24 01:07:33 PM5, pg. 111, **2025-05-28 HEIMKES v FMRCOA.pdf**

they seize, did they convulse. I would go: No, but they why just out. And, they were out for a while, and family would call., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. And so your background is – or, you use your background to help Ms. Allfrey when she has experienced those? A. Yes. Absolutely., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. Do you believe them to be seizures, with your background?, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, yes., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[96] However, as I understand the law, when it comes to medical conditions – for instance, I understand that Ms. Allfrey claims that she suffers from seizures – and that's the diagnosis that she travels under, am I, pg. 48, **2025-05-27 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:33:00 PM5 6 7 8 9, pg. 48, **2025-05-27 HEIMKES v FMRCOA.pdf**

52

The only context in which the court limited lay testimony was where it crossed into expert opinion or medical causation, a distinction grounded in rules of evidence rather than a hostility to the broader, access-focused mandate of the ADAAA. Where inconsistencies occurred—especially compared to more restrictive state court findings—they are highlighted above and provide context for any appellate or further review. The federal court's approach, overall, reflects adherence to ADAAA intent and controlling circuit authority on the sufficiency of lay testimony for substantiating disability and the need for reasonable accommodation.

---

01:33:12 PMO 11 12 13 14 01:33:25 PM5 16 17 18 19 01:33:52 PM20 21 22 23 24 01:34:15 PM5, pg. 48, **2025-05-27 HEIMKES v FMRCOA.pdf**

correct?, pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Yes, Your Honor. That's one of them., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : And that she has – and I imagine she would say she's undergoing treatment or has undergone treatment by some medical provider, and that her dog is necessary to accommodate her in identifying whenever she may be about to suffer a seizure., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

When it comes to medical testimony, the fact that a person may have a given condition is something – I think, ordinarily, something they may testify about. For instance, a witness who says – may say: I have high blood pressure; and, as a result of that, my physician has prescribed and I take a medication to deal with my condition. That would be testimony that would be admissible as their own experience with it., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

Even in the Jay case, I noticed that he mentioned they are inadmissible because they are diagnoses for treatment notes from a treating physician and not merely Jay's own experience of the symptoms., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

So, to the extent that someone may testify about their condition, I believe that is something that is allowable., pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

Now, ultimately, in the context of whether or not a medical condition might be disabling becomes a, pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:34:25 PM5 6 7 8 9, pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

01:34:46 PMO 11 12 13 14 01:35:09 PM5 16 17 18 19 01:35:37 PMO 21 22 23 24 01:36:00 PM5, pg. 49, **2025-05-27 HEIMKES v FMRCOA.pdf**

further issue that, in certain contexts, the expert testimony may be required for., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

So, to that extent, I would deny the defendant's motion. I'm going to have to hear whatever it is and then make my rulings within that regard., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

So it's granted in part, denied in part, without prejudice to the extent it's denied., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Your Honor, if I might ask for clarification, what part is granted?, pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : To the extent that there might be medical testimony offered by the plaintiff, they have not identified a physician who they intend to call., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN: Would that include diagnoses, Your Honor?, pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : I'm going to have to hear the testimony., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

But if a witness says "I have PTSD," and they can say, "My doctors have told me I have PTSD and this is how I – these are my symptoms and this is how my dog or animal assists me," I don't see that as being within the ambient of any of these cases or the rules to preclude that testimony., pg. 50, **2025-05-27 HEIMKES v FMRCOA.pdf**

**Result:**

Identify instances where the court prevented lay witnesses from using terms like seizure, epilepsy, PTSD, panic attack, and TBI, due to objections that these terms required expert testimony.

Based on the full set of documents reviewed, there are numerous and explicit instances where the court prevented lay witnesses from using terms such as "seizure," "epilepsy," "PTSD," "panic attack," and "TBI" in their testimony due to sustained objections on the grounds that these terms constitute expert or medical diagnoses, which the court determined require expert testimony.

The court's evidentiary rulings demonstrate a consistent approach: while lay witnesses, including the parties, were permitted to describe their personal experiences, observations, and the effects of their conditions in daily life, the court regularly sustained objections and barred the use of diagnostic terminology by non-expert witnesses. This prohibition was enforced in both direct and cross-examination, and the record is replete with both real-time objections from defense counsel and the court's rationale for sustaining those objections.

For example, the court expressly sustained objections preventing witnesses from testifying that a person was having a "seizure," that someone suffered from "epilepsy," or from speaking to the effects of such conditions, because such testimony was deemed to call for expert medical opinion. Instead, the court instructed that lay witnesses could only testify as to what they directly observed, without labeling events or symptoms with a medical diagnosis. As the court stated, "His ability to testify will be limited to that.... people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can." [97] The judge made clear, "to the extent your witness may want to say that somebody had a seizure, or that they had PTSD, it would require them to call upon their medical training and experience.... which would require you to have made pretrial disclosure that you were going to try to offer that expert testimony." [98] In

---

[97] Now, I have let Mr. Heimkes and Ms. Allfrey testify as to their disability as they understood it. And people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**
His ability to testify will be limited to that. ATTORNEY EATON : Again, I was trying to lay a foundation for his disability, so it has relevance., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**
[98] indicated that you were going to call any physician or person qualified by medical training to render an opinion about any of your client's disabilities, alleged disabilities. That would have been one way in which you could have proven your case., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**
How you go about proving your case is your business. It's not my job as the judge to tell you how to prove your case. That's on the parties. I can't tell you how to prove your case anymore than I can properly tell the defendants how to defend their case., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

54

another instance: "She might have been able to give that opinion had you designated her as an expert, but you didn't. That's on you. So, not having done that, you've got to live with the consequence. The consequence is, she can't give that diagnosis, though she might have and though it might have been reliable." [99]

This approach was applied across a range of medical and psychiatric terms. When counsel posed questions about whether Ms. Allfrey's epilepsy affected her or asked

Now, had you given disclosures that you were going to present some expert testimony to that effect, that might have been one way., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

But it seems to me, with the burden that you have to carry, that, to the extent that someone may suffer from a seizure or something of that nature, that you're not going to be able to get there by way of this witness, at least. Because, to the extent your witness may want to say that somebody had a seizure, or that they had PTSD, it would require them to call upon their medical training and experience. And, I believe the witness gave information about her medical related background, and I believe her testimony would draw on that, which, again, falls under the expert testimony, which would require you to have made pretrial disclosure, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:38:26 PM5 6 7 8 9 02:38:43 PMO 11 12 13 14 02:38:59 PM5 16 17 18 19 02:39:24 PMO 21 22 23 24 02:39:49 PM5, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

that you were going to try to offer that expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, what your clients – your witness or someone else called as a witness may have seen a person do and the conditions under which they did it, that's a separate thing. That's a fact witness, and that is a somebody who is not even offering an opinion; they're telling us what they have observed., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, you may have other witnesses who might be able to say that they have a certain condition. But, to the extent you're relying upon other people to say what their medical condition is, that's not proper., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : If I can just take a minute just to address what you have said so I can make sure I'm clear., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

It's not been my intent to introduce any, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

testimony about their diagnosis., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT: Well, you want them to say that – for instance, you're wanting her to say "Ms. Allfrey is having seizures." I believe that's, fairly, what you're trying to get out; correct?, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : If she's observed it with her own eyes, yes., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT : £ And that would then be, I think under these circumstances, subject to expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:40:09 PM5 6 7 8 9, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:40:26 PMO 11 12 13 14 02:40:48 PM5 16 17 18 19 02:41:00 PMO 21 22 23 24 02:41:12 PM25, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

She might have been able to give that opinion had you designated her as an expert, but you didn't. That's on you. So, not having done that, you've got to live with the consequence. The consequence is, she can't give that diagnosis, though she might have and though it might have been reliable., pg. 167, **2025-05-29 HEIMKES v FMRCOA.pdf**

[99] She might have been able to give that opinion had you designated her as an expert, but you didn't. That's on you. So, not having done that, you've got to live with the consequence. The consequence is, she can't give that diagnosis, though she might have and though it might have been reliable., pg. 167, **2025-05-29 HEIMKES v FMRCOA.pdf**

55

about why she was hospitalized, objections on the ground that an expert opinion was being sought were sustained. For instance:

Q. Have you observed Ms. Allfrey's epilepsy affect her? ATTORNEY DUNAGAN: Same objection, Your Honor. Again, epilepsy is a medical condition, and Mr. Allfrey can't testify as to an effect of that. THE COURT: I sustain. [100]

Similarly, when a lay witness was asked to testify if someone was being treated for "epilepsy," the court sustained the objection with, "That calls for a medical conclusion as to what happened... I sustain." [101] In the context of "TBI," when a lay

---

[100] BY ATTORNEY EATON:, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**
Q. Have you observed Ms. Allfrey's epilepsy affect her?, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**
ATTORNEY DUNAGAN : Same objection, Your Honor. Again, epilepsy is a medical condition, and Mr. Allfrey, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**
1 2 3 4, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**
11:07:41 AM5 6 7 8 9 11:07:59 AMO 11 12 13 14 11:08:12 AM5 16 17 18 19 11:08 :27 AMO 21 22 23 24, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**
can't testify as to an effect of that., pg. 65, **2025-07-14 HEIMKES v FMRCOA.pdf**
THE COURT : I sustain., pg. 65, **2025-07-14 HEIMKES v FMRCOA.pdf**
[101] treated for epilepsy?, pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. £ Well, there's another version of that that's come out since that was submitted, and the redacted part that you provided us in the request for the accommodation versus the one that we've seen since then would indicate that her condition is being controlled by medication. And that part was redacted out., pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q. The name of the medication?, pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. No, sir. £ The word "controlled.", pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q. Okay., pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
And the medication that she was prescribed at that time?, pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. I think it was redacted., pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
But I know the controlled part was what was a little misleading to us., pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q. Okay. And so is it your testimony that the word "controlled" is meaningful in that letter?, pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. It is to me., pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q. Okay. How so?, pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. Well, she's requesting an accommodation for a service dog, and you redacted out the part that says that her condition is controlled by medicine. So, had that not been redacted, it would have certainly given us more question as to the need for a service dog., pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q., pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
How would the word "controlled" have affected, pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
1 2 3 4 10:07:44 AM5, pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
6 7 8 9 10:08:01 AMO 11 12 13 14 10:08:12 AM5 16 17 18 19 10 :08 :21 AMO 21 22 23 24 10:08 :54 AM5, pg. 44, **2025-07-08 HEIMKES v FMRCOA.pdf**
that determination?, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. £ Well, if a doctor – in this case, I think it was a nurse practitioner. I don't think it was a doctor. Whatever the evidence was where it came from – in my mind, that, when you cross something out or

56

witness was asked "Would you recognize if someone has TBI?", defense objected on medical diagnosis grounds, and the court sustained the objection: "Objection, Your Honor. That's getting into a medical diagnosis." THE COURT: "I sustain." [102]

In multiple instances where parties attempted to use "PTSD," "TBI," or "panic attack," the court similarly found that lay witnesses were not permitted to use these diagnoses or opine on the existence, cause, or medical details of such conditions absent expert testimony. For example, in the trial transcript, when it was argued by plaintiffs' counsel that use of these terms was necessary to meet their statutory burden, the court maintained its stance: "when I make a ruling that one can't give a diagnosis because you haven't been qualified as an expert, because there has not been a designation as an expert... So, yes... the use of certain terms requires an expert to use those certain terms. That's what I wanted to make clear that was on the record." [103]

This evidentiary boundary was not simply hypothetical or discussed only in legal briefing. The court's rulings were enforced in real time and directly impacted the flow of testimony. On May 27 and May 28, for instance, objections to Julie Heimkes offering her personal view that she had seen others have "seizures" or "epilepsy" were sustained, with the judge stating, "That would call for expert testimony." [104] and later reminding counsel, "When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert. So ask another

redact something that is critical to the intent of the letter, it is misleading., pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**

And when you say that it's controlled by her medication, that, to me says, that the situation is under control. There's no mention of a service dog in there. It simply says that her medication controls her situation. And, when you take that verbiage out of there, it's misleading. And, certainly, to us, at least. That's how I felt when I realize what had happened., pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**

Q. Okay. Did you ask for an unredacted version?, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. When it was submitted to us?, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**

[102] Q. Would you recognize if someone has TBI?, pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. What is TBI?, pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**
ATTORNEY DUNAGAN : Objection, Your Honor. That's getting into a medical diagnosis., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**
ATTORNEY EATON: Traumatic brain injury., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**
THE COURT : I sustain., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**

[103] record, that the use of certain terms requires an expert to use those certain terms. That's what I wanted to make clear that was on the record. Thank you., pg. 28, **2025-06-03 HEIMKES v FMRCOA.pdf**

[104] Q. Do you believe them to be seizures, with your background?, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**
A. Oh, yes., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**
ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**
THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**
That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

question. Perhaps, had you, then she might. But I have ruled this way because you haven't." [105] Likewise, when testimony was elicited about the effects of "brain injury" (TBI), objections were sustained as calling for expert testimony. [106] The same reasoning applied to attempts to elicit testimony about "panic attacks"—such questions or answers were prevented when they required a medical opinion on the cause or effect. [107]

At the heart of the court's rulings was the distinction between fact testimony (firsthand observations or statements of personal experience/diagnosis) and medical/diagnostic opinion. Lay witnesses were allowed to testify that they had, for example, been diagnosed with "PTSD" or "TBI" (i.e., to repeat their own diagnosis), but not to diagnose others, use medical terms to describe observed conduct, or testify to the medical or psychiatric cause of behaviors in others. [108] The judge summarized, "if Mr. Heimkes chose to get on the stand and say 'I've been diagnosed as having PTSD,' then he can say that.... but a lay witness cannot render a diagnosis as their own opinion, or testify to information outside their experience or knowledge." [109] The court consistently sustained objections that called for "medical

---

[105] THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[106] ATTORNEY HARRELL : Your Honor, I object to her testimony about any kind of brain injury. That calls for expert testimony., pg. 124, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : Yes. I sustain as to that., pg. 124, **2025-05-28 HEIMKES v FMRCOA.pdf**

[107] A. No., pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Objection, Your Honor. That calls for medical opinion as to the affects of the medication or what they're for., pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

[108] Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, whatever observations that other people make that confirm that, then I think that's a markedly different thing. Had you led off with a witness who said "I have been diagnosed with"x"," and other witnesses said they saw things consistent with "x", that's a completely different thing, and probably would have admissible. That's not the way you chose to travel with that witness., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

[109] Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

analysis," "diagnosis," "expert opinion," "hearsay," or "calls for a medical conclusion," particularly when the witness was not testifying to their own diagnosis but to someone else's condition or using medical terminology as a characterization of an observed event.

The court enforced the use of alternative, non-medical terms where necessary. Instead of "seizure" or "epilepsy," lay witnesses were permitted to describe "episodes" or observable events, but not to label them with a medical diagnosis absent expert designation. [110]

Throughout the trial and hearing transcripts, plaintiffs' counsel protested that the inability to use clinical language such as "seizure" or "PTSD" prejudiced their case, but the court adhered to its view that these terms require the foundation of expertise: "I have let your witnesses testify about whatever it is that they may have observed a person do. But, for them to take that extra step of making a diagnosis, a medical diagnosis, I have not let them make that step... that would have crossed the line." [111] Similarly, "I'm not saying that if somebody has been diagnosed that way, that person cannot say I've been diagnosed to have a certain thing." [112]

---

Now, whatever observations that other people make that confirm that, then I think that's a markedly different thing. Had you led off with a witness who said "I have been diagnosed with"x","," and other witnesses said they saw things consistent with "x", that's a completely different thing, and probably would have admissible. That's not the way you chose to travel with that witness., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

[110] 1 2 3 4 10:09:11 AM5 6 7 8, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
9 10:09:30 AMO 11 12 13 14 10:09:50 AM5 16 17 18 19, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
10 :10 :07 AMO 21 22 23 24 10:10:14 AM5, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q. What did you take the redacting of the word, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
"control" to mean as far as when you saw that it was controlled by medicine?, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
ATTORNEY DUNAGAN : Objection. Asked and answered., pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
THE COURT : I overrule., pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
BY ATTORNEY EATON :, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
[111] I have let your witnesses testify about whatever it is that they may have observed a person do. But, for them to take that extra step of making a diagnosis, a medical diagnosis, I have not let them make that step simply – for instance, your clients – I believe that was your client's wife that was on the stand. From her background, training, and experience, might have said, in her judgment, that she witnessed what she might term seizures, what she has referred to as episodes, or what we've allowed her to refer to as episodes., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
Now, the reason that I ruled as I did is because, her not having been designated as an expert, meant that she would have been relying upon her background, training, and experience to reach those conclusions, that to say what she saw was a seizure. think would have crossed the line., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
I, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**
[112] THE COURT : I'm not saying that if somebody has been diagnosed that way, that that person cannot say I've been diagnosed to have a certain thing., pg. 28, **2025-06-03 HEIMKES v FMRCOA.pdf**

59

The court's final findings of fact and conclusions of law reiterated and justified these limitations. The order stated, "neither Heimkes nor Allfrey presented any competent and admissible evidence, through expert testimony or otherwise, establishing that they have been medically diagnosed with a physical or mental impairment... neither Plaintiff has done even that, submitting only their own lay testimony.". [113] [114] It continued, "Medical evidence is... necessary to show an

---

[113]

24. At trial, neither Heimkes nor Allfrey presented any competent and admissible evidence, through expert testimony or otherwise, establishing that they have been medically diagnosed with a physical or mental impairment. See Fed. R. Evid. 602, 701, 702, 801, 802., pg. 10, **314 2025-08-01 Defendant's PROF and COL.pdf**

25. Likewise, neither Heimkes nor Allfrey presented any competent and admissible evidence, through expert testimony or otherwise, to establish that any claimed limitation was caused by a physical or mental impairment. See Fed. R. Evid. 602, 701, 702, 801, 802., pg. 10, **314 2025-08-01 Defendant's PROF and COL.pdf**

[114] they themselves testified as to medical conditions with which they infer they have been diagnosed by their physicians, but no admissible evidence of any such diagnosis was presented - their own testimony in this respect was not corroborated by physicians' testimony, nor was it supported by any authenticated or certified medical records. See Fed. R. Evid. 602, 701, 702, 801, 802. Although it is, alone, "insufficient for individuals attempting to prove disability [or handicap status] ... to merely submit evidence of a medical diagnosis of an impairment," neither Plaintiff has done even that, submitting only their own lay testimony. Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 198 (2002); King v. BP Expl. & Prod., Inc., 2023 U.S. Dist. LEXIS 212061, at *10 (S.D. Ala. Nov. 29, 2023) (a plaintiff "must rely on expert testimony to prove her medical diagnosis and causation"); Fuller v. Davis, 2017 U.S. Dist. LEXIS 192482, at* 11 n.12 (N.D. Ala. Oct. 25, 2017) ("the plaintiff [is] unqualified to testify regarding a specific medical diagnosis"); see Fed. R. Evid. 701, 702, 801, 802, 901. In short, Plaintiffs have failed to present sufficient admissible medical evidence of their alleged physical or mental impairments. See Colton v. Fehrer Auto., N. Am., LLC, 2021 U.S. App. LEXIS 21541, at *9 (11th Cir. July 21, 2021) (Claiming to have some physical or mental limitation "without [proving] any underlying [mental] or physiological disorder is simply not enough")., pg. 27, **314 2025-08-01 Defendant's PROF and COL.pdf**

"To qualify as disabled ... a claimant must initially prove that he or she has a physical or mental impairment." Toyota Motor Mfg., Ky. v. Williams, 534 U.S. 184,, pg. 27, **314 2025-08-01 Defendant's PROF and COL.pdf**

Case 1:22-cv-00448-TFM-N, pg. 28, **314 2025-08-01 Defendant's PROF and COL.pdf**

Doc# 314 Filed 08/01/25 11373, pg. 28, **314 2025-08-01 Defendant's PROF and COL.pdf**

Page 28 of 62, pg. 28, **314 2025-08-01 Defendant's PROF and COL.pdf**

PageID#, pg. 28, **314 2025-08-01 Defendant's PROF and COL.pdf**

194 (2002) (citing 42 U.S.C. § 12102(2)(A)). "[M]edically diagnosed mental [or physiological] conditions are impairments." Emerson v. N. States Power Co., 256 F.3d 506, 511 (7th Cir. 2001) (quoting Krocka v. City of Chicago, 203 F.3d 507, 512 (7th Cir. 2000)). "Medical evidence is ... necessary to show an impairment when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition" (e.g., PTSD or epilepsy); as opposed to "long-term impairments [that] would be obvious to a lay jury (e.g., a missing arm)." Mancini v. City of Providence, 909 F.3d 32, 39-40 (1st Cir. 2018); See, e.g., Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 996 (10th Cir. 2019) ("Courts require expert evidence when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition."); Sweeney v. Ala. Alcoholic Bev. Control Bd., 94 F. Supp. 2d 1241, 1262 (M.D. Ala. 2000) ("in support of her claim that she suffers from 'fatigue syndrome,' Plaintiff has proffered only bald assertions that Dr. Beauchamp diagnosed her

impairment when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition (e.g., PTSD or epilepsy).. Because medical conditions, such as epilepsy, PTSD, and TBI can only be diagnosed by a licensed

---

with 'fatigue syndrome' and recorded this diagnosis in a note ... The court ... finds that the only evidence supporting Plaintiff's 'fatigue syndrome' claim constitutes inadmissible hearsay. Thus, the court finds that Plaintiff has not met her burden of showing that she suffers from a physical impairment, as her statements are inadmissible hearsay"); Thomas v. Austal, USA, LLC, 2011 U.S. Dist. LEXIS 146049, at *4-5 (S.D. Ala. Dec. 20, 2011) (quoting Crocker v. City of Fairhope, 2005 WL 6217200 (S.D. Ala. May 4, 2005)) ("in 'every known Eleventh Circuit case in which PTSD was diagnosed,, pg. 28, **314 2025-08-01 Defendant's PROF and COL.pdf**

Case 1:22-cv-00448-TFM-N, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

Doc# 314 Filed 08/01/25 11374, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

Page 29 of 62, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

PageID#, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

the diagnosis was made by a medical doctor or psychologist[] ... a wealth of authority rejects the idea that [anyone else] is qualified to render such an opinion.' As such, [non-physician witnesses] may not testify that [a plaintiff has] PTSD.""")., pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

Because medical conditions, such as epilepsy, PTSD, and TBI can only be diagnosed by a licensed physician, it is axiomatic that any testimony from a lay witness relating such a diagnosis could only be inadmissible hearsay. Fed. R. Evid. 602, 801, 802. Indeed, the precedent in this Circuit has long-established that a plaintiff's, or other lay witness', testimony as to a physician's medical diagnosis is "pure hearsay, with all the unreliability that attaches to such recitals by an interested witness of what was said long ago ... statements of unidentified persons are not admissible to establish the facts stated, nor would they be if attributed to examining physicians." United States v. Buck, 70 F.2d 1007 (5th Cir. 1934); Luke v. United States, 84 F.2d 823, 825 (5th Cir. 1936).8 In this Circuit, "[t]here is no dispute that lay witnesses, including Plaintiff, cannot testify on matters that require expert opinions, such as a medical diagnosis." Ruiz v. Sharkninja Operating LLC & Walmart Inc., 2024 U.S. Dist. LEXIS 94853, at *3 (M.D. Fla. Feb. 27, 2024). "Nor can Plaintiff simply offer her recollection of a medical diagnosis to establish that she, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

physician, it is axiomatic that any testimony from a lay witness relating such a diagnosis could only be inadmissible hearsay." [115] [116]

The sustained objections and accompanying court explanations show this policy was implemented throughout examination of multiple witnesses and in the

---

[115] 194 (2002) (citing 42 U.S.C. § 12102(2)(A)). "[M]edically diagnosed mental [or physiological] conditions are impairments." Emerson v. N. States Power Co., 256 F.3d 506, 511 (7th Cir. 2001) (quoting Krocka v. City of Chicago, 203 F.3d 507, 512 (7th Cir. 2000)). "Medical evidence is … necessary to show an impairment when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition" (e.g., PTSD or epilepsy); as opposed to "long-term impairments [that] would be obvious to a lay jury (e.g., a missing arm)." Mancini v. City of Providence, 909 F.3d 32, 39-40 (1st Cir. 2018); See, e.g., Tesone v. Empire Mktg. Strategies, 942 F.3d 979, 996 (10th Cir. 2019) ("Courts require expert evidence when a condition would be unfamiliar to a lay jury and only an expert could diagnose that condition."); Sweeney v. Ala. Alcoholic Bev. Control Bd., 94 F. Supp. 2d 1241, 1262 (M.D. Ala. 2000) ("in support of her claim that she suffers from 'fatigue syndrome,' Plaintiff has proffered only bald assertions that Dr. Beauchamp diagnosed her with 'fatigue syndrome' and recorded this diagnosis in a note … The court … finds that the only evidence supporting Plaintiff's 'fatigue syndrome' claim constitutes inadmissible hearsay. Thus, the court finds that Plaintiff has not met her burden of showing that she suffers from a physical impairment, as her statements are inadmissible hearsay"); Thomas v. Austal, USA, LLC, 2011 U.S. Dist. LEXIS 146049, at *4-5 (S.D. Ala. Dec. 20, 2011) (quoting Crocker v. City of Fairhope, 2005 WL 6217200 (S.D. Ala. May 4, 2005)) ("in 'every known Eleventh Circuit case in which PTSD was diagnosed,, pg. 28, **314 2025-08-01 Defendant's PROF and COL.pdf**

[116] the diagnosis was made by a medical doctor or psychologist[] … a wealth of authority rejects the idea that [anyone else] is qualified to render such an opinion.' As such, [non-physician witnesses] may not testify that [a plaintiff has] PTSD."")., pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

Because medical conditions, such as epilepsy, PTSD, and TBI can only be diagnosed by a licensed physician, it is axiomatic that any testimony from a lay witness relating such a diagnosis could only be inadmissible hearsay. Fed. R. Evid. 602, 801, 802. Indeed, the precedent in this Circuit has long-established that a plaintiff's, or other lay witness', testimony as to a physician's medical diagnosis is "pure hearsay, with all the unreliability that attaches to such recitals by an interested witness of what was said long ago … statements of unidentified persons are not admissible to establish the facts stated, nor would they be if attributed to examining physicians." United States v. Buck, 70 F.2d 1007 (5th Cir. 1934); Luke v. United States, 84 F.2d 823, 825 (5th Cir. 1936).8 In this Circuit, "[t]here is no dispute that lay witnesses, including Plaintiff, cannot testify on matters that require expert opinions, such as a medical diagnosis." Ruiz v. Sharkninja Operating LLC & Walmart Inc., 2024 U.S. Dist. LEXIS 94853, at *3 (M.D. Fla. Feb. 27, 2024). "Nor can Plaintiff simply offer her recollection of a medical diagnosis to establish that she, pg. 29, **314 2025-08-01 Defendant's PROF and COL.pdf**

62

handling of proffered exhibits and records. [117] [118] [119] [120] [121] [122] [123] [124] [125] [126] [127] [128] [129] [130] [131] [132] [133] [134] [135] [136] (and others) The judge's approach did at times allow testimony by

---

[117] Q. Do you believe them to be seizures, with your background?, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, yes., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[118] ATTORNEY HARRELL : Your Honor, I object to her testimony about any kind of brain injury. That calls for expert testimony., pg. 124, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : Yes. I sustain as to that., pg. 124, **2025-05-28 HEIMKES v FMRCOA.pdf**

[119] A. No., pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Objection, Your Honor. That calls for medical opinion as to the affects of the medication or what they're for., pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor, I asked for her observations. As a lay witness, she can say what she observed., pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT: I've already ruled. Move to your next question. BY ATTORNEY EATON:, pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

Q. What do you observe different about Mark when he's on medicine or off of medicine?, pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4, pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:26:22 PM5 6 7 8 9 01:26:37 PMO 11 12 13 14 01:26:47 PM5 16 17 18 19 01:26:55 PMO 21 22 23 24 01:27:01 PM25, pg. 128, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : £ Same objection, Your Honor. Still requires medical testimony., pg. 129, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 129, **2025-05-28 HEIMKES v FMRCOA.pdf**

[120] THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[121] Allfreys, or Ms. Allfrey, did you ever see her have a seizure event?, pg. 96, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Objection. Calls for a medical analysis and conclusion of what he may have seen as to whether it was or was not a seizure. He's not qualified to testify to that., pg. 96, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain as to that. But you can testify as to what you saw. ATTORNEY EATON : That's all I was asking, Your Honor., pg. 96, **2025-05-27 HEIMKES v FMRCOA.pdf**

[122] Q. Are you familiar with people that have epilepsy?, pg. 97, **2025-05-27 HEIMKES v FMRCOA.pdf**

A. Yes., pg. 97, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Objection, Your Honor. We're getting into a medical diagnosis., pg. 97, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I'm asking his opinion whether he's familiar with people with epilepsy., pg. 97, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : He can testify as to what he's seen., pg. 97, **2025-05-27 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : I'm asking as kind of background., pg. 97, **2025-05-27 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain as to that., pg. 97, **2025-05-27 HEIMKES v FMRCOA.pdf**

[123] A. I do., pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Who is in the picture with you?, pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Ronnie Mack is up on the railing., pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

Steve Commander is sitting in front of the fire., pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

He was the secretary when the association was first formed., pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

To his right would be Barb Achee. And the lady to the front of me is Steve's wife., pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Are you smoking in this photograph?, pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. Yes., pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Did you – were you the only one that smoked?, pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

A. No., pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

Q. Were any of the board members smokers?, pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

1 2 3 4 11:00:29 AM5 6 7 8 9 11:00:54 AMO 11 12 13 14 11:01:10 AM5 16 17 18 19, pg. 64, **2025-06-05 HEIMKES v FMRCOA.pdf**

A., pg. 65, **2025-06-05 HEIMKES v FMRCOA.pdf**

We didn't have a board at that time. £, pg. 65, **2025-06-05 HEIMKES v FMRCOA.pdf**

[124] Q. Would you recognize if someone has TBI?, pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**

64

A. What is TBI?, pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Objection, Your Honor. That's getting into a medical diagnosis., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Traumatic brain injury., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**

[125] 1 2 3 4 10:09:11 AM5 6 7 8, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**

9 10:09:30 AMO 11 12 13 14 10:09:50 AM5 16 17 18 19, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**

10 :10 :07 AMO 21 22 23 24 10:10:14 AM5, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**

Q. What did you take the redacting of the word, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**

"control" to mean as far as when you saw that it was controlled by medicine?, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Objection. Asked and answered., pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**

THE COURT : I overrule., pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**

BY ATTORNEY EATON :, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**

[126] have to use terms like that to prove the disability. Because I don't think we can just refer to things as "an episode" and meet our burden under the statute. If the Court prevents us from saying words that are with – my sister has epilepsy. I know that because I've seen her have seizures. I've seen that because her body's been on the floor, convulsing. That's not a normal behavior., pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

And the case law from the Eleventh Circuit says if I'm saying – I'm not saying she's diagnosed with it. I'm saying I see her have that – or that disability has that effect on her., pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

That's all we've been trying to get them to describe, is their knowledge about what they observed. We're not asking them to make a medical opinion or say she does or doesn't have seizures or whether the dog is a – I don't know what he was objecting to about the dog., pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

But she's also been around service animals. Her, pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf** husband has trained Duhe. She observes Duhe, him, pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf** alerting to her seizures. And there's two different types of seizures that she has. Some is a convulsion type seizure. The other is where she described, she just flops out. So, again, that's her observation. She's not saying – is going into the details of the brain and all that stuff., pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

And, again, the only case that I could find in, pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:25:48 PM5 6 7 8 9 02:26:07 PMO 11 12 13 14 02:26:21 PM5 16 17 18 19 02:26:41 PMO 21 22 23 24 02:26:55 PM5, pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

the limited time that I've had an opportunity to research when we've been outside the court – and, again, you'll love this, because it comes from the wonderful Ninth Circuit, they use the word seizure, epilepsy. And, under the ADA and FHA, those are commonly used terms. And, as long as they are not doing it to tell you that they know they have it because they saw the medical records or, you know, making a medical decision, they're just saying "I saw her have – fall out on the floor and her body convulsed or I saw that person run over in the corner and act totally different than they were five seconds ago because they're having a panic attack; they had to get out of here, they were crawling up the wall. That's what we have to put evidence of that on the record. People that observe, they're going to have to testify that, hey – or, again, this is one of the problems that I keep running into in my head is, with Ms. Allfrey, if she comes to testify, are you going to allow her to say the word"seizure. ", pg. 157, **2025-05-29 HEIMKES v FMRCOA.pdf**

And then, because, on these PNESs, she blacks out . And my analogy to that is you go by and you unplug a computer and everything shuts down. She can't say what she does when she blacks out. And I don't know what she is going to be able to testify to, because each one appears to be different, as she's coming cognizant, as to, pg. 157, **2025-05-29 HEIMKES v FMRCOA.pdf**

65

1 2 3 4 02:27:11 PM5 6 7 8 9 02:27:31 PMO 11 12 13 14 02:27:49 PM5 16 17 18 19 02:28 :03 PMO 21 22 23 24 02:28 :20 PM5, pg. 157, **2025-05-29 HEIMKES v FMRCOA.pdf**

what – because, my experience, she doesn't have any memory of that, of course, blackout period or unplugged period., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

And so, if her husband – Mr. Allfrey can't say, "I saw her have a seizure," then we're prevented from getting our testimony on the record to be able to prove that she's got a disability., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

Because I don't know that "an episode," because unless it's defined – and, kind of, we played around with that – and haven't been trying to force this point, but he keeps objecting to commonly used words within a lay person's witness, so it's admissible under 701, relevant under 602, and we have to do that., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

And so, if you're preventing us from saying those words – and, again, Ms. Allfrey can't say what happens because her mind goes blank., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

And I don't know what we're going to run into with Mr. Heimkes, how he's going to be able to describe how he feels and how we – because it's different from each perspective., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

She sees what it does to him. That's what I'm trying to get her to share with the Court., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

And, with her training, she says: That's not the normal Mark; that's not the Mark that was before the war., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:28:38 PM5 6 7 8 9, pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:28:54 PMO 11 12 13 14 02:29:13 PM5 16 17 18 19 02:29:30 PMO 21 22 23 24 02:29:43 PM5, pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:30:41 PM20 21 22 23 24 02:30:56 PM5, pg. 159, **2025-05-29 HEIMKES v FMRCOA.pdf**

[127] I have let your witnesses testify about whatever it is that they may have observed a person do. But, for them to take that extra step of making a diagnosis, a medical diagnosis, I have not let them make that step simply – for instance, your clients – I believe that was your client's wife that was on the stand. From her background, training, and experience, might have said, in her judgment, that she witnessed what she might term seizures, what she has referred to as episodes, or what we've allowed her to refer to as episodes., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, the reason that I ruled as I did is because, her not having been designated as an expert, meant that she would have been relying upon her background, training, and experience to reach those conclusions, that to say what she saw was a seizure. think would have crossed the line., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

I, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

If you had wanted her to testify under that rule, you probably could have qualified her as an expert,, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:49:02 AM5 6 7 8 9 09:49:23 AMO 11 12 13 14 09:49:47 AM5 16 17 18 19, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

09:50:12 AMO 21 22 23 24 09:50:36 AM5, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

and she could have given that testimony. But you chose not do that, for whatever reason., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, there's still other ways that you were able to get in what she observed., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, whatever observations that other people make that confirm that, then I think that's a markedly different thing. Had you led off with a witness who said "I have been diagnosed with"x"," and other witnesses said they saw things consistent with "x", that's a completely different thing, and probably would have admissible. That's not the way you chose to travel with that witness., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

66

So it's up to you to figure out how to do it. But, the way you have put it so far, I'm just simply going along with the evidence as you have presented it. Speaking of the presentation of evidence, I'm going to go back to what we said, what I said the other day. We're going to plow the field the first time; and then, once the plow is done – and you get to decide when it's done, unless there's a bunch of objections that I begin to sustain for repetitiveness or cumulative informs – then there will be cross to whatever extent, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:50:46 AM5 6 7 8 9 09:51:11 AMO 11 12 13 14 09:51:27 AM5 16 17 18 19 09:51:45 AMO 21 22 23 24 09:52:06 AM5, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

there's cross, and then we will narrow the direct. This is not endless direct., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

So, where we left off, I believe, we had Mr. Overall on the stand., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

Am I correct? That's where we left off, Mr. Eaton?, pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Yes, Your Honor. THE COURT: Come on up, Mr. Overall., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

You were sworn in the other day, so go ahead and take the stand., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Just so I'm clear, is it the Court's position that the witness cannot use the words seizure? Because that's a diagnosis? THE COURT : I believe I've made clear my rulings., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Again, we have the case law that I read that comes out of the Eleventh Circuit – THE COURT : I've read the case law., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: No. What I'm talking about is you're limiting certain words that we now have to call episodes., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

And what I'm telling – or what I'm arguing – is that the case law says you can't keep them from using common language, seizure., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

[128] BY ATTORNEY EATON:, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

Q. Have you observed Ms. Allfrey's epilepsy affect her?, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Same objection, Your Honor. Again, epilepsy is a medical condition, and Mr. Allfrey, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

1 2 3 4, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

11:07:41 AM5 6 7 8 9 11:07:59 AMO 11 12 13 14 11:08:12 AM5 16 17 18 19 11:08 :27 AMO 21 22 23 24, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

can't testify as to an effect of that., pg. 65, **2025-07-14 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 65, **2025-07-14 HEIMKES v FMRCOA.pdf**

[129] she's had. Q. £ As to the most recent event, has Ms. Allfrey been hospitalized because of these seizures?, pg. 66, **2025-07-14 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Objection as to why she's hospitalized, Your Honor. It gets into a medical diagnosis., pg. 66, **2025-07-14 HEIMKES v FMRCOA.pdf**

THE COURT : Hold on., pg. 66, **2025-07-14 HEIMKES v FMRCOA.pdf**

[130] Now, I have let Mr. Heimkes and Ms. Allfrey testify as to their disability as they understood it. And people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

His ability to testify will be limited to that. ATTORNEY EATON : Again, I was trying to lay a foundation for his disability, so it has relevance., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

[131] indicated that you were going to call any physician or person qualified by medical training to render an opinion about any of your client's disabilities, alleged disabilities. That would have been one way in which you could have proven your case., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

How you go about proving your case is your business. It's not my job as the judge to tell you how to prove your case. That's on the parties. I can't tell you how to prove your case anymore than I can properly tell the defendants how to defend their case., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**
Now, had you given disclosures that you were going to present some expert testimony to that effect, that might have been one way., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**
But it seems to me, with the burden that you have to carry, that, to the extent that someone may suffer from a seizure or something of that nature, that you're not going to be able to get there by way of this witness, at least. Because, to the extent your witness may want to say that somebody had a seizure, or that they had PTSD, it would require them to call upon their medical training and experience. And, I believe the witness gave information about her medical related background, and I believe her testimony would draw on that, which, again, falls under the expert testimony, which would require you to have made pretrial disclosure, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**
02:38:26 PM 02:38:43 PM 02:38:59 PM 02:39:24 PM 02:39:49 PM, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**
that you were going to try to offer that expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
Now, what your clients – your witness or someone else called as a witness may have seen a person do and the conditions under which they did it, that's a separate thing. That's a fact witness, and that is a somebody who is not even offering an opinion; they're telling us what they have observed., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
Now, you may have other witnesses who might be able to say that they have a certain condition. But, to the extent you're relying upon other people to say what their medical condition is, that's not proper., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
ATTORNEY EATON : If I can just take a minute just to address what you have said so I can make sure I'm clear., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
It's not been my intent to introduce any, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
testimony about their diagnosis., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
THE COURT: Well, you want them to say that – for instance, you're wanting her to say "Ms. Allfrey is having seizures." I believe that's, fairly, what you're trying to get out; correct?, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
ATTORNEY EATON : If she's observed it with her own eyes, yes., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
THE COURT : £ And that would then be, I think under these circumstances, subject to expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
02:40:09 PM, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
02:40:26 PM 02:40:48 PM 02:41:00 PM 02:41:12 PM, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**
She might have been able to give that opinion had you designated her as an expert, but you didn't. That's on you. So, not having done that, you've got to live with the consequence. The consequence is, she can't give that diagnosis, though she might have and though it might have been reliable., pg. 167, **2025-05-29 HEIMKES v FMRCOA.pdf**
[132] But, also, it's not an exhibit. And, it's an, pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
attachment to the complaint, you know. I think it's, pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
improper for him to comment on what it says. It says what it says., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
THE COURT : I sustain. That the letter says whatever the letter says., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
But it should be a specific exhibit for these proceedings, so give to a number so that we have a clear record., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
ATTORNEY EATON : 148., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
BY ATTORNEY EATON:, pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**

a party that they had been diagnosed with a particular condition, but even then, it was held that "although it is, alone, 'insufficient for individuals attempting to prove disability [or handicap status]... to merely submit evidence of a medical diagnosis of an impairment,' neither Plaintiff has done even that, submitting only their own lay testimony." [137]

In summary, there are multiple, direct, and unequivocal instances in the record where the court prevented lay witnesses from using medical and psychiatric terms such as "seizure," "epilepsy," "PTSD," "panic attack," and "TBI" due to objections—sustained in real time—that these were expert or medical terms, and that, under the Federal Rules of Evidence and controlling case law, only expert

---

Q. Is the date of that letter November 7, 2022?, pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**

A. It is., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**

Q., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**

[133] Q. Do any of them have PTSD?, pg. 179, **2025-07-08 HEIMKES v FMRCOA.pdf**

A. No., pg. 179, **2025-07-08 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Objection, Your Honor. Irrelevant., pg. 179, **2025-07-08 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 179, **2025-07-08 HEIMKES v FMRCOA.pdf**

[134] THE COURT : I sustain. I will follow your logic., pg. 130, **2025-05-28 HEIMKES v FMRCOA.pdf**

[135] THE COURT : I sustain., pg. 131, **2025-05-28 HEIMKES v FMRCOA.pdf**

[136] A. No. We continually added tasks as Mark's disabilities appeared or he – ATTORNEY HARRELL : Your Honor, I would object to her referring to any disabilities. There's been no testimony of any physical or – THE COURT : I'll sustain., pg. 216, **2025-05-28 HEIMKES v FMRCOA.pdf**

[137] they themselves testified as to medical conditions with which they infer they have been diagnosed by their physicians, but no admissible evidence of any such diagnosis was presented - their own testimony in this respect was not corroborated by physicians' testimony, nor was it supported by any authenticated or certified medical records. See Fed. R. Evid. 602, 701, 702, 801, 802. Although it is, alone, "insufficient for individuals attempting to prove disability [or handicap status] ... to merely submit evidence of a medical diagnosis of an impairment," neither Plaintiff has done even that, submitting only their own lay testimony. Toyota Motor Mfg., Ky. V. Williams, 534 U.S. 184, 198 (2002); King v. BP Expl. & Prod., Inc., 2023 U.S. Dist. LEXIS 212061, at *10 (S.D. Ala. Nov. 29, 2023) (a plaintiff "must rely on expert testimony to prove her medical diagnosis and causation"); Fuller v. Davis, 2017 U.S. Dist. LEXIS 192482, at *11 n.12 (N.D. Ala. Oct. 25, 2017) ("the plaintiff [is] unqualified to testify regarding a specific medical diagnosis"); see Fed. R. Evid. 701, 702, 801, 802, 901. In short, Plaintiffs have failed to present sufficient admissible medical evidence of their alleged physical or mental impairments. See Colton v. Fehrer Auto., N. Am., LLC, 2021 U.S. App. LEXIS 21541, at *9 (11th Cir. July 21, 2021) (Claiming to have some physical or mental limitation "without [proving] any underlying [mental] or physiological disorder is simply not enough")., pg. 27, **314 2025-08-01 Defendant's PROF and COL.pdf**

69

testimony could supply such diagnoses or opinions in these proceedings. [138] [139] [140] [141] [142] [143] [144] [145] [146] [147]

---

[138] Q. Do you believe them to be seizures, with your background?, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

A. Oh, yes., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY HARRELL : Your Honor, I object. She's not a doctor., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

That would call for expert testimony., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Your Honor – THE COURT : You have not designated any experts. I sustain the objection., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

Ask your next question., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Your Honor, I would like to have on the record that, based under 701, the Eleventh Circuit allows a person to testify about their rationale –, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : They do when you have designated – ATTORNEY EATON: They do not have to be an expert., pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

1 2 3 4 01:07:47 PM5 6 7 8 9 01:07:54 PMO 11 12 13 14 01:08:02 PM5 16 17 18 19, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

01:08:11 PMO 21 22 23 24 01:08:22 PM5, pg. 112, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : This person was not designated as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

I am ruling – ATTORNEY EATON : I am not designating her as an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I'm speaking. When I speak, you stop, and everyone in the courtroom stops., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

When I say that this person is giving expert testimony, she's giving expert testimony. You've not designated an expert., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

So ask another question., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

Perhaps, had you, then she might. But I have ruled this way because you haven't. ATTORNEY EATON : I'm sorry, Your Honor, I didn't catch the first point., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : I said, had you designated her as an expert, she might. But you didn't., pg. 113, **2025-05-28 HEIMKES v FMRCOA.pdf**

[139] ATTORNEY HARRELL : Your Honor, I object to her testimony about any kind of brain injury. That calls for expert testimony., pg. 124, **2025-05-28 HEIMKES v FMRCOA.pdf**

THE COURT : Yes. I sustain as to that., pg. 124, **2025-05-28 HEIMKES v FMRCOA.pdf**

[140] BY ATTORNEY EATON:, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

Q. Have you observed Ms. Allfrey's epilepsy affect her?, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

ATTORNEY DUNAGAN : Same objection, Your Honor. Again, epilepsy is a medical condition, and Mr. Allfrey, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

1 2 3 4, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

11:07:41 AM5 6 7 8 9 11:07:59 AMO 11 12 13 14 11:08:12 AM5 16 17 18 19 11:08 :27 AMO 21 22 23 24, pg. 64, **2025-07-14 HEIMKES v FMRCOA.pdf**

can't testify as to an effect of that., pg. 65, **2025-07-14 HEIMKES v FMRCOA.pdf**

THE COURT : I sustain., pg. 65, **2025-07-14 HEIMKES v FMRCOA.pdf**

[141] Now, I have let Mr. Heimkes and Ms. Allfrey testify as to their disability as they understood it. And people like Mr. Allfrey and Ms. Heimkes can testify as to what they saw and observed, as any fact witness can., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

His ability to testify will be limited to that. ATTORNEY EATON : Again, I was trying to lay a foundation for his disability, so it has relevance., pg. 53, **2025-07-14 HEIMKES v FMRCOA.pdf**

[142] have to use terms like that to prove the disability. Because I don't think we can just refer to things as "an episode" and meet our burden under the statute. If the Court prevents us from saying words that are with – my sister has epilepsy. I know that because I've seen her have seizures. I've seen that because her body's been on the floor, convulsing. That's not a normal behavior., pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

And the case law from the Eleventh Circuit says if I'm saying – I'm not saying she's diagnosed with it. I'm saying I see her have that – or that disability has that effect on her., pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

That's all we've been trying to get them to describe, is their knowledge about what they observed. We're not asking them to make a medical opinion or say she does or doesn't have seizures or whether the dog is a – I don't know what he was objecting to about the dog., pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

But she's also been around service animals. Her, pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf** husband has trained Duhe. She observes Duhe, him, pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf** alerting to her seizures. And there's two different types of seizures that she has. Some is a convulsion type seizure. The other is where she described, she just flops out. So, again, that's her observation. She's not saying – is going into the details of the brain and all that stuff., pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

And, again, the only case that I could find in, pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:25:48 PM5 6 7 8 9 02:26:07 PMO 11 12 13 14 02:26:21 PM5 16 17 18 19 02:26:41 PMO 21 22 23 24 02:26:55 PM5, pg. 156, **2025-05-29 HEIMKES v FMRCOA.pdf**

the limited time that I've had an opportunity to research when we've been outside the court – and, again, you'll love this, because it comes from the wonderful Ninth Circuit, they use the word seizure, epilepsy. And, under the ADA and FHA, those are commonly used terms. And, as long as they are not doing it to tell you that they know they have it because they saw the medical records or, you know, making a medical decision, they're just saying "I saw her have – fall out on the floor and her body convulsed or I saw that person run over in the corner and act totally different than they were five seconds ago because they're having a panic attack; they had to get out of here, they were crawling up the wall. That's what we have to put evidence of that on the record. People that observe, they're going to have to testify that, hey – or, again, this is one of the problems that I keep running into in my head is, with Ms. Allfrey, if she comes to testify, are you going to allow her to say the word"seizure. ", pg. 157, **2025-05-29 HEIMKES v FMRCOA.pdf**

And then, because, on these PNESs, she blacks out . And my analogy to that is you go by and you unplug a computer and everything shuts down. She can't say what she does when she blacks out. And I don't know what she is going to be able to testify to, because each one appears to be different, as she's coming cognizant, as to, pg. 157, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:27:11 PM5 6 7 8 9 02:27:31 PMO 11 12 13 14 02:27:49 PM5 16 17 18 19 02:28 :03 PMO 21 22 23 24 02:28 :20 PM5, pg. 157, **2025-05-29 HEIMKES v FMRCOA.pdf**

what – because, my experience, she doesn't have any memory of that, of course, blackout period or unplugged period., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

And so, if her husband – Mr. Allfrey can't say, "I saw her have a seizure," then we're prevented from getting our testimony on the record to be able to prove that she's got a disability., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

Because I don't know that "an episode," because unless it's defined – and, kind of, we played around with that – and haven't been trying to force this point, but he keeps objecting to commonly used words within a lay person's witness, so it's admissible under 701, relevant under 602, and we have to do that., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

And so, if you're preventing us from saying those words – and, again, Ms. Allfrey can't say what happens because her mind goes blank., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

71

And I don't know what we're going to run into with Mr. Heimkes, how he's going to be able to describe how he feels and how we – because it's different from each perspective., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

She sees what it does to him. That's what I'm trying to get her to share with the Court., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

And, with her training, she says: That's not the normal Mark; that's not the Mark that was before the war., pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:28:38 PM5 6 7 8 9, pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:28:54 PMO 11 12 13 14 02:29:13 PM5 16 17 18 19 02:29:30 PMO 21 22 23 24 02:29:43 PM5, pg. 158, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:30:41 PM20 21 22 23 24 02:30:56 PM5, pg. 159, **2025-05-29 HEIMKES v FMRCOA.pdf**

[143] indicated that you were going to call any physician or person qualified by medical training to render an opinion about any of your client's disabilities, alleged disabilities. That would have been one way in which you could have proven your case., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

How you go about proving your case is your business. It's not my job as the judge to tell you how to prove your case. That's on the parties. I can't tell you how to prove your case anymore than I can properly tell the defendants how to defend their case., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, had you given disclosures that you were going to present some expert testimony to that effect, that might have been one way., pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

But it seems to me, with the burden that you have to carry, that, to the extent that someone may suffer from a seizure or something of that nature, that you're not going to be able to get there by way of this witness, at least. Because, to the extent your witness may want to say that somebody had a seizure, or that they had PTSD, it would require them to call upon their medical training and experience. And, I believe the witness gave information about her medical related background, and I believe her testimony would draw on that, which, again, falls under the expert testimony, which would require you to have made pretrial disclosure, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:38:26 PM5 6 7 8 9 02:38:43 PMO 11 12 13 14 02:38:59 PM5 16 17 18 19 02:39:24 PMO 21 22 23 24 02:39:49 PM5, pg. 165, **2025-05-29 HEIMKES v FMRCOA.pdf**

that you were going to try to offer that expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, what your clients – your witness or someone else called as a witness may have seen a person do and the conditions under which they did it, that's a separate thing. That's a fact witness, and that is a somebody who is not even offering an opinion; they're telling us what they have observed., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

Now, you may have other witnesses who might be able to say that they have a certain condition. But, to the extent you're relying upon other people to say what their medical condition is, that's not proper., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : If I can just take a minute just to address what you have said so I can make sure I'm clear., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

It's not been my intent to introduce any, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

testimony about their diagnosis., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT: Well, you want them to say that – for instance, you're wanting her to say "Ms. Allfrey is having seizures." I believe that's, fairly, what you're trying to get out; correct?, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : If she's observed it with her own eyes, yes., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

THE COURT : £ And that would then be, I think under these circumstances, subject to expert testimony., pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

1 2 3 4 02:40:09 PM5 6 7 8 9, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

02:40:26 PMO 11 12 13 14 02:40:48 PM5 16 17 18 19 02:41:00 PMO 21 22 23 24 02:41:12 PM25, pg. 166, **2025-05-29 HEIMKES v FMRCOA.pdf**

72

She might have been able to give that opinion had you designated her as an expert, but you didn't. That's on you. So, not having done that, you've got to live with the consequence. The consequence is, she can't give that diagnosis, though she might have and though it might have been reliable., pg. 167, **2025-05-29 HEIMKES v FMRCOA.pdf**

[144] I have let your witnesses testify about whatever it is that they may have observed a person do. But, for them to take that extra step of making a diagnosis, a medical diagnosis, I have not let them make that step simply – for instance, your clients – I believe that was your client's wife that was on the stand. From her background, training, and experience, might have said, in her judgment, that she witnessed what she might term seizures, what she has referred to as episodes, or what we've allowed her to refer to as episodes., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, the reason that I ruled as I did is because, her not having been designated as an expert, meant that she would have been relying upon her background, training, and experience to reach those conclusions, that to say what she saw was a seizure. think would have crossed the line., pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

I, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

If you had wanted her to testify under that rule, you probably could have qualified her as an expert,, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:49:02 AM5 6 7 8 9 09:49:23 AMO 11 12 13 14 09:49:47 AM5 16 17 18 19, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

09:50:12 AMO 21 22 23 24 09:50:36 AM5, pg. 24, **2025-06-03 HEIMKES v FMRCOA.pdf**

and she could have given that testimony. But you chose not do that, for whatever reason., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, there's still other ways that you were able to get in what she observed., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, for instance, if Mr. Heimkes chose to get on the stand and say "I've been diagnosed as having PTSD," then he can say that., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

Now, whatever observations that other people make that confirm that, then I think that's a markedly different thing. Had you led off with a witness who said "I have been diagnosed with"x"," and other witnesses said they saw things consistent with "x", that's a completely different thing, and probably would have admissible. That's not the way you chose to travel with that witness., pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

So it's up to you to figure out how to do it. But, the way you have put it so far, I'm just simply going along with the evidence as you have presented it. Speaking of the presentation of evidence, I'm going to go back to what we said, what I said the other day. We're going to plow the field the first time; and then, once the plow is done – and you get to decide when it's done, unless there's a bunch of objections that I begin to sustain for repetitiveness or cumulative informs – then there will be cross to whatever extent, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

1 2 3 4 09:50:46 AM5 6 7 8 9 09:51:11 AMO 11 12 13 14 09:51:27 AM5 16 17 18 19 09:51:45 AMO 21 22 23 24 09:52:06 AM5, pg. 25, **2025-06-03 HEIMKES v FMRCOA.pdf**

there's cross, and then we will narrow the direct. This is not endless direct., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

So, where we left off, I believe, we had Mr. Overall on the stand., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

Am I correct? That's where we left off, Mr. Eaton?, pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON: Yes, Your Honor. THE COURT: Come on up, Mr. Overall., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

You were sworn in the other day, so go ahead and take the stand., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

ATTORNEY EATON : Just so I'm clear, is it the Court's position that the witness cannot use the words seizure? Because that's a diagnosis? THE COURT : I believe I've made clear my rulings., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

73

**Files**

- **26, 2023-01-13 Order denying Mtn to Take Judicial Notice.pdf**
- **196 2025-04-08 Order denying MSJs.pdf**
- **217 2025-05-14 Defendant's Response to Plaintiff's Amended Motion for video footage..pdf**
- **203 2025-04-25 - Response to Motion to Enjoin by DEF.pdf**
- **9 2022-11-15 Order denying TRO.pdf**
- **35 2023-03-06 Order denying Preliminary Injunction.pdf**
- **173 2025-01-13 Response to PLT MSJ.pdf**
- **26, 2023-01-13 Order denying Mtn to Take Judicial Notice.pdf**
- **164 2024-12-17 Text Order denying Jury Trial.pdf**

---

ATTORNEY EATON : Again, we have the case law that I read that comes out of the Eleventh Circuit –
THE COURT : I've read the case law., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**
ATTORNEY EATON: No. What I'm talking about is you're limiting certain words that we now have to call episodes., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**
And what I'm telling – or what I'm arguing – is that the case law says you can't keep them from using common language, seizure., pg. 26, **2025-06-03 HEIMKES v FMRCOA.pdf**

[145] 1 2 3 4 10:09:11 AM5 6 7 8, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
9 10:09:30 AMO 11 12 13 14 10:09:50 AM5 16 17 18 19, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
10 :10 :07 AMO 21 22 23 24 10:10:14 AM5, pg. 45, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q. What did you take the redacting of the word, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
"control" to mean as far as when you saw that it was controlled by medicine?, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
ATTORNEY DUNAGAN : Objection. Asked and answered., pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
THE COURT : I overrule., pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**
BY ATTORNEY EATON :, pg. 46, **2025-07-08 HEIMKES v FMRCOA.pdf**

[146] But, also, it's not an exhibit. And, it's an, pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
attachment to the complaint, you know. I think it's, pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
improper for him to comment on what it says. It says what it says., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
THE COURT : I sustain. That the letter says whatever the letter says., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
But it should be a specific exhibit for these proceedings, so give to a number so that we have a clear record., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
ATTORNEY EATON : 148., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
BY ATTORNEY EATON:, pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q. Is the date of that letter November 7, 2022?, pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. It is., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**
Q., pg. 50, **2025-07-08 HEIMKES v FMRCOA.pdf**

[147] Q. Would you recognize if someone has TBI?, pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**
A. What is TBI?, pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**
ATTORNEY DUNAGAN : Objection, Your Honor. That's getting into a medical diagnosis., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**
ATTORNEY EATON: Traumatic brain injury., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**
THE COURT : I sustain., pg. 204, **2025-07-08 HEIMKES v FMRCOA.pdf**

74

- **25 - 2023-01-10 Order re- proposed findings of fact conclusions of law.pdf**
- **9 2022-11-15 Order denying TRO.pdf**
- **92 2024-07-03 Defendants Reply to Plts Response to Mtn for Sanctions.pdf**
- **72 2024-05-03 Order re Motion to Dismiss Discovery Violation.pdf**
- **251 2025-05-27 Order Med Evid, Dismiss, Sanctions Strike, Jud Notice, Strike, Recuse.pdf**
- **150 2024-11-21 Def's Response to Motion to Jury Trial.pdf**
- **18, 2022-12-15 Transcript TRO.pdf**
- **219 2025-05-15 Defendants Motion to Preclude Evidence and Testimony re Medical Diagnoses and Disabilities.pdf**
- **16, 2022-12-06 Def's Reply.pdf**
- **220 2025-05-15 Defendants Motion to Dismiss or Exclude Plts Witnesses and Exhibits.pdf**
- **22, 2022-12-16 Defendants Opp Brief.pdf**
- **234 2025-05-21 Def's Response to Plaintiffs Motion to Exclude Evidence Based on Spoliation.pdf**
- **297 2025-07-15 Defendants Motion for Judgment on Partial Findings.pdf**
- **261 2025-06-03 Order denying Oral Motion for Mistrial.pdf**
- **247 2025-05-26 Def's Mtn for Sanctions and for Dismissal.pdf**
- **304 2025-09-22 Def's Motion to Strike Plts Response in Opp to Def Mtn for Judgment.pdf**
- **194 2025-04-03 Motion to Enjoin Plaintiffs Collateral Action.pdf**
- **7 2022-11-10 Def Sup Response.pdf**
- **236 2025-05-22 Def Pretrial Brief.pdf**
- **66 2024-04-02 Motion to Dismiss.pdf**
- **6 2022-11-10 Def's Response in Opp for TRO.pdf**
- **160 2024-12-13 DEF MSJ.pdf**
- **301 2025-07-16 Defendant's Conslidated REsponse to Plaintiff's Motion in Limine (Doc. 279) and (292).pdf**
- **301 2025-07-16 Def's Consolidated Responses to Plts Mtn in Limine and Mtn to Amend.pdf**
- **264 2025-06-06 Def's Response to Plts Motion for Mistrial or Recusal.pdf**
- **314 2025-08-01 Defendant's PROF and COL.pdf**
- **13 2022-11-28 Def's Supplemental Breif in Opp to PI.pdf**
- **2025-01-28-Heimkes v. FMR.pdf**
- **2025-02-04 Heimkes v. FMR.pdf**
- **2025-01-28-OCR HeimkesMHFINAL copy.pdf**
- **2025-05-16 Heimkes& Allfrey Pretrial.pdf**

75

- **2025-07-15 HEIMKES v FMRCOA.pdf**
- **2022-12-12-Heimkes v. FMR.pdf**
- **2025-07-14 HEIMKES v FMRCOA.pdf**
- **2025-05-29 HEIMKES v FMRCOA.pdf**
- **2025-07-10 SEALED HEIMKES v FMRCOA.pdf**
- **2025-06-05 HEIMKES v FMRCOA.pdf**
- **2025-07-09 HEIMKES v FMRCOA.pdf**
- **2025-06-03 HEIMKES v FMRCOA.pdf**
- **2025-07-08 HEIMKES v FMRCOA.pdf**
- **2025-06-04 HEIMKES v FMRCOA.pdf**
- **2025-06-06 HEIMKES v FMRCOA.pdf**
- **2025-07-10 PUBLIC HEIMKES v FMRCOA.pdf**
- **2025-05-28 HEIMKES v FMRCOA.pdf**
- **2025-05-27 HEIMKES v FMRCOA.pdf**