No. 14-14085

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

# Hunt v. Aimco Props., L.P.

814 F.3d 1213 (11th Cir. 2016)    ·    52 NDLR

P 126 Decided Feb 18, 2016

No. 14–14085.

02-18-2016

Dyan HUNT, individually and as parent and guardian for Karl Hunt, Plaintiff–Appellant, v. AIMCO PROPERTIES, L.P., Defendant–Appellee.

Matthew W. Dietz, Rachel Laura Goldstein, Disability Independence Group, Miami, FL, for Plaintiff–Appellant. Scott M. Badami, William Christian Moffitt, Fox Rothschild, LLP, Blue Bell, PA, L. Jason Cornell, Fox Rothschild, LLP, West Palm Beach, FL, for Defendant–Appellee.

JILL PRYOR, Circuit Judge

Matthew W. Dietz, Rachel Laura Goldstein, Disability Independence Group, Miami, FL, for Plaintiff–Appellant.

Scott M. Badami, William Christian Moffitt, Fox Rothschild, LLP, Blue Bell, PA, L. Jason Cornell, Fox Rothschild, LLP, West Palm Beach, FL, for Defendant–Appellee.

Opinion

JILL PRYOR, Circuit Judge:

Dyan Hunt lives with her son, Karl Hunt, who was born with Down Syndrome. They reside in the Reflections apartment complex, which was owned by Aimco Properties ("Aimco") when this *1218 lawsuit was first filed. Dyan sued Aimco, for herself and on behalf of Karl as his parent and guardian (collectively "the Hunts"), alleging that Aimco threatened her and her son with eviction and non-renewal of their lease purportedly because Karl had harassed and made threats to members of the apartment complex's staff. The Hunts alleged that Aimco violated the Fair Housing Act, 42 U.S.C. § 3604, by denying or making unavailable to them their apartment because of Karl's disability; discriminating in the terms, conditions, or privileges of the apartment rental because of Karl's disability; and failing to reasonably accommodate Karl's disability. The district court granted Aimco's motion to dismiss the complaint, and the Hunts appealed. After careful consideration of the parties' briefs, and with the benefit of oral argument, we reverse and remand for further proceedings.

## I. BACKGROUND



Hunt v. Aimco Props., L.P.    814 F.3d 1213 (11th Cir. 2016)

## A. Federal Law Prohibiting Discrimination in Housing Based on Disability

Originally Title VIII of the Civil Rights Act of 1968, the Fair Housing Act prohibited discrimination in housing on the basis of race, color, religion, national origin, and, later, gender. *See* Pub.L. No. 90–284, 82 Stat. 81 (1968); Pub.L. No. 93–383, 88 Stat. 729 (1974). The Fair Housing Amendments Act of 1988 amended the Fair Housing Act (as amended, the "FHA") to bar housing discrimination based on disability. *See* Pub.L. No. 100–430, 102 Stat. 1619 (1988) (codified at 42 U.S.C. § 3604(f)). In relevant part, section 3604(f) makes it unlawful:

> (1)    To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to anybuyer or renter because of a handicap of ... that buyer or renter ... [or] any person associated with that buyer or renter.

> (2)    To discriminate against any person in the terms, conditions, or privileges of sale or rental of adwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of ... that person ... [or] any person associated with that person.

42 U.S.C. § 3604(f)(1)–(2).[1] Under section 3604(f), "discrimination includes," among other things,

> [1] "The FHA refers to discrimination based on 'handicap' rather than disability. 42 U.S.C. § 3604(f). Disability scholars, however, generally prefer the term 'disability' to handicap.... For this reason, we treat the terms interchangeably and elect to use 'disability'...." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.,* 765 F.3d 1277, 1285 n. 2 (11th Cir.2014).

> a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[.]

*Id.* § 3604(f)(3)(B).

With these statutory elements in mind, we review the Hunts' allegations.[2]

> [2] At the motion to dismiss stage, we accept the well-pleaded allegations in the complaint as true and view them in the light most favorable to the Hunts. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1335 (11th Cir.2012).

## B. Factual Background

Dyan and Karl Hunt have lived in the Reflections apartment complex in West *1219 Palm Beach, Florida since November 2006. Aimco owned and managed Reflections at the time of the events in question, August and September 2012. Karl, who was 21 years old at that time, was born with Down Syndrome. His intellectual disability causes him to "act[ ] like a child that is seven years old." Second Am. Compl. ¶ 6, Doc. 21.[3]

> [3] "Doc." refers to the docket entry in the district court record in this case.

On August 13, 2012, the Hunts received from Aimco a Notice of Required Notice to Vacate informing them that their 12–month lease was due to expire on November 19, 2012. The notice invited them to renew their lease, adding that Aimco would "gladly discuss flexible renewal options." *Id.* ¶ 13.

On August 30, 2012, Dyan discovered that her son "was being used as a maintenance person" by the Reflections staff and had been cleaning the bathroom of the complex's clubhouse. *Id.* ¶ 15. Karl appeared upset; Dyan believed that the apartment community manager, Anne–Valery Jackson, had chastised him for stealing

toilet paper. Later that day, Dyan called Ms. Jackson, who claimed that on August 25, 2012, Karl had drawn on a map of the property and, when asked what he was doing, had informed Ms. Jackson that he was going to sacrifice her and another Reflections employee and then trap all the residents in their apartments and set the property on fire. Dyan advised Ms. Jackson that Karl was describing an episode of a Japanese anime television series that he watched and that he did not mean any harm. Ms. Jackson warned Dyan that "words like that 'should not come out in a joking manner.' " *Id.* ¶ 18. Ms. Jackson told Dyan that the Reflections office staff had called Aimco's corporate office because they did not feel safe working at the office and that Aimco's legal department was now involved.

The next morning, Ms. Jackson and Palm Beach County Sheriff Deputy Josh Kushel appeared at the Hunts' apartment and asked to speak with Karl. The officer talked to Karl about the perceived threats toward the office staff, which Karl denied. Dyan explained again that Karl was not a threat, that "he has a speech impediment that causes him to speak without properly explaining himself," and that he was merely describing a cartoon that he watched regularly. *Id.* ¶ 24. Deputy Kushel then warned Karl that if he went in or around the community clubhouse or the office, he would be arrested. Fifteen minutes after the police left, Dyan called Ms. Jackson "crying and said she and Karl are very sorry and she is looking at finding him a place/organization that will have him for the day while she is at work to avoid any more situations." *Id.* ¶ 26. Aimco ignored Dyan's "explanations of Karl's activities or motivations" and failed to consider her request for a reasonable accommodation. *Id.* ¶ 84.

That same day, Aimco decided not to renew the Hunts' lease based on its attorney's instructions. Ms. Jackson posted on their door a Seven Day Notice of Noncompliance with Opportunity to Cure, stating that Dyan had violated the terms of her lease due to her son's actions, including: (1) aggressive and confrontational language and actions; (2) harassing management employees; (3) using obscenities, vulgar, profane, cursing, insulting, belligerent or threatening language or behavior towards management employees in and/or around the office; (4) threatening management employees and/or acting in a threatening manner; and (5) stealing numerous rolls of toilet paper from the restrooms.\*1220 On September 12, 2012, Ms. Jackson posted on the Hunts' door a Notice of Non–Renewal, which stated that the Hunts would be required to vacate on or before November 19, 2012, the date the current lease expired. Dyan packed up the apartment and sold some furniture and personal property. She paid for several background checks for rental applications and a rental agent to assist her with a move. Karl became afraid of the police and terrified to leave the apartment, believing he would be arrested, after the warning from Deputy Kushel.

On October 12, 2012, the Hunts filed a complaint with the Palm Beach County Office of Equal Opportunity.[4]

On November 29, 2012, before the Hunts vacated, a new management company took over ownership and operation of Reflections and, after an investigation, determined that Karl was not a threat and allowed the Hunts to remain in their apartment.

[4] The Office of Equal Opportunity had yet to render a decision at the time the Second Amended Complaint was filed.

The Hunts thereafter filed a complaint in federal district court, alleging that under the FHA Aimco unlawfully: (1) denied or made a dwelling unavailable for rental, in violation of 42 U.S.C. § 3604(f)(1) and (2) discriminated in terms and conditions of housing, in violation of 42 U.S.C. § 3604(f)(2). Aimco moved to dismiss the complaint for failure to state a claim. After the district court granted Aimco's motion to dismiss without prejudice, the Hunts filed an Amended Complaint and later a Second Amended Complaint. Both the

Amended Complaint and the Second Amended Complaint (now the operative complaint)[1] further alleged that Aimco unlawfully failed to reasonably accommodate Karl's disability, in violation of 42 U.S.C. § 3604(f)(3).

Aimco again moved to dismiss, and the district court granted the motion with prejudice. The Hunts now appeal the dismissal of their claims.

## II. DISCUSSION

## A. Mootness

As a preliminary matter, we note that this case is not moot despite the fact that the Hunts ultimately were allowed to remain in their apartment. Although Aimco did not argue mootness in its briefing, "[i]t is incumbent upon this court to consider issues of mootness *sua sponte* and, absent an applicable exception to the mootness doctrine, to dismiss any appeal that no longer presents a viable case or controversy." *Pac. Ins. Co. v. Gen. Dev. Corp.,* 28 F.3d 1093, 1096 (11th Cir.1994). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail,* 996 F.2d 1173, 1175 (11th Cir.1993). Had the Hunts requested only injunctive relief to prevent eviction, their case would be moot. *See Adler v. Duval Cty. Sch. Bd.,* 112 F.3d 1475, 1477 (11th Cir.1997) ("When the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury."). But the Hunts also sought compensatory and punitive damages *1221 in all three counts of their complaint. Thus, the controversy as to money damages remains live, and we may hear this appeal. *See id.* at 1478 (holding that, although high school students' Establishment Clause claims were mooted by their graduation, "[b]ecause the [students'] claim for money damages does not depend on any threat of future harm, this claim remains a live controversy"); *Harris v. Itzhaki,* 183 F.3d 1043, 1050 (9th Cir.1999) (concluding that a plaintiff's claim for damages for violation of 42 U.S.C. § 3604(a) was not moot when she received multiple eviction notices but ultimately was not evicted).

## B. Failure to State a Claim

The district court dismissed each of the Hunts' claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. We review the district court's grant of a motion to dismiss for failure to state a claim *de novo,* accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Adinolfe v. United Techs. Corp.,* 768 F.3d 1161, 1169 (11th Cir.2014). To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Plaintiff's allegations must amount to "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.

The Hunts alleged three FHA violations: (1) denying or making a dwelling unavailable for rental, in violation of 42 U.S.C. § 3604(f)(1); (2) discriminating in the terms and conditions of housing, in violation of 42 U.S.C. §

---

[1] The Second Amended Complaint included five exhibits: the Notice of Required Notice to Vacate, Aimco's electronic record for the Hunts' tenancy, the Seven Day Notice of Noncompliance with Opportunity to Cure, the Notice of Non–Renewal, and a series of internal emails by the new owners of Reflections about renewing the Hunts' lease.

3604(f)(2); and (3) failure to reasonably accommodate, in violation of 42 U.S.C. § 3604(f)(3). We address in turn whether the Hunts failed to state a claim for each count.

## 1. Count I: Making Unavailable or Denying a Rental

We address first the Hunts' section 3604(f)(1) claim, which alleged that Aimco discriminated against Dyan and Karl by making their apartment unavailable because of Karl's disability. *See* 42 U.S.C. § 3604(f)(1)(A). We conclude that the Hunts sufficiently pled a claim under section 3604(f)(1), and the district court erred in dismissing this claim.

We have never expressly set forth the elements of a section 3604(f)(1) claim. At the pleading stage, the relevant question is whether the complaint provides "a short and plain statement of the claim" that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In a discrimination case, "[b]efore discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case." *Id.* Thus, the allegations in the complaint "should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 250 (9th Cir.1997); *see also Ring v.*

1222*1222

*First Interstate Mort., Inc.,* 984 F.2d 924, 927 (8th Cir.1993).

As relevant here, section 3604(f)(1) makes it unlawful to discriminate in the rental of, or to otherwise make unavailable or deny, a dwelling because of a disability of the renter or a person associated with the renter. 42 U.S.C. § 3604(f)(1). Before discovery, a plaintiff may not be able to plead all the facts necessary to prove that there was discrimination based on the disability. For this reason, it is not necessary to state in the complaint, for example, that the housing remained available or was secured by an individual outside of the protected class.[6]

But a complaint must allege that the adverse action was taken *because of* a disability and state the facts on which the plaintiff relies to support that claim.

[6] The Sixth Circuit offers a case in point. Although the court has held that a prima facie case of housing discrimination arises when a plaintiff shows that the housing was given to a person outside the protected class, at the pleading stage, the court held that the following allegations were sufficient to withstand a motion to dismiss:

> [Plaintiffs] allege that the Yateses advertised their house for sale, that they (the Lindsays) executed a purchase agreement to buy the house, and that nearly two weeks after signing the purchase agreement and depositing $500 in earnest money with Brent Yates—and one day after Brent learned they were black—the Yateses terminated the contract.

*Lindsay v. Yates,* 498 F.3d 434, 440 (6th Cir.2007).

casetext

The Hunts pled that Karl has Down Syndrome, an intellectual disability that causes him to act like a seven year old child and have difficulty making himself understood. This meets the definition of a disability, which, according to 42 U.S.C. § 3602(h)(1), is "a physical or mental impairment which substantially limits one or more of such person's major life activities." Indeed, Aimco does not argue that the Hunts failed to plead Karl has a disability within the meaning of the FHA.

The Hunts further alleged that Aimco "had actual knowledge that Karl ... has an intellectual disability." Second Am. Compl. ¶ 12. Supporting that allegation were facts showing that Karl has observable behavioral characteristics. In addition to behaving like a seven year old child, Karl, who was 21 years old, "would listen to children's music, such as Disney sing-a-longs, and Pokémon son[g]s, on his headphones in the public areas" of Reflections. *Id.* ¶ 22.

Moreover, the Hunts pled that Aimco took adverse action against them because of Karl's disability. The Hunts alleged that "Aimco treated Karl Hunt differently solely because of his disability and did not want him residing at Reflections." *Id.* ¶ 53. Even though Dyan described to Ms. Jackson how Karl's disability could cause misunderstandings such as the perceived threat, Ms. Jackson disregarded her explanations and continued the eviction process.

The Hunts also alleged that they were willing and qualified to continue renting the apartment. They had lived together in the Reflections apartment complex for almost six years at the time they received the Notice of Non–Renewal. Shortly before Karl made the alleged threats, a Notice of Required Notice to Vacate had informed the Hunts that the apartment's community manager would "gladly discuss flexible renewal options or renew [their] lease for 12 months." *Id.* ¶ 13. Despite the fact that the Hunts intended to renew *1223 the lease and were qualified to do so, Aimco allegedly refused to allow the Hunts to continue renting the apartment. The Hunts were given notice to vacate the apartment on a date certain. These allegations would suffice to show that Aimco "ma[d]e unavailable or den[ied], a dwelling to any ... renter because of a [disability]." 42 U.S.C. § 3604(f)(1).

Given the complaint's allegation that the new owners ultimately permitted the Hunts to remain in the apartment, however, we must decide whether the Hunts pled sufficient facts to establish that their apartment was "made unavailable" for the purposes of section 3604(f)(1). A defendant need not make it impossible for a person to occupy a dwelling to make housing unavailable. In *McDonald v. Verble,* the Sixth Circuit held that a white couple violated a different, but similar, provision of section 3604[2] when it refused to sell a house to a black

---

[2] Although *McDonald v. Verble* concerned section 3604(a), which prohibits racial discrimination, the relevant language is identical in subsections (a) and (f): "otherwise make unavailable or deny, a dwelling." We see no reason to distinguish section 3604(a) from section 3604(f)(1) as to this element.

Here, Aimco never evicted the Hunts, but it nevertheless made the Hunts' housing unavailable by refusing to renew their lease and directing them to vacate their apartment. Aimco made the decision not to renew their lease shortly after Karl made purported threats to the Reflections office staff. According to the complaint, Dyan explained to Ms. Jackson that the perceived threats were the result of a misunderstanding attributable to Karl's disability. Nonetheless, Aimco proceeded with the eviction process. Approximately two weeks after offering to renew the Hunts' lease, the community manager posted a Seven Day Notice of Noncompliance with Opportunity to Cure on the Hunts' door. About two weeks after that, Aimco issued a Notice of Non–Renewal to the Hunts, stating that they were required to vacate the premises on or before November 19. The Hunts

couple, the McDonalds, even though the McDonalds were able to buy the house after the district court issued a temporary restraining order that allowed the sale. 622 F.2d 1227 (6th Cir.1980). We find the Sixth Circuit's reasoning persuasive: "The fact that subsequent to the filing of a lawsuit, the sale of the property was consummated with the McDonalds, does not alter the prior discriminatory conduct. Nor does that fact wipe out the need for consideration of damages." *Id.* at 1233. Additionally, given the FHA's remedial policy "to provide, within constitutional limitations, for fair housing throughout the United States," 42 U.S.C. § 3601, "the Supreme Court has repeatedly instructed us to give the Fair Housing Act a 'broad and inclusive' interpretation." *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1216 (11th Cir.2008) (quoting *City of Edmonds v. Oxford House, Inc.,* 514 U.S. 725, 731, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995)). Accordingly, we hold that the FHA protects renters not only from eviction, but also from discriminatory actions that would lead to eviction but for an intervening cause.

Meanwhile, there is no indication in the complaint or its attached exhibits that Aimco ever reconsidered its decision or *1224 gave the Hunts permission to remain in the apartment. To the contrary, Aimco made the apartment unavailable to them throughout its ownership and operation of the complex. The apartment only became available to the Hunts again because the complex was sold, and the new owners permitted the Hunts to remain. Just as in *McDonald,* the fact that the Hunts were able to remain in their apartment "does not alter the prior discriminatory conduct." 622 F.2d at 1233. The damages the Hunts suffered cannot be ignored simply because a third party stepped in and allowed them to stay.

The Hunts' allegations contain "factual content that allows the court to draw the reasonable inference" that Aimco discriminated against the Hunts because of Karl's disability. *Iqbal,* 556 U.S. at 663, 129 S.Ct. 1937. The district court erred in concluding otherwise.

## 2. Count II: Discriminating in the Terms, Conditions, or Privileges of a Rental

We now address the Hunts' claim under section 3604(f)(2) for disparate treatment in the terms, conditions, or privileges of their rental. The Hunts alleged that because of Karl's disability Aimco representatives mistreated him by yelling at him, making him do maintenance work around the complex, and barring him from the community rooms and the office. We conclude that the Hunts stated a claim for relief under section 3604(f)(2).

Section 3604(f)(2) makes it unlawful to discriminate in the terms, conditions, or privileges of, or in the provision of services or facilities in connection with, a rental because of a disability. 42 U.S.C. § 3604(f)(2). The allegations regarding Karl's disability similarly support this claim. According to the complaint, because of Karl's disability Aimco representatives yelled at him and forced him to clean bathrooms and collect garbage. Additionally, the complaint alleged that Karl sat and listened to music in Reflections's "public areas where people congregate" prior to the perceived threats; afterwards, because of the Reflections staff's reaction to his disability, Karl was prohibited from entering the community room, the pool area, and the office. Second Am. Compl. ¶ 22. These alleged facts sufficiently pled that Aimco placed conditions on Karl that were not imposed on other residents and restricted his access to facilities in the complex that were open to other residents. The complaint therefore satisfies the pleading requirements for a section 3604(f)(2) claim.

Aimco argues that it cannot be liable under section 3604(f)(2) because the police, not Aimco, instructed Karl to stay out of the community room. This is a distinction without a difference. A private entity may not use the

---

prepared for eviction by packing up their apartment, selling their furniture and housewares, and paying for background checks and a rental agent to assist them in finding another apartment.

police as a front for discrimination. We find persuasive an analogous case from the District of Puerto Rico. In *Schroeder v. De Bertolo,* the defendants—board members of the condominium association that governed the plaintiff's housing—allegedly subjected the plaintiff, who had a mental illness, to baseless civil claims and potential criminal charges because the plaintiff allegedly took property from the condominium's common areas. 879 F.Supp. 173, 175 (D.P.R.1995). The district court concluded that "[b]y bringing groundless civil claims against [the plaintiff] and threatening to bring criminal actions, defendants' actions could arguably have intimidated [the plaintiff] in such a way that she refrained from exercising *1225 her right to use the lobby and other common areas of the Condominium whenever she wished." *Id.* at 178. Similarly, here, although it was Deputy Kushel who warned Karl that he would be arrested if he entered the community room, it was an Aimco employee who called the police and accompanied Deputy Kushel to the Hunts' apartment. As in *De Bertolo,* Karl was discouraged from using common areas at Reflections because Aimco escalated the situation to a law enforcement matter.

Naturally, in some circumstances it may be legitimate or even necessary to protect public safety by calling the police. Indeed, the FHA contemplates such a situation: "Nothing in [section 3604] requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenancy would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9). It may well be that Aimco took reasonable actions based on Karl's direct threat. But the direct threat exception described in section 3604(f)(9) is an affirmative defense and thus does not aid Aimco at the motion to dismiss stage.[8] *See Chevron U.S.A. Inc. v. Echazabal,* 536 U.S. 73, 78, 122 S.Ct. 2045, 153 L.Ed.2d 82 (2002) (characterizing as an affirmative defense the Americans with Disabilities Act's ("ADA") direct threat provision, 42 U.S.C. § 12113(a)–(b), which similarly exempts adverse action against people with disabilities who "pose a direct threat to the health or safety of other individuals"). Considering the alleged facts in the light most favorable to the Hunts, as we must at this stage, the threat of police involvement—regardless of who spoke the warning—restricted Karl's use of the complex's facilities.

[8] "Generally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir.1984) *aff'd and reinstated on reh'g,* 764 F.2d 1400 (11th Cir.1985) (en banc). In some cases, however, "[a] complaint may be dismissed if an affirmative defense ... appears on the face of the complaint." *Bingham v. Thomas,* 654 F.3d 1171, 1175 (11th Cir.2011). This is not such a case.

## 3. Count III: Failure to Reasonably Accommodate

Lastly, we address the Hunts' failure to reasonably accommodate claim. The district court decided that the Hunts could not proceed with this claim because Dyan had failed to request from Aimco a reasonable accommodation for Karl's disability as required by section 3604(f)(3). But the complaint alleged that Dyan asked Aimco staff to let her and her son remain in their apartment while she found "a place/organization that will have [Karl] for the day while she is at work to avoid any more situations." Second Am. Comp. ¶ 26. We conclude that the complaint presented a plausible set of facts from which we can infer that Dyan requested an accommodation and thus sufficiently pled this claim. *See Iqbal,* 556 U.S. at 663, 129 S.Ct. 1937.

To assert a failure to reasonably accommodate claim under section 3604(f)(3), a plaintiff must plead four elements: (1) the plaintiff is a person with a disability within the meaning of the FHA or a person associated with that individual; (2) the plaintiff requested a reasonable accommodation for the disability; (3) the requested accommodation was necessary to afford the plaintiff an opportunity to use and enjoy the dwelling; and (4) the defendant refused to make the accommodation. *See *1226 Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.,* 765

F.3d 1277, 1285 (11th Cir.2014).[3] Here, the claim turns on whether the complaint sufficiently alleged that Dyan requested a reasonable accommodation.

---

[3] This Court decided *Bhogaita* in the context of a motion for judgment as a matter of law, rather than a motion to dismiss. 765 F.3d at 1281, 1285. Nevertheless, because none of the elements we set forth there were evidentiary in nature, we adopt these same elements as pleading requirements. *See Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992 ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases.").

--------

We have yet to determine "precisely what form the request [for a reasonable accommodation] must take." *Holly v. Clairson Indus., L.L.C.,* 492 F.3d 1247, 1261 n. 14 (11th Cir.2007). Several other circuits have addressed this issue in the context of Title I of the ADA, which includes a similar provision requiring employers to make reasonable accommodations for their employees with disabilities. *See* 42 U.S.C. § 12112(b)(5)(A); *Schwarz,* 544 F.3d at 1220 (noting that, in a failure to reasonably accommodate claim, "we look to case law under the [Rehabilitation Act] and the ADA for guidance on what is reasonable under the FHA"). The Third Circuit, for example, has stated that what matters is not "formalisms about the manner of the request," but that the employer has notice of the employee's disability and wish to be accommodated. *Taylor v. Phoenixville Sch.*

*Dist.,* 184 F.3d 296, 313 (3d Cir.1999). Similarly, the Tenth Circuit has emphasized that a plaintiff "need not use magic words" to express a request for accommodation. *Smith v. Midland Brake, Inc.,* 180 F.3d 1154, 1172 (10th Cir.1999) (en banc). However stated, a plaintiff can be said to have made a request for accommodation when the defendant has "enough information to know of both the disability and desire for an accommodation." *Conneen v. MBNA Am. Bank, N.A.,* 334 F.3d 318, 332 (3d Cir.2003) (internal quotation marks omitted). We agree with the Third Circuit that "circumstances must at least be sufficient to cause a reasonable [housing provider] to make appropriate inquiries about the possible need for an accommodation." *Id.*

Here, the complaint contained allegations that, taken together, meet this standard. Dyan explained to Ms. Jackson, the community manager, that Karl was not making threats but rather describing scenes from a cartoon he watched regularly, and that he "was harmless and ... has a speech impediment that causes him to speak without properly explaining himself," resulting in his words being misconstrued. Second Am. Comp. ¶ 24. After Ms. Jackson and Deputy Kushel left the Hunts' home, Dyan called Ms. Jackson crying and apologizing profusely. Dyan told her that she would look for a facility that would take care of Karl during the day while she was away at work to prevent any more incidents. It is clear from the context that Dyan communicated that she was attempting to make these arrangements for the express purpose of avoiding future conflict as a result of Karl's disability. We conclude that these factual allegations were sufficient to plead that Dyan sought an accommodation in the form of an exception to Aimco's apparent policy or practice of not renewing the leases of tenants who make threats.

We can now easily conclude the complaint adequately pled the third and fourth elements of a reasonable accommodation claim. The requested accommodation was necessary to eliminate the possibility that Karl would make perceived threats or engage *1227 in other behavior that frightened or disturbed the Reflections staff. It thus was necessary to afford the Hunts an opportunity to continue to use and enjoy the apartment, yet Aimco refused to make the accommodation. The complaint alleged that Aimco disregarded Dyan's plea that Karl "was not a direct threat and ... ignored her attempts to suggest alternatives short of eviction." *Id.* ¶ 32. Aimco failed "to modify its existing policies and practices to accommodate [Karl's] disabilities." *Id.* ¶ 95. These allegations sufficiently support the claim that Aimco failed even to consider, much less make, the reasonable accommodation of permitting the Hunts to remain in their apartment while Dyan made arrangements for Karl to be placed in offsite care to avoid future incidents or misunderstandings. The Hunts stated a claim for failure to make a reasonable accommodation.

**III. CONCLUSION**

For the reasons explained above, we reverse the district court's dismissal of the complaint and remand for further proceedings consistent with this opinion.

## REVERSED AND REMANDED.

 casetext