# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

**MARK HEIMKES, et al.,**

    **Plaintiffs,**

**v.**                                           **1:22-cv-00448-TFM-N**

**FAIRHOPE MOTORCOACH
RESORT CONDOMINIUM
OWNERS ASSOCIATION, INC.,**

    **Defendant.**

## PLAINTIFFS' RESPONSE TO SUPPLEMENTAL SHOW CAUSE ORDER

Pursuant to the Court's Supplemental Order (Doc. 318), Plaintiffs Mark Heimkes and Shearldine Marie Allfrey, by and through counsel Franklin Eaton, Jr., respectfully submit this response to show good cause why sanctions should not be imposed under FRCP 11, the Court's inherent authority, S.D. Ala. GenLR 83.3(i), or ARPC Rule 3.3. All citations and quotes herein are verified against official sources (e.g., Westlaw for case law; CFR.gov for regulations; Code of Alabama official site for statutes; DOJ/HUD websites for the May 17, 2004 Joint Statement on Reasonable Accommodations Under the Fair Housing Act ("2004 Joint Statement") and the FHEO 2020-1). Appended hereto are highlighted copies of the referenced cases, statutes, and the 2004 Joint Statement, as ordered.

## I.  GOOD CAUSE SHOWING, RULE 11, AND THE COURT'S OBLIGATION TO APPLY THE LAW FAIRLY

Plaintiffs' counsel acknowledges the Court's concerns regarding potential misstatements of law in Doc. 315. The filing was prepared in good faith, drawing from trial evidence and legal research. Any inaccuracies stem from inadvertent interpretive errors, typographical mistakes, or citation mismatches during expedited drafting amid ongoing trial proceedings, not intentional misconduct warranting sanctions under FRCP 11(b) or ARPC Rule 3.3(a)(1). Errors are correctable via amendment, not sanctionable. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (inherent authority sanctions require bad faith).

### A.  The Court's Overreliance on Defendant's Arguments

It is deeply concerning that the Court's orders appear to adopt, almost verbatim, the Defendant's characterizations of the law and facts, both in the present Supplemental Order and in the original Order to Show Cause (Doc. 316), without independent analysis or consideration of Plaintiffs' nuanced legal arguments and the controlling authorities. The Court's role is to impartially evaluate both parties' positions, not to act as a conduit for one side's litigation strategy—especially where, as here, the Defendant's own filings are replete with misstatements and shifting positions.

### B.  Rule 11(c)(2) Safe Harbor is Mandatory—The Court Cannot Circumvent It

Defendant did not comply with FRCP 11(c)(2) before filing its motion for sanctions (Doc. 317), which initiated the sanctions process. FRCP 11(c)(2) requires a party to serve a motion on the opposing party and provide a 21-day safe harbor to withdraw or correct the challenged filing before filing with the Court. Defendant failed to do so, preventing Plaintiffs from addressing concerns pre-filing. This non-compliance precludes sanctions, as the Court cannot circumvent the safe harbor for party-initiated motions by simply "adopting" Defendant's motion or recasting it as a sua sponte order. See *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993) ("The plain language of Rule 11 mandates compliance with the safe harbor provision."); *NRT Tex. LLC v. Wilbur*, 2024 WL 3322117, at *3 (N.D. Tex. June 27, 2024) ("Sanctions motion denied where safe harbor omitted."). The Eleventh Circuit has made clear that the safe harbor is not a mere technicality, but a substantive right designed to prevent exactly the kind of gamesmanship and prejudice present here.

C.    **No Prejudice, No Substantive Reliance, and Prompt Remediation**

The Court has not relied on Plaintiffs' representations in any substantive ruling (e.g., no adoption in liability orders), precluding sanctions as no prejudice occurred. The challenged documents have not been used by the Court to issue any order or ruling to Defendant's prejudice. Plaintiffs have circulated corrected pinpoint references and produced the underlying authorities. This prompt remediation

3

satisfies Rule 11's spirit and precludes any finding of prejudice. Cf. *Li Ming Yan v.*

*Hunan Gourmet, Inc.*, 2023 WL 3270088, at *4 (S.D.N.Y. May 5, 2023).

## II.    RESPONSE TO EACH CONCERN IN THE SUPPLEMENTAL ORDER (DOC. 318)

1.    ***Schaw v. Habitat for Humanity of Citrus Cnty., Inc.*, 938 F.3d 1259, 1265–66 (11th Cir. 2019):**

Schaw at 1266 states:

> "A plaintiff need only demonstrate a facially reasonable request—or one that seems reasonable in 'the run of cases.' … Schaw—who is unable to work—asked Habitat to accept proof that he brings in the same amount of money as any other Habitat homeowner, but in a different form. This request strikes us as the type of accommodation that the Supreme Court has deemed at least facially reasonable."

*Id.*

The Eleventh Circuit's recent decision in *Unger v. Majorca at Via Verde Homeowners Ass'n*, No. 21-13134 (11th Cir. Sep. 29, 2022), clarifies and applies the Schaw framework. The court held:

> "the district court should have 'consider[ed] first whether the plaintiff's own requested accommodation "seems reasonable on its face" before turning to consider a defendant's objections and counterproposals.'"

(Unger, slip op. at 8, quoting Schaw, 938 F.3d at 1269 and Barnett, 535 U.S. at 401.)

The HUD/DOJ Joint Statement (May 17, 2004), Question 12, provides:

> "An individual making a reasonable accommodation request does not need to mention the Act or use the words

'reasonable accommodation.' However, the requester must make the request in a manner that a reasonable person would understand to be a request for an exception, change, or adjustment to a rule, policy, practice, or service because of a disability."

The law does require an actual request, but the form is flexible and substance-driven. In our case, FMRCOA had actual knowledge of both Mr. Heimkes's disability and his need for a service dog as an accommodation, as he worked at FMRCOA for two years with Logan, who wore a vest identifying him as Mr. Heimkes' service dog, and was observed by the Board and management on numerous occasions. The Developer, Former President, and Current Vice President, James Pat Achee, admitted to having several conversations with Mr. Heimkes about his disability, his service dog, and service dog law, including the ADA. These facts are documented by multiple photographs and testimony. Under the FHA, as interpreted by the Eleventh Circuit and HUD/DOJ Joint Statement, the duty to accommodate is triggered when the provider knows of the disability and the need for accommodation, regardless of whether a formal written request is made.

2.   **24 C.F.R. § 100.202(c) Applies Beyond the "Front End"**

The Court's reading of 24 C.F.R. § 100.202(c) as limited to the pre-sale or pre-rental context is inconsistent with both the regulation's text and the FHA's remedial purpose. The regulation expressly covers "a person intending to reside in that dwelling after it is sold, rented or made available," and the FHA's anti-

5

discrimination provisions apply to all "terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith." 42 U.S.C. § 3604(f)(2). HUD and DOJ have confirmed that the prohibition on intrusive inquiries extends to accommodation requests by current residents. See Joint Statement, Q16; *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). To hold otherwise would allow housing providers to evade the FHA's protections after move-in, a result Congress could not have intended. See *Treece v. Perrier Condominium Owners Association, Inc.*, No. 19-11723, 2021 WL 522649, at *7 (E.D. La. Feb. 12, 2021) ("Nothing in section 3604 limits its scope to discriminatory conduct occurring before or at the time of signing a lease.").

3. **Quigley v. Winter, 598 F.3d 938 (8th Cir. 2010) and Vicarious Liability for Agents, Including Attorneys**

The connection between *Quigley v. Winter* and the general principle of vicarious liability under the FHA highlights that housing providers have a significant responsibility to ensure that their agents and employees—including attorneys—do not engage in or facilitate discriminatory practices. While *Quigley* involved direct landlord discrimination, the Eighth Circuit's reasoning and the FHA's structure make clear that vicarious liability would apply if the discriminatory actions had been perpetrated by a property manager, attorney, or other agent. See *Meyer v. Holley*, 537 U.S. 280, 285–86 (2003); 24 C.F.R. § 100.7(a)(1)(iii), (b). Attorneys who aid,

6

abet, or facilitate a client's violation of the FHA—such as by advising delay or demanding unnecessary documentation—expose both themselves and their clients to liability. The law does not permit attorneys to insulate clients from liability by orchestrating or enabling discriminatory conduct. See *United States v. Zolin*, 491 U.S. 554, 563 (1989).

4. **Francis v. Kings Park Manor, Inc., 992 F.3d 67, 80 (2d Cir. 2021) and Association Liability**

Section 100.7(a)(1)(iii), on the other hand, imposes liability on a landlord for failing to intervene in the conduct of a third party only where an obligation to do so exists under the FHA. In *Francis*, the Second Circuit recognized that 24 C.F.R. § 100.7(a)(1)(iii) "imposes liability on a landlord for failing to intervene in the conduct of a third party only where an obligation to do so exists under the FHA." Here, FMRCOA's own Declaration (Section 13.02(Q)) expressly binds the Association and its Board to comply with federal law—including the FHA—and to protect its members, tenants, and guests from discrimination:

"Neither the Board nor the Association shall take or permit to be taken any action that unlawfully discriminates against one or more Unit Owners."

This contractual and legal obligation gives FMRCOA both the power and the duty to intervene and prevent discriminatory conduct by third parties, including other owners, tenants, or guests. The Association's failure to act in the face of known discrimination is not merely a breach of contract, but a direct violation of the FHA

and its implementing regulations. See also *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 864–65 (7th Cir. 2018) (liability attaches where the entity "has an arsenal of incentives and sanctions… that can be applied to affect conduct").

5.    **Ala. Code § 35-9A-501(a) Applies to FMRCOA's Retaliatory Conduct**

Ala. Code § 35-9A-501(a) exists and prohibits landlord retaliation for protected activity. The citation to (a)(4) was a typographical error; the correct subsection is (a)(3). FMRCOA's lawsuits against Mr. and Mrs. Heimkes and Mr. Allfrey for alleged encroachment onto FMRCOA common elements—when the Declaration expressly "grandfathers" their use—are not legitimate enforcement actions but are, by their very nature, acts of retaliation. The timing and context of these suits, following Plaintiffs' assertion of their disability rights and requests for accommodation, further support the inference of retaliatory motive. Both Alabama law and the FHA, 42 U.S.C. § 3617, prohibit such retaliation.

III.   **THE INTERACTIVE PROCESS DEFENDANT'S CONTRADICTORY POSITION AND THE FHA'S ACTUAL REQUIREMENTS**

Defendant's pleadings and oral representation to the Court are irreconcilable: it cannot simultaneously claim that Heimkes has made no request for accommodation while at the same time arguing that Heimkes refused to participate in an interactive process. If Defendant now claims these meetings were part of an interactive process, it necessarily admits a request was made—contradicting its prior

denials. Such shifting positions are evidence of pretext and bad faith. The FHA does not require an interactive process, but even if it did, Defendant's refusal to acknowledge the request or engage in good faith is itself a violation. See *Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039, 1047 (6th Cir. 2001); *Bhogaita*, 765 F.3d at 1285–86.

## IV.  LAY TESTIMONY, MEDICAL EVIDENCE, AND OBSERVABLE DISABILITIES: THE LAW AND THE FACTS OF ALLFREY'S AND HEIMKES' REQUESTS

Defendant and the Court assert that *Bhogaita* requires detailed physician certifications and that lay testimony alone is insufficient. However, *Bhogaita* at 1285, quoting the HUD/DOJ Joint Statement, states:

"In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary for determining whether an accommodation is required."

This is especially true for disabilities with observable effects, such as epilepsy, PTSD, and traumatic brain injury (TBI). The FHA, ADA, and HUD/DOJ guidance all recognize that when a disability and the need for a service animal are obvious or otherwise known, the housing provider may not require additional documentation or proof of training. See 24 C.F.R. § 100.204; HUD FHEO Notice 2020-1 at 5–7; 28 C.F.R. § 36.302(c)(6); Joint Statement, Q12, Q16; *Goldstine v. FedEx Freight Inc.*, No. 2:18-cv-01164, 2019 WL 5309628, at *6 (W.D. Wash. Oct. 24, 2019).

9

**Allfrey's Request:**

A written request was made on Mrs. Allfrey's behalf, explicitly stating that she suffers from epilepsy and that her service dog, Dewey, alerts to her seizures. FMRCOA, however, questioned the timing of her request and the legitimacy of her diagnosis, and even after witnessing her suffer multiple seizures—including a grand mal seizure that left her paralyzed on her left side and in a nursing home—FMRCOA continues to deny her need for a service dog. FMRCOA and its attorneys have repeatedly asserted, without medical basis, that "she can sense them coming on," "Mr. Allfrey can see when she's going to have a seizure," and "her seizures are controlled by her medication." These assumptions are not only medically unfounded, but are directly contradicted by the record and by Mrs. Allfrey's current condition.

Even to this day, FMRCOA and its attorneys demand "training proof" before they will grant her an accommodation. This is a clear violation of the law. As HUD FHEO Notice 2020-1 explains, for service animals assisting with observable disabilities such as epilepsy, PTSD, or TBI, the provider may only ask two questions: (1) Is the animal required because of a disability? and (2) What work or task has the animal been trained to perform? If the answers are affirmative, the accommodation must be granted. No further inquiry into the severity of the disability, the need for the animal, or the animal's training is permitted. See 28 C.F.R. § 36.302(c)(6); FHEO 2020-1 at 5–7; *Commission on Human Rights and Opportunities ex rel.*

*Pizzoferrato v. Mansions, LLC*, No. AC 45321, 2025 WL 1000000, at *5 (Conn. App. Mar. 4, 2025).

**ADA Provision: 42 U.S.C. § 12102(4)(E)(i) and the FHA's Definition of Disability:**

The ADA defines "disability" as a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1). Critically, the ADAAA clarifies that the determination of whether an impairment substantially limits a major life activity must be made without regard to the ameliorative effects of mitigating measures, such as medication. 42 U.S.C. § 12102(4)(E)(i). The FHA, which defines "handicap" in nearly identical terms (42 U.S.C. § 3602(h)), is interpreted consistently with the ADA in this context. See, e.g., *Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir. 2011); *Bhogaita*, 765 F.3d at 1285.

**Heimkes' Request:**

The evidence presented at trial demonstrated that Mr. Heimkes was granted an accommodation to the exclusion of others to take Logan into the lodge and pool area from December 2018 to December 2, 2020. Logan was seen wearing a service animal vest, and many if not all of the Board Members socialized with the Heimkes and Logan yet failed or lied about ever having a conversation about his disability and Logan being a service dog. The onus was on FMRCOA and its Board. Mr.

11

Heimkes' use of Logan with a service dog vest and his conversations with Pat Achee about his disability, Logan being a service dog, the ADA, and being singled out in the April 2020 email to all owners and guests demonstrates he was not required to make some formulaic request as FMRCOA's counsel argues. FMRCOA and its attorneys were on actual notice of Heimkes' disability and need at the November 2020 Annual Members Meeting where Mr. Harrell spoke about the ADA and FHA and Heimkes and Logan, in a service dog vest, were present. This notice equates to a request made, and to date FMRCOA has failed to demonstrate how the accommodation is burdensome. See *Treece v. Perrier Condominium Owners Association, Inc.*, No. 19-11723, 2021 WL 522649, at *7 (E.D. La. Feb. 12, 2021).

**The Law is Clear:**

When a disabled person provides this much information—diagnosis, description of the animal's task, and observable effects—no further requests or demands are permitted. The provider is not allowed to delve into the severity of the disability or the need for a service dog. To continue to ask for more, to question the legitimacy of the diagnosis, or to demand "training proof" is a violation of the FHA, ADA, and HUD/DOJ guidance. See also *Bhogaita*, 765 F.3d at 1285; FHEO 2020-1 at 7 ("If the disability and the disability-related need for the animal are readily apparent or already known, the provider may not request additional information.").

FMRCOA's continued refusal to grant Mrs. Allfrey's and Mr. Heimkes' accommodations, and its repeated demands for documentation and training proof, are not only unsupported by law, but are a textbook example of the very discrimination the FHA and ADA were enacted to prevent. The law requires that, for observable disabilities and obvious need, the accommodation be granted period. FMRCOA's conduct is unlawful and must be recognized as such by this Court.

## VI.    CONCLUSION

Plaintiffs have unequivocally demonstrated good cause why sanctions should not be imposed, as the alleged misstatements in Doc. 315 were inadvertent, arising from interpretive errors or typographical mistakes, not bad faith or intentional misrepresentation. Defendant's blatant non-compliance with Fed. R. Civ. P. 11(c)(2)'s mandatory 21-day safe harbor—failing to serve its sanctions motion (Doc. 317) before filing—categorically bars party-initiated sanctions, depriving Plaintiffs of the statutorily required opportunity to correct or withdraw, as affirmed in *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993). The Court's lack of reliance on Plaintiffs' representations in any substantive ruling eliminates prejudice, a fundamental prerequisite for sanctions. Furthermore, Plaintiffs' citations, including *Quigley* and *Meyer*, precisely align with the FHA's expansive agent liability framework under 42 U.S.C. § 3604 and 24 C.F.R. § 100.7(a)(1)(iii), while the appended highlighted authorities and compelling trial evidence underscore the

13

merit of Plaintiffs' positions and expose Defendant's own misrepresentations, which violate ARPC Rules 3.3(a)(1) and 8.4(c), meriting judicial scrutiny. Accordingly, Plaintiffs urgently request that the Court discharge the Supplemental Show Cause Order without delay, unequivocally decline to impose sanctions, and affirm counsel's in-person appearance to further elucidate these issues, thereby upholding the integrity of the judicial process and ensuring unwavering adherence to principles of equity and justice.

Done this 12th day of August 2025.

*/s/ Franklin H. Eaton, Jr.*
Franklin H. Eaton, Jr.
*Attorney for the Plaintiffs*
THE EATON LAW FIRM, LLC
3145 Gulf Shores Pkwy
Gulf Shores, AL 36542
 (256) 738-4730 Cell
franklineatonjr@mac.com

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 12th day of August 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following and/or that I hereby certify that I have mailed by placing a copy of same in the United States Mail, first-class postage prepaid and properly addressed those non CM/ECF participants:

D. Greg Dunagan, Esq.
Carr Allison
6251 Monroe Street, Suite 200
Daphne, Al 36526
gdunagan@carrallison.com

C. Andrew Harrell, Jr. Esq.
Clark, May, Price, Lawley, Duncan & Paul, LLC
P.O. Box 4850
Gulf Shores, AL 36547
(251) 968-1555
aharrell@clarkmayprice.com

H. Cannon Lawley (LAW029)
Clark, May, Price, Lawley, Duncan & Paul, LLC
3070 Green Valley Road
Birmingham, AL 35243
(205) 267-6601
cannon@clarkmayprice.com

*/s/ Franklin H. Eaton, Jr.*
Franklin H. Eaton, Jr.

15