# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| MARK HEIMKES,<br>    Plaintiff,<br><br>v.<br><br>FAIRHOPE MOTORCOACH<br>RESORT CONDOMINIUM<br>OWNERS ASSOCIATION, INC.,<br>    Defendant. | )<br>)<br>)<br>) CIV. ACT. NO. 1:22-00448-TFM-N<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| SHEARLDINE MARIE<br>ALLFREY,<br>    Plaintiff,<br><br>v.<br><br>FAIRHOPE MOTORCOACH<br>RESORT CONDOMINIUM<br>OWNERS ASSOCIATION, INC.,<br>    Defendant. | )<br>)<br>)<br>)<br>) CIV. ACT. NO. 1:22-00496-TFM-N<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S NOTICE OF
## PLAINTIFFS' NONCOMPLIANCE WITH SHOW CAUSE ORDERS
## AND ADDITIONAL MISSTATEMENTS OF LAW

Comes now DEFENDANT FAIRHOPE MOTORCOACH RESORT CONDOMINIUM OWNERS ASSOCIATION, INC. ("Defendant" or "FMRCOA"), by and through Counsel, and hereby gives notice to the Court of Plaintiffs' noncompliance with this Court's Order and Supplemental Order (Docs.

1

316, 318) (hereafter, "Show Cause Orders" or "Orders") and Plaintiffs' additional misstatements of law in their Responses to said Orders (Docs. 319, 320, 321, 321-1), as follows:

## I. PLAINTIFFS' UNTIMELY SUBMISSIONS DO NOT COMPLY WITH THE DIRECTIVES OF THIS COURT'S SHOW CAUSE ORDERS.

1. True to form, despite the serious implications and precise instruction of this Court's Show Cause Orders (Docs. 316, 318), Plaintiffs have yet again demonstrated their utter indifference to the Orders and Rules of this Court (Docs. 319, 320, 321, 321-1 along with exhibits to each). *See* Fed. R. Civ. P. 41(b).

2. First, the Court explicitly ordered that Plaintiffs' show cause Response and appended cases and/or declaration be filed "**not later than 4:00 p.m. (Central Daylight Time) on Monday, August 11, 2025**." (Doc. 316 at 3; Doc. 318 at 3 (emphasis in originals)). None of Plaintiffs' filings complied with that mandatory deadline. (Docs. 319, 320, 321, 321-1).

3. As a part of the Response, Plaintiffs' counsel was required to:

[A]ppend to his filing copies of each allegedly fabricated legal authority; if he cannot provide such copies, counsel is further ORDERED to submit a sworn declaration that provides a thorough explanation for how the motion and allegedly fabricated cases were generated. Additionally, as for the *Carruthers, Revock, Meyer, Kaltenbach*, and *Wales West* cases, Plaintiffs' counsel is ordered to append to his filing highlighted copies of each case indicating where said cases state the proposition which Counsel claims they stand for.

(Doc. 316 at 3).

2

> [And], highlighted copies of each case or statute indicating where said cases or statutes state the proposition which Counsel claims they stand for. This Order supplements the previously issued August 4, 2025 Order, and Plaintiffs' Counsel should address the issues outlined above in addition to the issues outlined in that Order. See Doc. 316.

(Doc. 318 at 3).

4.      Plaintiffs' Counsel's Declaration (Doc. 321-1) fails to provide any explanation of how the filings and fabricated cases and statute were generated, nor did Plaintiffs submit highlighted copy of each case and statute showing where they state the proposition Plaintiffs' counsel represented they stand for. (Docs. 319, 320, 321, 321-1). Although Plaintiffs' second belated filing did include highlighted cases, neither are all offending cases and statues included, nor do the highlighted sections state the propositions represented in Plaintiffs' arguments. (Doc. 320). Moreover, the non-conforming exhibits Plaintiffs did provide reveal that they were largely, if not entirely, generated by an artificial intelligence ("AI") platform(s), apparently including "Casetext." *E.g.,* Docs. 319-1 – 319-8; Docs. 320-1 – 320-9; *see* Exs. 1, 2.[1]

---

[1] Plaintiffs' apparent continued reliance on an AI technology that has been shown to provide an inaccurate or hallucinated response 58% of the time, especially in response to show cause orders necessitated by this very flaw, can only be objectively deemed reckless indifference. Ex. 1 at p. 2 ("The Stanford HAI study found that the AI Assisted Research (AI-AR) tool for Westlaw [apparently incorporating Casetext] had an accuracy rate of only 42% and an overall hallucination rate of 33%."); *id.* at 3 ("the legal tech community wanted to know if Casetext had contributed to the tool that was tested in any way and had – according to the Stanford HAI study – resulted

3

5.      Instead of providing the substantive explanations and submissions this Court explicitly required, Plaintiffs offered what can only be characterized as a vague, conclusory, and dismissive rebuff, claiming that any "alleged citation errors were inadvertent typographical or clerical mistakes" – portrayed as mere technicalities resulting from unexplained "truncation of case names and copy/paste errors." (Doc. 319 at 1). Plaintiffs' perfunctory, nondescript and casual dismissal of these issues neither complies with the requirements of this Court's show cause orders, nor even passes the blush test. For instance, the very operation of cut-and-paste is, definitionally, that no changes are made between what is cut and what is pasted; it simply transfers the cut material from one location to another.

6.      Plaintiffs' submissions are patently devoid of the substantive explanations and information the Court Ordered Plaintiffs to provide, or even the slightest indication of contrition for the burdens Plaintiffs' misrepresentations of fact and law have needlessly imposed on both the Court and FMRCOA. Indeed, Plaintiffs give astonishingly short-shrift to the fact that they cited two (2) non-existent cases, *Roseborough v. Caldwell*, 2015 WL 3609318, at 4 (N.D. Ga June 8, 2015) and *Sabala v. W. Gables Condo Assn*, 2010 WL 3841976, at 5 (S.D. Fla. Sept 30, 2010).

---

in a low accuracy score. And the answer is: yes, it was, because [Westlaw's] 'AI-Assisted Research…leverages innovation in Casetext.")'; Ex. 2 at § 6.2.1 (AI "Systems do not seem capable of consistently making out the holding of a case."); *id.* at § 6.2.4 ("Westlaw [AI-AR] generates provisions of law that do not exist.").

Plaintiffs essentially minimize their citation of this faux authority as just simple "typographical or citation management errors, likely resulting from truncation and autocorrect during the drafting process." (Doc. 319 at 3). Plaintiffs' purported "likely" excuse, however, is not even facially plausible. FMRCOA respectfully submits that the erroneous citations at issue are simply not how cut-and-paste, truncation or autocorrect works. Plaintiffs' unrepentant conclusory contentions in this regard just do not make any plausible sense, and are indicative of the overriding disregard for the governing Rules and this Court's Orders and authority that they have consistently evidenced throughout the course of these proceedings. *See* 18 U.S.C. § 401(1), (3); 28 U.S.C. § 1927; Fed. R. Civ. P. 1, 11(b), 41(b); Ala. R. Prof. Cond. 3.1, 3.2, 3.3.

7.     Plaintiffs' contentions regarding the cases they claim they intended to cite likewise just do not hold water. Plaintiffs represent that they intended to cite *Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, 2014 WL 1092361 (S.D. Fla. Mar. 13, 2014), instead of *Sabala v. W. Gables Condo Ass'n*, 2010 WL 3841976 at 5 (S.D. Fla. Sept. 30, 2010). (Doc. 319 at 3).  First, Plaintiffs provide no explanation for where they obtained the *Sabala v. W. Gables Condo Ass'n* case name. Second, Plaintiffs provide no explanation for how their erroneous case citation for "*Sabala*" was created, nor how their citation leads to a worker's compensation case from the state of New York.

8.      Plaintiffs' initial attempt to minimize their citation of the non-existent *Roseborough* case is even more implausible. (Doc. 319 at 3-4). Plaintiffs claim that *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213 (11th Cir. 2016) is the case they intended to cite, not *Roseborough v. Caldwell*, 2015 WL 3609318 at 4, (N.D. Ga. June 8, 2015), and that the latter was only cited due to some unidentified "typographical or citation management errors, likely resulting from truncation and autocorrect during the drafting process." (Doc. 319 at 3). These case names, however, could hardly be more different, and Plaintiffs likewise provide no explanation of where they obtained the non-existent case citation; much less do Plaintiffs demonstrate how cut-and-paste, short form citation, or autocorrect could even conceivably yield the former from the latter.

9.      Simply put, despite the express requirements of this Court's show cause orders, Plaintiffs provide absolutely no explanation how truncation (i.e., short form citation), cut-and-paste, or autocorrect could even possibly change: "*Hunt v. Aimco Properties*, L.P., 814 F.3d 1213 (11th Cir. 2016)" to "*Roseborough v. Caldwell*, 2015 WL 3609318 at 4 (N D Ga June 8 2015)"; or, "*Sabal Palm Condos. of Pine Island Ridge Ass'n, Inc. v. Fischer*, 2014 WL 1092361 (S.D. Fla. Mar. 13, 2014)" to "*Sabala v. W Gables Condo Assn*, 2010 WL 3841976 at 5 (S D Fla Sept 30 2010)." *See* (doc. 319 at 3-4). Instead, FMRCOA suggests that the lack of punctuation within the parentheticals of the *Sabala* and *Roseborough* faux cites appear indicative of AI

6

generated citations. (Doc. 319 at 3-4). *See generally,* Isaacson Ethan, *AI and The Bluebook: Why ChatGPT Falls Short of Traditional Algorithms for Bluebook Legal Citation Formatting,* LawNext Directory, (March 26, 2023).

10.     Plaintiffs then further undermine their initial excuse by later portraying that *Rosebrough v. Caldwell*, 667 F.3d 333 (6th Cir. 2012), is the case they actually meant to sight. (Doc. 320 at 1-2, ¶ 6). Far from indicating an excusable mistake, *this purported case does not exist either*. Instead, 667 F.3d 333, is a page from the middle of a Third Circuit opinion addressing the certification and settlement approval of nationwide class actions by diamond purchasers, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 (3d Cir. 2011). It would appear that Plaintiffs are yet again submitting AI-hallucinated case citations to this Court.

11.     The only "*Rosebrough v. Caldwell*" opinions FMRCOA has been able to find arise from a Tennessee state Chancery Court child custody proceeding and predictably make no mention of FHA or ADA discrimination, much less stand for the proposition of "post move in requests valid," as Plaintiffs contend.  (Doc. 296 at 30, Page ID#: 9806); *See* 2019 Tenn. App. LEXIS 608 (Tenn. Ct. App. Dec. 18, 2019); 2021 Tenn. App. LEXIS 479 (Tenn. Ct. App. Dec. 6, 2021). Nevertheless, Plaintiffs attach a copy of the 2021 Tennessee state court *Rosebrough* opinion to their *Response to Order to Show Cause Attaching Caselaw*, as purported justification

for their misrepresentation of *Roseborough v. Caldwell*, 2015 WL 3609318 at 4, (N.D. Ga. June 8, 2015), as pertinent legal authority. (Doc. 320-6).

12.   Potentially more importantly, and contrary to Plaintiffs' superficial dismissal of these infirmities, the mis-cited cases and statutes identified in this Court's show cause orders were not isolated technical anomalies that only impacted Plaintiffs' Documents 296 and 315. Instead, misstatements of the facts and law have permeated throughout Plaintiffs' submissions and arguments to this Court. Plaintiffs, in fact, did not even bother to support their unfounded attacks on the Court and Defense counsel with accurate citations of law in seeking the extraordinary relief of recusal, mistrial and requesting to examine Defense counsel regarding their legal analysis.  *See, e.g.* (Doc. 247 at 2-5; Doc. 264 at ¶¶ 3-7; Doc. 301 at ¶¶ 13-14, 18, 21, 22, 26-30).

13.   Frankly, it is simply incomprehensible that a party would attack the character and objectivity of a court without carefully ensuring that it correctly represented the law supporting its motion to recuse or for a mistrial that casts accusations of judicial misconduct. Yet, that is exactly what Plaintiffs have done here, *twice*. *See* (Docs. 244, 262). As FMRCOA previously raised in its response to Plaintiffs' motion seeking recusal and mistrial, "the cases [Plaintiffs] cite do not

even reflect the holdings they represent. Indeed, no case cited by Plaintiffs says what Plaintiffs represent it says." (Doc. 264 at ¶ 5; *see id.* at ¶¶ 3-4).[2]

14.   In short, Plaintiffs' untimely and non-conforming submissions only serve to emphasize Plaintiffs' and their counsel's total disregard for this Court's Orders and the Rules governing these proceedings and the parties' conduct. Plaintiffs did not timely respond to the orders, nor did they provide what this Court ordered, but instead only offered perfunctory duplicities and, then, without invitation from the Court, misused their show cause responses as yet another platform to proliferate their baseless accusations and ad hominem attacks against this Court, FMRCOA and its counsel. Simply put, one could not submit more dismissive and unrepentant responses to a Court's very specific show cause orders than what Plaintiffs have elected to provide the Court here. (Docs. 319, 320, 321, 321-1).

## II.   PLAINTIFFS' SUBMISSIONS COMPOUND, NOT CURE, THEIR HABITUAL MIS-CITATION AND MISREPRESENTATION OF THE LAW.

---

[2] *See* Appendix A, hereto, for ease of reference.

Unbelievably, Plaintiffs' various Responses to the Show Cause Orders brazenly continue their customary practice of presenting arguments founded upon mis-citations, misstatements, and misapplications of legal authority.

### A.    PLAINTIFFS' INITIAL RESPONSE (DOC. 319)

*Kaltenbach v. Richards*, 464 F.3d 524, 527 (5th Cir. 2006).

Plaintiffs submit that ". . . while the citation to *Kaltenbach* was mistaken, the legal proposition for which it was cited is valid and directly relevant to Plaintiffs' arguments." (Doc. 319 at 3).

The issue in *Kaltenbach* was whether a debt collector's attorney could be considered a "debt collector" as that term is defined under the Fair Debt Collection Practices Act (FDCPA).  The Fifth Circuit appellate court remanded the case back to the District Court to reconsider its dismissal of the case which had been granted on the basis that the defendant attorney was not a "debt collector".  There is no mention of ADA, FHA, or discrimination.  Plaintiffs do not explain the legal proposition for which they cite this case or how it is "directly relevant to Plaintiffs' arguments." Further, Plaintiffs did not append a highlighted copy this case to any filing as ordered.

*United States v. Wales West, LLC*, 2018 WL 1089990 (S.D. Ala. Feb. 27, 2018).

Plaintiffs do not explain their non-existent citation (2018 WL 1089990) for *Wales West*, including where or how that citation was obtained.  In an effort to

10

explain away their use of *Wales West* in the face of Rule 11, Plaintiffs' Response argues: "A Rule 11 sanction requires proof that 'after an inquiry reasonable under the circumstances, the legal contention' advanced was objectively baseless—i.e., no competent attorney, knowing the relevant law, could have believed it warranted by existing authority or a good-faith extension of that authority. See *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) (objective reasonableness governs). My reference to *Wales West* easily satisfies that threshold." (Doc. 319 at 5). While *Mars Steel* recognizes objectivity, there is more to the analysis which Plaintiffs' counsel ignores:

> The objective component is that a paper filed in the best of faith, by a lawyer convinced of the justice of his client's cause, is sanctionable if counsel neglected to make "reasonable inquiry" beforehand. This objective component is the big change in the 1983 amendment to Rule 11. "An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating." *Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986). Counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation.

*Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989) (emphasis added).

In support of their citation and use of *Wales West*, Plaintiffs further argue: "Courts have **refused to impose sanctions** for far more substantial miscues, provided the underlying point was legally tenable. *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346 (Fed. Cir. 2003). (Doc. 319 at 6)"(emphasis added).

11

In *Precision Specialty Metals, Inc. v. United States*, the LexisNexis summary of the court's ruling is:

> "The attorney violated Rule 11 because, in quoting from and citing published opinions, she distorted what the opinions stated by leaving out significant portions of the citations or cropping one of them, and failed to show that she and not the court had supplied the emphasis in one of them. There was no appellate decision holding that Rule 11 did not cover such misstatements of legal authority. Thus, the distortion of the law was inconsistent with and violated the standards of Rule 11, and a reprimand was appropriate."

> **Outcome**
> The appellate court affirmed the international trade court's reprimand of the attorney.

*Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1347 (Fed. Cir. 2003). Accordingly, while the Court did not impose a monetary sanction on the attorney, it did indeed sanction the attorney with a reprimand. It did not <u>refuse</u> to sanction her, as Plaintiffs argue. Again, Plaintiffs have misstated the holding of a case in an apparent attempt to mislead this Court.

## *Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 128–29 (2005)

Plaintiffs attack Defendant for "habitually misappl[ying] Title I (employment) ADA cases to Title III (public accommodation) and FHA claims, importing stricter evidentiary and procedural requirements that are not supported by controlling law." (Doc. 319 at 14). Plaintiffs cite *Spector* for the proposition that the U.S. Supreme Court cautioned against conflating and misapplying Title I and Title III cases under ADA analysis, which Plaintiffs refer to as "cross-title borrowing",

12

presumably because *Spector* addresses this concept. (Doc. 319 at 14). However, *Spector* does not address so-called "cross-title borrowing". In fact, it makes no mention of Title I other than an immaterial reference in a footnote, nor does it contain the phrase "cross-title borrowing", nor does it caution against arguing Title I cases in the context of Title III claims, or vice-versa. The sole issue in the case was whether or not a foreign-flagged cruise ship was subject to Title III of the ADA. There was no analysis of ADA Title I or so-called "cross-title borrowing". Therefore, Plaintiffs have misstated and/or misapplied the tenet of *Spector*.

## B. PLAINTIFFS' SECOND FILING, PURPORTING TO ATTACH HIGHLIGHTED COPIES OF THE CASES PREVIOUSLY CITED. (DOC. 320)

### *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004)

Though Plaintiffs do append a copy of *Carruthers* to their Response (Doc. 320-2), the case does not stand for their stated proposition that expert testimony is not needed and that lay testimony and medical records suffice to prove disability, much less that the *Carruthers* court relied on such evidence. Plaintiffs' highlighted portions of this case do not support this position and therefore, Plaintiffs have not complied with the Court's Order.

Plaintiffs cite "*Santiago Ortiz v. Caparra Center Associates, LLC*, 148 F. Supp. 3d 242 (D.P.R. 2015) (epilepsy, service dog, lay evidence)" to explain their citation of *Carruthers* for the "well-established principle in the Eleventh Circuit and

beyond" that "lay evidence and medical records are sufficient to establish disability under the ADA and FHA, especially for disabilities with observable effects such as epilepsy and PTSD." (Doc 319 at 9).

It should be noted that Plaintiffs' citation for *Ortiz*, 148 F. Supp. 3d 242 (D.P.R. 2015), is again a citation to a non-existent case. Inputting this citation into LexisNexis pulls up page 242 of the case of *United States v. Mohamed*, 148 F. Supp. 3d 232 (E.D.N.Y. Dec. 1, 2015). Although neither this Court nor FMRCOA should have to truffle-pig to try and figure out what case Plaintiffs' represent support their arguments, Defense counsel, nevertheless, continued to endeavor to so and was eventually able to locate the case of *Ortiz v. Caparra Ctr. Assocs., LLC*, 261 F. Supp. 3d 240 (D.P.R. 2016). However, it has no bearing on the represented issue of whether a lay plaintiff's own testimony can establish the diagnosis of a medical condition or provide the required medical nexus between any diagnosed condition and claimed symptoms or limitations.[3] *Ortiz*, in fact, does not speak to evidence at all. Instead,

---

[3] Plaintiffs finally admit, at least once, that what is at issue here are claimed "non-observable disabilities such as PTSD, TBI, and epilepsy." (Doc. 319 at 12). Regardless of how they try to obfuscate the issue with misrepresentations of case holdings, then, Plaintiffs' promoted position simply cannot be reconciled with the unambiguous language of Fed. R. Evid. 602, 701, and 802. A lay plaintiff is not qualified to diagnose the non-obvious medical conditions at issue in this case. In turn, any testimony of a diagnosed medical condition could only be based upon what they claim to have been previously told by a physician (declarant) made outside of these proceedings. Such testimony has long been declared inadmissible "pure hearsay, with all the unreliability that attaches to such recitals by an interested witness." *United States v. Buck*, 70 F.2d 1007 (5th Cir. 1934); *Luke v. United States*,

the court analyzed only a Motion to Dismiss for failure to state a claim under Rule 12(b)(6), stating: "At this early stage in the proceedings, J.D.S. is *not required to establish the elements of her claim <u>with evidence</u>*. Rather, she is only required to allege sufficient facts from which it can be inferred that she is disabled." *Ortiz*, 261 F. Supp. 3d at 247 (emphasis added).  Therefore, Plaintiffs' (erroneous) citation of this case for "the well-established principle" that "lay evidence and medical records are *<u>sufficient to establish disability</u>* under the ADA and FHA, especially for disabilities with observable effects such as epilepsy and PTSD" is a misrepresentation of *Ortiz*'s holding and a blatant attempt to mislead this Court.

Plaintiffs further cite "*Williamson v. Indian River Memorial Hospital, Inc.*, No. 2:21-cv-14318 (S.D. Fla. Dec. 6, 2022) (PTSD, service dog, lay and medical evidence)", as an additional case that supports their citation of *Carruthers* for the "well-established principle in the Eleventh Circuit and beyond" that "lay evidence

---

84 F.2d 823, 825 (5th Cir. 1936). Indeed, even California courts recognize that allowing a plaintiff's own testimony to establish the existence of a medical diagnosis, or the adverse effects caused by such a diagnosis, is a bridge too far. *E.g., Exmundo v. Scribner*, 2014 U.S. Dist. LEXIS 119907, at *2 (E.D. Cal. Aug. 27, 2014) ("As to Plaintiff's medical conditions, he may not testify as to any medical matter which requires scientific, technical, or other specialized knowledge, which generally includes any ultimate diagnosis [and] a cause and effect relationship"); *Hearn v. City of Bakersfield*, 2024 U.S. Dist. LEXIS 194002, at *38-39 (E.D. Cal. Oct. 24, 2024) ("a plaintiff may not testify to hearsay statements from his treating physicians regarding his diagnoses if such testimony is offered for the truth of the matter asserted; namely, that Plaintiff, in fact, has certain diagnosed conditions").

and medical records are sufficient to establish disability under the ADA and FHA, especially for disabilities with observable effects such as epilepsy and PTSD." (Doc 319 at 9).  However, a reading of *Williamson*, correctly cited as 2022 U.S. Dist. LEXIS 219763, 2022 WL 18896508 (S.D. Fla. Dec. 6, 2022), shows that the Magistrate Judge analyzed competing summary judgment motions and issued an "Omnibus Report and Recommendations on Referred Motions" finding that the motions should be denied.  The only expert mentioned was a dog-training expert, not a medical expert, and the Court did not analyze the sufficiency of "lay evidence and medical records" relative to proof of a disability.  Rather, the analysis focused on the admissibility of alleged "sham" affidavits, which the court did not strike and determined that a question of fact existed precluding summary judgment.  The Report and Recommendation was later affirmed and adopted by the District Judge at *Williamson v. Indian River Memorial Hospital, Inc.*,  2023 U.S. Dist. LEXIS 33621 (S.D. Fla. Feb. 27, 2023). Therefore, this case does not stand for Plaintiffs' stated proposition and is a misapplication which attempts to mislead the Court.

## *Revock v. Cowpet Bay West Condominium Association*, 853 F.3d 96, 112 (3d Cir. 2017)

Despite the Court's instructions, Plaintiffs do not discuss their misapplication of *Revock* in their Response, other than to summarily state that it "was used to support a legal proposition that is well-grounded in law, and that any parenthetical summaries were not presented as direct quotes." (Doc. 319 at 8).  Plaintiffs had cited

16

*Revock* for the proposition of "holding attorneys liable for advising condominium association to deny emotional support animal in violation of FHA." (Doc. 296 at 30). However, nowhere in *Revock* is there mentioned holding an attorney liable. Though Plaintiffs did append a highlighted copy of *Revock* to their Response (Doc. 320-5), none of the highlighted portions mention holding an attorney liable.

### *Meyer v. Holley*, 537 U.S. 280, 285 (2003)

As with *Revock*, Plaintiffs do not explain their misapplication of *Meyer* in their Responses, other than to summarily state that it "was used to support a legal proposition that is well-grounded in law, and that any parenthetical summaries were not presented as direct quotes." (Doc. 319 at 8). Plaintiffs held out *Meyer* for the proposition that "the Supreme Court confirmed that agents including attorneys are liable under the FHA for discriminatory practices." (Doc. 296 at 30-31). To the contrary, while *Meyer* does discuss the vicarious liability of a corporation for the acts of its employees and that such liability does not extend to the corporation's owners or officers, it does not reference attorneys being agents of a corporation, nor being liable as agents for the acts of a corporation, nor a corporation being liable for advice given by its attorney. Plaintiffs have also failed to append a highlighted copy of *Meyer* to their Response as instructed by the Court.

17

### C.    PLAINTIFFS' THIRD RESPONSE (DOC. 321) AND DECLARATION OF FRANKLIN H. EATON, JR. (DOC. 321-1)

***Schaw v. Habitat for Humanity of Citrus Cnty., Inc.*, 938 F.3d 1259, 1265 (11th Cir. 2019).**

Despite the Court's instructions, Plaintiffs fail to explain their misapplication of *Schaw* for their stated proposition that "[t]he Eleventh Circuit in *Schaw* emphasized that constructive notice suffices and obviates the need for a formal request when the disability and need are apparent." (Doc. 315, 13-14 (citing Schaw, 938 F.3d at 1265)).  As the Court notes in its Order, "while the case addresses the reasonableness of an accommodation, it does not mention anything about how a request for an accommodation is made or whether a landlord is required to accommodate without a formal request." (Doc. 318 at 2).  While Plaintiffs' Response to Supplemental Show Cause Order (Doc. 321 at 4-5) and the Declaration of Franklin H. Eaton, Jr. (Doc. 321-1 at 2-3) address *Schaw*, these submissions fail to explain how *Schaw* or *Unger v. Majorca at Via Verde Homeowners Ass'n*, No. 21-13134 (11th Cir. Sep. 29, 2022) (cited because it supposedly "clarifies" *Schaw*) emphasizes Plaintiffs' position that constructive notice of a request for accommodation is sufficient.  In both *Schaw* and *Unger*, "constructive notice" of the request was not an issue because each plaintiff had made a formal request.  Indeed, the word "constructive" appears nowhere in either opinion.  Instead, "*Schaw*

18

*requested an accommodation*." 938 F.3d at 1262 (emphasis added). *Unger*, correctly cited as *Unger v. Majorca at Via Verde Homeowners Ass'n*, 2022 U.S. App. LEXIS 27304, 2022WL 4542348 (11th Cir. 2022)), discusses throughout that Unger had requested an accommodation, the issue being whether it was reasonable.

Plaintiffs' Response and Mr. Eaton's Declaration fail to explain Plaintiffs' misstatement of *Schaw*. Though Plaintiffs do append a copy of *Schaw* to the Declaration, there are no highlights showing where the case supports their stated proposition in compliance with the show cause orders. (Doc. 321-1, pp. 13-30).

### 24 C.F.R. § 100.202(c)

A clear reading of this regulation can lead to no other conclusion than it prohibits inquiring about the existence, nature or severity of a handicap of "an applicant for a dwelling, a person intending to reside in that dwelling after it is sold, rented, or made available, or any person associated with that person . . . ." 24 C.F.R. § 100.202(c). This clearly applies to a person who has a "future" status as an occupant relative to the prospective dwelling and prohibits inquiring about that person's disability status relative to his/her acquisition of the dwelling. Plaintiffs have failed to show how this regulation applies to one who is already a resident or that it applies to a request for reasonable accommodation to use the dwelling.

In support of their argument on the accuracy of their citation of this regulation, Plaintiffs cite the case of *Treece v. Perrier Condominium Owners Association, Inc.*,

19

No. 19-11723, 2021 WL 522649, at *7 (E.D. La. Feb. 12, 2021) (Doc. 321 at 6). Plaintiffs also cite *Treece* in support of Heimkes's argument that "notice [of a disability and the presence of a dog in a service-dog vest] equates to a request made". (Doc. 321 at 12). While *Treece* does exist, <u>*Plaintiffs' citation does not*</u>. LexisNexis returned no cases with the citation of 2021 WL 522649. Further, based on a name search, the case of *Treece v. Perrier Condo. Owners Ass'n*, 519 F. Supp. 3d 342 (E.D. La. Feb. 12, 2021) was found. This, however, is a disparate-impact case involving allegations of discriminatory treatment in the rental of condominiums to those with children, compared to those without children. It has nothing to do with handicapped persons under the FHA nor a request for a reasonable accommodation. Plaintiffs' citation of *Treece* is yet another a misstatement or misapplication of the law; and, in all likelihood another instance of the submission of an AI hallucinated citation.

Plaintiffs have further failed to append a copy of 24 C.F.R. § 100.202(c) to their Response, highlighting those portions which they contend support their arguments.

### *Quigley v. Winter*, 598 F.3d 938 (8th Cir. 2010)

Plaintiffs have failed to show how *Quigley* supports their argument that "attorneys [are] liable for advising discriminatory actions". (Doc. 315 at 8). Plaintiffs make the unfounded leap that attorneys are agents or employees of their clients, thereby making their clients vicariously liable for the legal advice given to

20

them.  Plaintiffs have cited no case which supports this wild theory.  Indeed, *Quigley* does not even address vicarious liability.  It is a discrimination case by a tenant, a natural person, against her landlord, also a natural person, arising out of sexual harassment by the landlord.  There is no analysis of agency theory, nor holding a corporation or principal liable for the landlord's actions, and certainly no mention of holding an attorney liable for the landlord's actions.  Plaintiffs' insinuation that if someone had had an agency relationship with the landlord, the landlord likely would have been liable for the agent's actions under FHA is simply speculation, unfounded, and is certainly not supported by the facts or holding in *Quigley*.  To accept Plaintiffs' reasoning would require a whole-cloth change of the facts and holding of *Quigley*, thereby making it a completely different case.  While Plaintiffs attempt to skirt around this Court's instructions by asserting general broad principles of vicarious liability, they have failed to show how *Quigley* stands for the proposition that attorneys are liable for advising discriminatory actions.  *See Cf. Lifestar Response of Ala., Inc. v. Admiral Ins. Co.*, 17 So. 3d 200 (Ala. 2009)(holding that an insurance company is not vicariously liable for the negligence or wantonness of an attorney it retained to represent its insured).

While Plaintiffs did append a copy of *Quigley* to their Response (Doc. 321-1, pp. 33-57), they did not highlight any portions which they contend support their stated proposition for the case.

21

***Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 80 (2d Cir. 2021)**

Plaintiffs fail to explain how *Francis* "held landlords liable for failing to address tenant-on-tenant harassment based on protected status. . . ." (Doc. 315 at 14-15). Plaintiffs state: "In *Francis*, the Second Circuit recognized that 24 C.F.R. § 100.7(a)(1)(iii) 'imposes liability on a landlord for failing to intervene in the conduct of a third party only where an obligation to do so exists under the FHA.'" (Doc. 321 at 7). However, 24 C.F.R. § 100.7(a)(1)(iii) is cited nowhere in *Francis*, nor is the quote, "imposes liability on a landlord for failing to intervene in the conduct of a third party only where an obligation to do so exists under the FHA", found anywhere in *Francis*. Plaintiffs have fabricated this regulation citation and quote from *Francis* in misstating the law from the case. Moreover, they have failed to explain to the Court their original assertion that *Francis* held a landlord liable for not stopping tenant-on-tenant harassment, when the case held just the opposite. Defendant FMRCOA would also point out that it is not the landlord of either Plaintiff here, and therefore would not even have any obligation to intervene as erroneously espoused by Plaintiffs.

While Plaintiffs did attempt to append a copy of *Francis* to their Response, the case is illegible and does not highlight the portions which they contend support their assertions as ordered by the Court. (Doc. 321-1, pp. 59-192).

***Ala. Code § 35-9A-501(a)(4)***

22

Plaintiffs concede that Ala. Code § 35-9A-501(a)(4) does not exist. Instead, they contend that the use of subsection (a)(4) was a typographical error and that they meant to cite to subsection (a)(3). Regardless, subsection (a)(3) does not support their proposition that the statute "prohibits retaliation against tenants for exercising rights under fair housing laws." (Doc. 315 at 9). First, the statute makes no mention of fair housing laws. Second, subsection (a)(3) prohibits a landlord from raising rent as a means of retaliation against a tenant who organizes or joins a tenant's union or other similar organization. *Id.* Plaintiffs' attempted analogy that joining a tenant's union is akin to exercising rights under fair housing law goes beyond analogizing and constitutes a misstatement and/or misrepresentation of the reach and purpose of this statute. Moreover, because FMRCOA is not the landlord of either Plaintiff, this statute is wholly inapplicable.

Plaintiffs have failed to append a highlighted copy of Ala. Code § 35-9A-501 to their Response in violation of this Court's Order.

**Plaintiffs' argument that *"B. Rule 11(c)(2) Safe Harbor is Mandatory – The Court Cannot Circumvent It"* contains misstatements of law. (Doc. 321 at 2-3).**

In Plaintiffs' Response to Supplemental Show Cause Order (Doc. 321), Plaintiffs argue that ". . . the Court cannot circumvent the safe harbor for party-initiated motions by simply 'adopting' Defendant's motion or recasting it as a sua sponte order." (Doc. 321 at 3). In support of this argument, Plaintiffs cite the following two cases:

*Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993)

Plaintiffs state: "See *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993) ('The plain language of Rule 11 mandates compliance with the safe harbor provision.')".  However, this parenthetical quote is nowhere to be found in *Didie.*  In fact, the phrase "safe harbor" is nowhere to be found in the case.  Plaintiffs further cite the *Didie* Court as "affirm[ing]" the "statutorily required opportunity to correct or withdraw" representations which are the basis of sanctions motions.  (Doc. 321 at 13).  However, the case was not about the application of the "safe harbor" under Rule 11, but rather whether or not a post-judgment hearing was required on a *pro se* motion for sanctions.  Plaintiffs have misstated or misapplied the holding in *Didie*.

*NRT Tex. LLC v. Wilbur*, 2024 WL 3322117, at *3 (N.D. Tex. June 27, 2024).

Plaintiffs state: "*NRT Tex. LLC v. Wilbur*, 2024 WL 3322117, at *3 (N.D. Tex. June 27, 2024) ('Sanctions motion denied where safe harbor omitted.')." *However, a LexisNexis search reveals that, while the case itself exists, no such case citation exists.*  The actual *Wilbur* case which exists is from the Southern District of Texas, not the Northern District as cited by Plaintiffs.  Further, there appears to be no opinion dated June 27, 2024.  In the only reported case between these parties where "safe harbor" is mentioned, the Court declined to impose Rule 11 sanctions, not because the 21-day safe harbor provision had been omitted, but because Rule 11 did not apply to the factual circumstances because the subject false statements by

24

the attorney had already been exposed several months before the motion was filed. *NRT Tex. LLC v. Wilbur*, 2024 U.S. Dist. LEXIS 10604, 2024 WL 233229 (S.D. Tex. Jan. 22, 2024).

Moreover, taken cumulatively, the fact that: (1) Plaintiffs here have neither withdrawn any prior submission that has been shown to contain misrepresentations of case holdings; (2) ceased their habitual practice of filing legal arguments containing AI hallucinations, including cases that do not even exist, even in response to this Court's show cause orders; and, (3) even now, after the Court informed Plaintiffs that its own independent research confirmed the concerns raised by Defendants, Plaintiffs still dismissively refer to the citation failures raised by the Court as "alleged citation errors," (Doc. 319 at 1), conclusively demonstrate that Plaintiffs' Rule 11 safe-harbor argument is simply disingenuous. Defendant FMRCOA was required to promptly respond to Plaintiffs' submissions, including their motions seeking recusal and/or mistrial (Docs. 244, 262, 292) and motions seeking to call defense counsel as witnesses (Docs. 279, 292), in expedited fashion during trial, and waiting 21-days to bring these issues to the Court's attention would have largely only served to facilitate this Court entering rulings without being apprised that Plaintiffs are making up cases. The practical reality is that FMRCOA was compelled to provide the Court with contemporaneous notice to mitigate the

prejudice caused by Plaintiffs' repeated efforts to mislead the Court by misrepresenting both the existence and substance of purported legal authority.

It should be noted that neither this Court's inherent powers, S.D. Ala. GenLR 83.3(i), nor 28 U.S.C.S. § 1927, impose a 21-day "safe-harbor" requirement. Indeed, District Courts have the inherent authority to impose sanctions outside of Rule 11 as well as to impose Rule 11 sanctions *sua sponte* where circumstances warrant. *O'Neal v. Allstate Indem. Ins. Co.*, 2021 U.S. App. LEXIS 31265, 2021 WL 4852222 (11th Cir. 2021). *See also Mavy v. Comm'r. of Social Security Admin.*, Case 2:25-cv-00689-KML-ASB, doc. 18 (D. Ariz. Aug. 14, 2025) (recognizing that a U.S. Magistrate Judge has the inherent authority to sanction under Rule 11 where no motion requesting sanctions has been filed).

**Plaintiffs' argument that "*C. No Prejudice, No Substantive Reliance, and Prompt Remediation*" contains a misstatement of law. (Doc. 321 at 3-4).**

In Plaintiffs' Response to Supplemental Show Cause Order (Doc. 321), Plaintiffs argue that "Plaintiffs have circulated corrected pinpoint references and produced the underlying authorities. This prompt remediation satisfies Rule 11's spirit and precludes any finding of prejudice. Cf. *Li Ming Yan v. Hunan Gourmet, Inc.*, 2023 WL 3270088, at *4 (S.D.N.Y. May 5, 2023)." (Doc. 321 at 3-4).

*There is no such reported case existing from any U.S. District Court in the state of New York.* The only found case by that name is from the Northern District of Florida, *Li Ming Yan v. Hunan Gourmet, Inc.*, 2019 U.S. Dist. LEXIS 223531,

26

2019 WL 734174 (N.D. Fla. Nov. 22, 2019), and it has nothing to do with prompt remediation satisfying Rule 11, nor does it set forth contrary facts or holdings with which to compare the instant facts before this Court in order to reach such conclusion. *Li Ming Yan* is a Fair Labor Standards Act case wherein it is noted that a previous order of the court had denied defendant's motion for an attorney's fee under Rule 11. That is the only mention of Rule 11.

Moreover, Plaintiffs have made no prompt remediation in response to any notice, either from Defendant or from the Court, of their numerous misrepresentations of the law. Instead, as this very case serves to reaffirm, Plaintiffs have elected, at every turn, to continue their unrepentant barrage of arguments that only provide erroneous citations of law.

### *Goldstine v. FedEx Freight Inc.*, No. 2:18-cv-01164, 2019 WL 5309628, at *6 (W.D. Wash. Oct. 24, 2019) (Doc. 321 at 9).

Plaintiffs cite *Goldstine* for the proposition that: "The FHA, ADA, and HUD/DOJ guidance all recognize that when a disability and the need for a service animal are obvious or otherwise known, the housing provider may not require additional documentation or proof of training." (Doc. 321 at 9). However, the citation for *Goldstine* given by Plaintiffs is for a different case from a different court, *Williams v. Potomac Family Dining Grp. Operating Co., LLC*, 2019 U.S. Dist. LEXIS 181604, **2019 WL 5309628** (D. Md. Oct. 21, 2019). When a name/party search for *Goldstine* is conducted in LexisNexis, a case from the Western District of

27

Washington, opinion date October 24, 2019, is found, but the cite is 2019 U.S. Dist. LEXIS 185258, **2019 WL 5455726**.  Therefore, Plaintiffs have, yet again, provided an erroneous or made-up citation for a supporting case.  Regardless, *Goldstine* is an employment discrimination case which does not address whether a housing provider may require additional documentation or proof of training.  Indeed in that case, the employer did not dispute that the employee self-identified as being disabled, thought him to be disabled, and did not ask for additional documentation.  Therefore, *Goldstine* is inapposite to the instant cases.

### *Commission on Human Rights and Opportunities ex rel. Pizzoferrato v. Mansions, LLC*, No. AC 45321, 2025 WL 1000000, at \*5 (Conn. App. Mar. 4, 2025) (Doc. 321 at 11).

Yet again, Plaintiffs have provided an incorrect citation for a case.  The citation identified here by Plaintiffs for *Pizzoferrato* is actually for the case of *Diamonte v. Henderson*, 2025 U.S. Dist. LEXIS 64338, **2025 WL 1000000** (D.N.J. Apr. 3, 2025), a completely different case from a completely different court. *Pizzoferrato* is not even a U.S. District Court or U.S. Appeals Court case; rather, it is a state appellate case from Connecticut, and the correct cite is *Comm'n on Hum. Rights & Opportunities ex rel. Pizzoferrato v. Mansions, LLC*, 231 Conn. App. 121, 332 A.3d 933, 2025 Conn.App. LEXIS 58 (Mar. 4, 2025). Further, it does not stand for the proposition for which Plaintiffs contend:  that once a service animal is identified as being required because of a disability and the tasks it has been trained

28

to perform are identified, then "[n]o further inquiry into the severity of the disability, the need for the animal, or the animal's training is permitted." (Doc. 321 at 10). Instead, the case addressed whether or not two emotional support dogs, instead of only one, were necessary, as opposed to merely preferable or desirable, for the plaintiff to have equal use and enjoyment of her dwelling.  In addition to mis-citing the case, Plaintiffs have misstated or misapplied the tenet of *Pizzoferrato*.

### ***Higgins v. 120 Riverside Boulevard at Trump Place Condo.*, 2022 WL 196802, at \*63 (S.D.N.Y. Aug. 31, 2022) (Doc. 321-1 at 4).***

In his analysis of *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67 (2d Cir. 2021), Plaintiffs' counsel cites *Higgins* for the application of the proposition that "[t]he Second Circuit explains that 24 C.F.R. § 100.7(a)(1)(iii) imposes liability on a landlord or association for failing to intervene in third party discrimination only where a legal duty to do so exists, such as through a declaration or contract." (Doc. 321-1 at 4).  Counsel further asserts that "*Higgins* further discusses the scope of association liability and the legal basis for requiring intervention."

However, according to a LexisNexis search, the citation for *Higgins* given by Plaintiffs does not exist for any case.  When a name/party search is conducted, the case of *Higgins v. 120 Riverside Blvd. at Trump Place Condo.*, 2022 U.S. Dist. LEXIS 157466, 2022 WL 3920044 (S.D.N.Y. Aug. 31, 2022) appears.  Presumably, this is the case to which counsel was referring.  However, contrary to his assertion, the case does not address, nor impose liability on, a landlord or association for failing

to intervene in a third-party discrimination where a legal duty to do so arises from a contract or declaration. Plaintiffs' Counsel quotes from the case the New York state law elements of a negligent infliction of emotional distress claim. But this is completely immaterial and irrelevant to a duty to intervene in a third-party discrimination setting, and indeed the *Higgins* court did not even address such a duty. Rather, the analysis focused on whether a negligent infliction claim had been properly pleaded in the face of a Motion to Dismiss. Further, the underlying basis for the negligent infliction claim was the Defendant condominium's "negligent act and failure to act which exposed [plaintiff] to repeated, sudden, and protracted periods of noise, vibrations and reverberations that shook the walls, ceiling, furniture and fixtures in [the Unit], as well as mold, dust and chemical odors." *Higgins*, 2022 U.S. Dist. LEXIS 157466, *99. The allegations had nothing to do with, and the case did not even address, whether the defendant condominium had a duty to intervene in discriminatory acts by third parties. Once again, Plaintiffs' Counsel, in his Declaration, signed "under penalty of perjury", has mis-cited, misstated, and misapplied case law.

## CONCLUSION

It is incredulous that in their Responses to two show cause orders regarding their submission of multiple case misstatements, misapplications, and AI-hallucinated cases and cites, Plaintiffs continue to advance the very same tactics. As

30

noted above, Defendant has pointed out several additional misstatements, misapplications, and AI-hallucinated case cites.  Moreover, Plaintiffs have failed to adequately explain their prior misstatements per the show cause orders.

As Judge Manasco in the Northern District of Alabama recently aptly characterized "five problematic citations across [just] two motions," counsel's "repeated decisions to parrot citations generated by AI without verifying even one of them reflect complete and utter disregard for his professional duty of candor. This is recklessness in the extreme, and it is tantamount to bad faith." *Johnson v. Dunn*, Case 2:21-cv-01701, doc. 204 at 4, 38 (N.D. Ala. July, 23, 2005) (previously submitted here at Doc. 306-1, *see* Page ID#10355). As FMRCOA has repeatedly been forced to undertake to identify and point out to the Court, Plaintiffs have submitted significantly more than five problematic cites, invalidating significantly more than two submissions. *E.g.,* (Doc. 247 at 2-5; Doc. 264 at ¶¶ 3-7; Doc. 301 at ¶¶ 13-14, 18, 21, 22, 26-30; Doc. 304; Doc. 317; and now Doc. 319; Doc. 320; Doc. 321; and Doc. 321-1).  Plaintiffs' repeated submission of problematic cites, across multiple filings, extending over several months, is significantly more "reckless in the extreme"; especially given that: (1) Defendant expressly put Plaintiffs on notice that "the cases [Plaintiffs] cite do not even reflect the holdings they represent. Indeed, no case cited by Plaintiffs says what Plaintiffs represent it says," _over two-months ago_, (Doc. 264 at ¶ 5); and, (2) although Plaintiffs' counsel's Declaration

does not provide the information the Court required, it appears that Plaintiffs relied, at least in part, on an AI platform, "Casetext," with widely publicized and known hallucination and other inaccuracy rates – _generating accurate cites less than 50% of the time_, (Exs. 1, 2; _see_ Docs. 319-1 – 319-8). In other words, it seems impossible that Plaintiffs' "repeated decisions to parrot citations generated by [an] AI [platform that Stanford researchers proved generated incorrect citations more than half of the time] without verifying even one of them," could  "reflect [anything other than] complete and utter disregard for his professional duty of candor" and be deemed "recklessness in the extreme, …tantamount to bad faith." _Johnson v. Dunn_, Case 2:21-cv-01701, doc. 204 at 4, 38 (N.D. Ala. July, 23, 2005); (Doc 306-1, Page ID#: 10355); _see_ Exs. 1, 2.

Respectfully submitted,

| | |
|---|---|
| /s/ _D. Greg Dunagan_ | /s/ _C. Andrew Harrell, Jr._ (with |
| D. GREG DUNAGAN | permission) |
| (DUNAD5372) | C. ANDREW HARRELL, JR. |
| CARR ALLISON | CLARK, MAY, PRICE, |
| 6251 Monroe Street, Suite 200 | LAWLEY, DUNCAN & PAUL, LLC |
| Daphne, AL 36526 | P. O. Box 4850 |
| Telephone:  (251) 626-9340 | Gulf Shores, AL 36547 |
| gdunagan@carrallison.com | (251) 968-1555 |
| _Attorney for Defendant_ | _Attorney for Defendant,_ |
| _Fairhope Motorcoach Resort_ | _Fairhope Motorcoach Resort_ |
| _Condominium Owners Association,_ | _Condominium Owners Association,_ |
| _Inc_. | _Inc._ |

## CERTIFICATE OF SERVICE

I do hereby certify that on this 15th day of August 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a copy of such filing to the following attorneys of record:

Franklin H. Eaton, Jr., Esq.
THE EATON LAW FIRM, LLC
3145 Gulf Shores Pkwy
Gulf Shores, AL 36547
(251) 317-1630
franklineatonjr@mac.com
*Attorney for Plaintiffs*

H. Cannon Lawley
CLARK, MAY, PRICE,
LAWLEY, DUNCAN & PAUL, LLC
3070 Green Valley Road
Birmingham, AL 35243
Telephone: (205) 267-6601
cannon@clarkmayprice.com
*Co-Counsel for Fairhope Motorcoach*
*Resort Condominium Owners Association, Inc.*

/s/ *D. Greg Dunagan*
OF COUNSEL

33

## APPENDIX A

**Document 264 at ¶ 3:**

Initially, Plaintiffs cite *United States v. Berger*, 375 F.3d 1223 (11th Cir. 2004), *Arizona v. Washington*, 434 U.S. 497 (1978), *Quercia v. United States*, 289 U.S. 466, 469, (1933), and *United States v. Hickman*, 592 F.2d 931, 932 (6th Cir. 1979), representing that these cases support the granting of a mistrial in a bench trial, based upon purported judicial actions during the course of a bench trial. [Doc.262, at 3, § II(B); *see id.*, at 8 "Berger, 375 F.3d at 1227 (mistrial in bench trial for judicial bias); Hickman, 592 F.2d at 934 (same)")]. Not one of those cases, however, addresses that issue:

*United States v. Berger* did not arise from a bench trial. Instead, a criminal defendant "argue[d] that the district judge was biased against him because she refused to appoint him counsel at the Rule 33 evidentiary hearing." 375 F. 3d at 1227. Indeed, the only relevant aspect of the Berger holding directly illustrates the frivolity of Plaintiffs' motion: "'Adverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt.'" *Id.* (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001)). Accordingly, the Court held the "recusal argument has no merit under § 455(a) because [defendant's] only evidence of bias is the district court's adverse ruling denying him counsel." *Id.* at 1227.

Likewise, *Arizona v. Washington* involved neither a bench trial nor a mistrial related to alleged judicial bias. Instead, "the trial judge granted the prosecutor's motion for a mistrial predicated on improper and prejudicial comment during defense counsel's opening statement"; and the issue before the Supreme Court was whether "the Double Jeopardy Clause protected the defendant from another trial." 434 U.S. at 498.

Next, *Quercia v. United States* did not address a mistrial, but the reversal of a criminal conviction in a jury trial, and was based on the potential prejudicial impact of a federal judge's commentary on the evidence in *jury charges*. 289 U.S. at 470.

Finaly, Plaintiffs' repeated representation that *United States v. Hickman* approved of a "mistrial in bench trial due to judicial bias" [doc. 262 at

3, 8], is also without any justification. Indeed, *Hickman* neither addresses a bench trial, nor a mistrial; but a reversal of a jury verdict in a criminal case, because the court's interjection into the examination of witnesses would have had a prejudicial impact *on the jury*. 592 at 932-36.

**Document 264 at ¶ 4:**

Similarly, Plaintiffs also mis-portray the holdings in *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001), *United States v. Holland*, 519 F.3d 909, 916 (9th Cir. 2008), *Caperton v. A. T. Massey Coal Co.*, 556 U.S. 868, 884 (2009), and *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986), as being applicable here:

Plaintiffs represent that *United States v. Microsoft Corp.* holds that "recusal required when judicial comments suggest bias." [Doc. 262 at 3]. *Microsoft*, however, had nothing to do with a judge's rulings or comments during the course of a bench trial – or otherwise even in the court room. Instead, the Court concluded "the trial judge engaged in impermissible *ex parte* contacts by holding secret interviews with members of the media and made numerous offensive comments about Microsoft officials in public statements outside of the courtroom, giving rise to an appearance of partiality." 253 F.3d at 46. To the best of FMRCOA's knowledge, the media has no interest in this case and, in any event, there is no suggestion that the Court has held any secret interviews with a member of the media.

Plaintiffs' reliance on *United States v. Holland*, for the contention that judicial rulings and a judge's comments regarding the course of proceedings, during a bench trial, requires recusal, fairs no better. Most glaringly, the Court held that the district court did not err in failing to recuse from a criminal *jury trial*. 519 F.3d at 916. Moreover, the issue had nothing to do with the judge's "comments suggest[ing] prejudice," as Plaintiffs misrepresent [doc. 262 at 6], but the fact that the judge "did not recuse himself *sua sponte* after receiving [the criminal defendant's] threatening phone message." *Id.*

Again wholly inapt to what Plaintiffs erroneously alleged occurred here, *Caperton v. A. T. Massey Coal Co.* addressed a circumstance of extra-judicial bias where a party had "contributed some $3 million to

unseat the incumbent and replace him with [the trial judge]" – an amount that "eclipsed the total amount spent by all other [of the judge's] supporters and exceeded by 300% the amount spent by [the judge's own] campaign committee." 556 U.S. at 884.

*Aetna Life Ins. Co. v. Lavoie* is equally without any probative value. The issue below was the Alabama Supreme Court's decision to recognize a bad-faith cause of action against an insurance carrier, and the issue presented to the United States Supreme Court arose from the fact one of the Alabama Supreme Court justices did not recuse himself from the 5-4 decision, even though he personally had two (2) lawsuits pending against insurers, in which he had alleged bad-faith…475 U.S. at 828.