## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| MARK HEIMKES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIV. ACT. NO. 1:22-cv-448-TFM-N |
| | ) |
| FAIRHOPE MOTORCOACH RESORT | ) |
| CONDOMINIUM OWNERS | ) |
| ASSOCIATION, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| SHEARLDINE MARIE ALLFREY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIV. ACT. NO. 1:22-cv-496-TFM-N |
| | ) |
| FAIRHOPE MOTORCOACH RESORT | ) |
| CONDOMINIUM OWNERS | ) |
| ASSOCIATION, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION & ORDER

Pending before the Court are Plaintiffs' *Motion to Recuse the Honorable Terry F. Moorer Pursuant to 28 U.S.C. § 455(a) and § 144* (Doc. 244, filed 5/26/25), *Motion for Recusal or, in the Alternative, Mistrial* (Doc. 262, filed 6/4/25), and *Motion to Recuse* (Doc. 326, filed 8/20/25). These motions were filed in the lead case (Civ. Act. No. 1:22-cv-448) after the two cases were formally consolidated. The first motion was filed the day before the non-jury trial was scheduled to start, and the Court first orally denied it after hearing the Plaintiffs on the motion before trial began (Doc. 249) and then confirmed the ruling in a short order along with an indication that a more detailed written opinion would follow (Doc. 251). This is that written opinion.

Additionally, the Court notes that related to the motions to recuse are *Defendant's Response to Plaintiffs' Motion for Recusal or, in the Alternative, Mistrial and Defendant's Renewed Motion for Sanctions* (Doc. 264, filed 6/6/25) and *Plaintiffs [sic] Motion for Leave to File Response to Defendants [sic] Motion for Sanctions Out of Time* (Doc. 302, filed 7/17/25). The Court has also reviewed these pleadings when addressing the recusal motions.

## I.    PROCEDURAL BACKGROUND

The parties in these cases have a lengthy litigation history much of which the Court has previously addressed in prior written opinions. *See* Docs. 35, 172, 196; *see also* Docs. 30, 108, 131 in Civ. Act. No. 1:22-cv-196 (prior to consolidation of these two cases at the request of the parties). However, for the purposes of this opinion, the Court will highlight certain matters here.

For the purposes of this opinion and this litigation history, the Court notes there are multiple cases involving these parties and their counsel. First, there was *Achee, et al. v. Allfrey, et al.*, Civ. Act. No. 1:22-cv-334-JB (S.D. Ala.) (before Chief Judge Jeffrey Beaverstock and hereinafter the "*Achee*" case). The case was removed from Baldwin County Circuit Court by Defendant Kris Allfrey alleging diversity jurisdiction. *Achee*, Doc. 1. The Court granted the motions to remand finding that the case had been improperly removed due to a lack of diversity of citizenship. *Id.*, Doc. 28 (citing oral arguments and findings during hearing on October 26, 2022).

The next case filed was *Heimkes v. Fairhope Motorcoach Resort Condominium Owners Association, Inc.*, Civ. Act. No. 1:22-cv-448-TFM (S.D. Ala.) (before the undersigned and hereinafter the "*Heimkes*" case). This case was initiated with a complaint on November 9, 2022, alleging violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.* ("FHA") in three separate counts. *Heimkes*, Doc. 1. Specifically, in Count I, Heimkes alleges violations of the FHA in that Defendant denied

a reasonable accommodation under the FHA and discriminated against him in the terms, conditions, and privileges of rental of a dwelling or in the provision of services or facilities in connection with the dwelling because of his disability. Specifically, the refusal to permit his service dog in the common areas and delaying/denying the decision for his reasonable accommodation request. In Count II, Heimkes alleges violation of the FHA through interference, coercion, or intimidation under the FHA in that they prevented him from the exercise or enjoyment of the facilities and used litigation and fines to coerce, intimidate, threaten, or interfere with his use of the facilities. In Count III, Heimkes alleges a violation of the ADA through discrimination by their failure to make reasonable modifications to policies, practices, and procedures to permit Plaintiff as a disabled person from full use of the facility by denying him the ability to bring his service dog into the common areas. The complaint was accompanied by a motion for temporary restraining order ("TRO") and preliminary injunction. *Id.*, Doc. 2. The Court set an emergency hearing on the TRO request and Defendant filed its response in opposition. *See id.*, Docs. 4, 6, 7. The Court denied the TRO, but set a more comprehensive briefing schedule and a further evidentiary hearing on the motion for preliminary injunction. *See id.* Docs. 8, 9, 11. After comprehensive briefing and a lengthy hearing (*see* Docs. 12—30), the Court ultimately denied the motion for preliminary injunction in a detailed written opinion and order. *See id.,* Doc. 35. Despite the ability to appeal the denial of the preliminary injunction under 28 U.S.C. § 1292(a)(1), Heimkes did not appeal the Court's ruling to the Eleventh Circuit. However, he did request a stay of proceedings in this Court pending a ruling from the Baldwin County Circuit Court on a related state court matter (specifically a different state court case entitled *Heimkes v. Fairhope Motorcoach Resort Condominium Owners Association, Inc.*, 05-CV-2022-900261.00). *See id.,* Doc. 42. The Court denied the request and clarified Plaintiff's misunderstanding of this Court's

prior order. *See id.,* Doc. 43. A preliminary scheduling order was entered directing the parties to meet and confer as required under Fed. R. Civ. P. 26(f). *See id.*, Docs. 36, 38. At a scheduling conference on April 26, 2023, the issue of whether a proper jury demand was raised after which the Magistrate Judge determined that it had not been. *See id.,* Docs. 51, 52. This case was consolidated with the other two related cases (Civ. Act. No. 1:22-cv-496 and Civ. Act. No. 1:22-cv-499) for the limited purposes of discovery only. *See id.,* Doc. 52 (Scheduling Order).

The third case filed was *Shearldine Allfrey v. Fairhope Motorcoach Resort Condominium Owners Association, Inc.*, Civ. Act. No. 1:22-cv-496-TFM (S.D. Ala.) (hereinafter the "*Allfrey*" case). This case was initiated with a complaint on December 16, 2022, also alleging violations of the ADA and FHA in two counts. *Allfrey*, Doc. 1. Specifically in Count I, Allfrey alleged violation of the ADA in that Defendant discriminated against Allfrey by the failure to make reasonable modifications to policies, practices, or procedures to accommodate Allfrey's disability in permitting her to bring her service dog into the common areas. In Count II, Allfrey alleges Defendants violated the FHA by discriminating against Plaintiff in the terms, conditions, and privileges of rental of a dwelling or in the services/facilities in connection with the dwelling because of her disability by refusing to make reasonable accommodations in the rules, policies, practices, or services to afford her the equal opportunity to use and enjoy the dwelling as a disabled person by refusing to permit her service dog in the common areas. Plaintiff further claims disparate treatment along with harassment, retaliation, and intimidation. *Id*. The Complaint was also accompanied by a motion for a TRO and preliminary injunction. *Allfrey*., Doc. 2. The case was originally assigned to Chief Judge Beaverstock who denied the TRO and set a hearing on the preliminary injunction on January 6, 2025. But, after an independent review, Chief Judge Beaverstock determined the issues raised were related to those in the *Heimkes* case and transferred

the case to the undersigned. The Court held an evidentiary hearing on the TRO and preliminary injunction request on January 6, 2023. After receiving post-hearing briefings (*see id.*, Docs. 15, 16), the Court ultimately denied the motion for preliminary injunction in a detailed written opinion and order. *See id.,* Doc. 30. Despite the ability to appeal the denial of the preliminary injunction under 28 U.S.C. § 1292(a)(1), Allfrey did not appeal the Court's ruling to the Eleventh Circuit. A preliminary scheduling order was entered directing the parties to meet and confer as required under Fed. R. Civ. P. 26(f). *See id.*, Docs. 20, 25. At a scheduling conference on April 26, 2023, the issue of whether a proper jury demand was raised after which the Magistrate Judge determined that it had not been. *See id.,* Docs. 32, 34. This case was consolidated with the other two related cases (*Heimkes* and Civ. Act. No. 1:22-cv-499) for the limited purposes of discovery only. *See id.,* Doc. 34 (Scheduling Order).

The fourth case filed was *Kris Allfrey v. Fairhope Motorcoach Resort Condominium Owners Association, Inc.*, *et al*. Civ. Act. No. 1:22-cv-499-TFM (S.D. Ala.) (hereinafter the "*Mr. Allfrey*" case). This case was initiated with a complaint on December 19, 2022, asserting violations of the FHA (Count I discrimination and Count II retaliation) and state law claims of defamation, defamation *per se*, intentional infliction of emotional distress, and invasion of privacy-false light. *Allfrey*, Doc. 1. Specifically, under the FHA, the allegation states Defendants "did unlawfully coerce, intimidate, threaten, interfere, and discriminate against plaintiff in the exercise and enjoyment of the rental of Units in FMR for having aided and encouraging Mark Heimkes, a disabled person in the exercise and enjoyment of his rights…" *Id*. at 23 (Count I). Mr. Allfrey also alleges "Defendants actually intended or were improperly motivated in their decision to discriminate against plaintiff and did unlawfully coerce, intimidate, threaten, interfered, and retaliated against plaintiff in the exercise and enjoyment of the rental of Units in FMR for having

aided and encouraging Mark Heimkes, a disabled person in the exercise and enjoyment of his rights…" *Id*. at 24 (Count II).   Both federal counts only allege that the conduct related to Mr. Allfrey's support of Mr. Heimkes and at no point does Mr. Allfrey allege that he himself is (or was) disabled and had the need for a service dog.   Rather, he merely states that he "has an association or relationship with Mark Heimkes, a [disabled person]" (*id*. at 2) and that the Defendants essentially punished him for his support of Mr. Heimkes and because he pointed out some insurance issues related to the Fairhope Motorcoach Resort Condominium Owners Association. *See generally id*.   Mr. Allfrey makes no ADA claim about himself – either directly or indirectly. *Id*.   The Defendants in this case filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Mr. Allfrey*, Doc. 5.   In his response to the motion to dismiss (*id*., Doc. 7), for Count I, Mr. Allfrey argues "Plaintiff states a viable claim, particularly in that he alleges Defendants are taking discriminatory actions that interfere with his use and enjoyment of his dwelling arising from his supporting and efforts in assisting Mark Heimkes, a handicapped person, obtain a reasonable accommodation." *Id*., Doc. 7 at 6.   He reiterates it again when he states: "Plaintiff has pled Defendants took adverse action against him because he aided Mr. Heimkes, a handicapped person, in his attempts to obtain a reasonable accommodation." *Id*. at 7.   For Count II, Mr. Allfrey argues Defendants retaliated against him for various reasons but in sum "[t]he Complaint alleges that Defendants took adverse action that is causally connected to the protected activities of aiding Mr. Heimkes with his request for a reasonable accommodation. More specifically, Plaintiff alleges Defendants have specifically targeted Plaintiff by blaiming [sic] him for the D & O Insurance Company denying to cover the Heimkes legal fees because of his support of Mr. Heimkes and for pointing out the Directors [sic] discrimination against Mr. Heimkes for refusing to grant him a reasonable accommodation." *Id*. at 9.   The Magistrate Judge set a status conference in this case to

occur concurrent with the scheduling conferences for the *Heimkes* and *Allfrey* cases on April 26, 2023.

This case was consolidated with the other two related cases (*Heimkes* and *Allfrey*) for the limited purposes of discovery only. *See id.,* Doc. 15 (Scheduling Order). The Magistrate Judge further noted that a jury demand was made in the *Mr. Allfrey* case while the other two cases did not contain a jury demand. Though the motion to dismiss was pending, the discovery consolidation was appropriate because of common issues, common parties, and common counsel and all parties agreed that discovery should be consolidated, but the Magistrate Judge later clarified that though consolidated, no discovery would occur yet in the *Mr. Allfrey* case until the Court ruled on the motion to dismiss. *Mr. Allfrey*, Doc. 16. The Court later granted the motion to dismiss as to the two federal claims and declined supplemental jurisdiction over the state law claims. *Id.*, Doc. 17. Therefore, it dismissed the federal claims with prejudice, dismissed the state law claims without prejudice, and entered final judgment pursuant to Fed. R. Civ. P. 58. *Id*., Docs. 17, 18. Mr. Allfrey filed a Rule 59 Motion to Alter or Amend Judgment which the Court ultimately denied after briefing. *Id*., Docs. 19, 21, 22. Mr. Allfrey did not appeal to the Eleventh Circuit.

This left only the *Heimkes* and *Allfrey* cases to proceed, and Mr. Allfrey was no longer a party but instead began to act as a paralegal for Plaintiffs' counsel (Franklin Eaton) – which the Court will discuss further later in this opinion. Moreover, the Court also must note that Mr. Eaton repeatedly obtained additional counsel to represent both Heimkes and Allfrey, but ultimately all those attorneys sought to withdraw due to conflicts that arose between them and Eaton/Plaintiffs over strategy, motions filed, deadlines, communication, and assessed value of the case. *Heimkes*, Docs. 73, 74, 76, 168, 174; *Allfrey*, Docs. 37, 106, 110, 112.

On May 31, 2024, Mr. Eaton filed a motion to stay both cases arguing that he could not

proceed because of health issues and because the other counsel withdrew over his objections.  Doc. 82.  The Magistrate Judge denied the motion.  Doc. 86.

Later, on November 6, 2024, Plaintiffs filed a motion for jury trial or alternative motion to amend the complaint to add a jury demand.  Doc. 136.  After briefing and a hearing, the Court denied the request as Plaintiffs had been long notified of the failure to make a jury demand and the method of correcting the deficiency.  *See* Doc. 172.  An extensive history of the case surrounding the jury/non-jury issue was laid out in that opinion which the Court need not rehash here.

On May 16, 2025, Plaintiffs filed a motion to bifurcate the trial for liability and damages. Doc. 221.  The Court initially held the motion in abeyance to be revisited at the end of the first week of trial but did instruct the parties to structure their trial presentations to focus on liability first.  *See* Doc. 230 at 4-5.  On May 30, 2025, after the liability presentation had already exceeded Plaintiffs' counsel's 3-day estimate for liability, the Court entered an order formally bifurcating the trial.  *See* Doc. 254.

Plaintiffs also filed a Motion to Disclose Ex Parte Communications.  Doc. 223.  Defendant did not file a response.  In their motion, Plaintiffs "request[ed] that the Court disclose any ex parte communications, including a voicemail received by [Plaintiffs'] counsel from the Court's clerk on May 12, 2025, to ensure transparency and fairness in these proceedings."  The voicemail at issue dealt with Plaintiffs' reliance on the *Chevron* doctrine and merely recommended that Plaintiffs' counsel review the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).  The Court addressed the motion at length during the pretrial conference on May 16, 2025, and summarized its oral ruling in the order on the pretrial hearing.  *See* Doc. 230 at 6-7.  The Court denied the motion as moot, as there were no additional *ex parte* communications for the Court to disclose.  *Id.* at 6.  The Court also noted that the communication was done at the direction

of the undersigned, and that it was a part of a necessary inquiry by the Court to ensure that Plaintiffs' counsel was complying with his Rule 11 obligations. *Id.* Additionally, the same information in the voicemail was relayed to all parties in the Order issued later the same day when there was no further action by Plaintiffs' counsel to correct his failure to address the Supreme Court case and the errors in his initial motion. *Id.*

Plaintiff also filed two motions for recusal. *See* Docs. 244, 262. Defendant filed responses to both, which included motions for sanctions. *See* Docs. 247, 264. The Defendant's motion for sanctions was prompted by Plaintiffs' filing of twelve motions on the eve of trial, "all of which seek to attack prior orders of the Court or long-passed deadlines, or seek to file new matters after the Court's filing deadlines have passed, and finally to attack the integrity of the Court in their Motion to Recuse." Doc. 247 at 4. The Court addressed the motion in tandem with Plaintiffs' motion for recusal and orally denied the first motion for recusal and the motion for sanctions followed by an administrative order indicating that this more detailed written opinion would follow. *See* Docs. 249, 251.

During trial, on June 3, 2025, Plaintiffs made an oral motion for mistrial (Doc. 260) which the Court denied (Doc. 261). Plaintiff then filed the second motion for recusal or alternative motion for mistrial (Doc. 262) to which Defendant filed its response and renewed motion for sanctions (Doc. 264). Those technically remain pending, though the Court obviously implicitly denied the request for recusal given that the Court proceeded with the remainder of the bench trial.

On July 17, 2025, Plaintiffs then filed a motion for leave to file a response out of time to the Defendant's response and motion for sanctions. *See* Doc. 302. He further attached the opposition to the request for sanctions. *See* Doc. 302-1. The opposition furthers his recusal arguments and addresses why the requests were not frivolous or harassing. *Id*. at 2-5, 9-12.

On August 20, 2025, Plaintiff filed a third recusal motion after the close of business on the day before an in-person show cause hearing was scheduled. Doc. 326. The Court addressed the third recusal motion at the show-cause hearing. Plaintiffs did not make additional arguments in support of their motion, and the Court heard argument in opposition to the motion from Defendant since Defendant did not have time to prepare a written response. The Court orally denied the third motion for recusal and stated a detailed written opinion that addressed all of the recusal motions would follow.

## II.    Law, Discussion, and Analysis

### A.    Law Generally

"Two statutes govern recusal — 28 U.S.C. §§ 144 and 455." *United States v. Berger*, 375 F.3d 1223, 1227 (11th Cir. 2004) (citing *Hamm v. Members of Bd. of Regents of State of Fla.*, 708 F.2d 647, 651 (11th Cir. 1983)). 28 U.S.C. § 144 states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term [session] at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. Next, 28 U.S.C. § 455 in relevant parts state as follows:

> (a) Any justice, judge, or magistrate [magistrate judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>     (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]

28 U.S.C. § 455(a), (b)(1).

Looking first at 28 U.S.C. § 144, it states "whenever a party . . . makes and files a timely .
. . affidavit . . ." and that it further states "the affidavit . . . shall be filed not less than ten days
before the beginning of the term . . . or good cause shall be shown for failure to file it within such
time." Moreover, "[a] motion for recusal based upon the appearance of partiality must be timely
made when the facts upon which it relies are known. The untimeliness of such a motion is itself a
basis upon which to deny it." *United States v. Siegelman*, 640 F.3d 1159, 1188 (11th Cir. 2011)
(citing *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1472 (11th Cir. 1986)). "The purpose of the rule
is to 'conserve judicial resources and prevent a litigant from waiting until an adverse decision has
been handed down before moving to disqualify the judge.'" *Id.* (quoting *Summers v. Singletary*,
119 F.3d 917, 921 (11th Cir. 1997)).

"[T]he standard of review for a § 455(a) motion 'is whether an objective, disinterested, lay
observer fully informed of the facts underlying the grounds on which recusal was sought would
entertain a significant doubt about the judge's impartiality[.]". *United States v. Patti*, 337 F.3d
1317, 1321 (11th Cir. 2003) (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir.
1988)). While doubts must be resolved in favor of recusal, *United States v. Kelly*, 888 F.2d 732,
745 (11th Cir. 1989), "a judge should not recuse [himself] based upon unsupported and tenuous
allegations," *Yeyille v. Miami Dade Cnty. Pub. Sch.*, 654 F. App'x 394, 396 (11th Cir. 2016)
(quoting *Giles v. Garwood*, 853 F.2d 876, 878 (11th Cir. 1988)).

**B.    Motions to Recuse**

As the reason for the first motion to recuse, Plaintiffs state:

From December 2022 to May 2025, Judge Moorer's conduct—including
misapplication of ADA and FHA standards for service dogs, improper ex parte
communications, threats to compel pro se representation despite plaintiffs'

disabilities, tolerance of counsel's knowing misrepresentations, biased evidentiary rulings, failure to accommodate counsel Franklin H. Eaton, Jr.'s health condition, denial of stays and continuances, deprivation of plaintiffs' jury trial right, allowance of FMRCOA's false and misleading statements in its Pretrial Brief, and erroneous orders compelling production beyond ADA/FHA limits—has prejudiced plaintiffs, rendering them unprepared for trial and undermining a fair adjudication.

*Heimkes*, Doc. 244 at 1-2.  The Court will take the allegations in groupings designated "adverse rulings", "communications", "co-counsel withdrawals", "denial of continuances", and "failure to accommodate".

As to the second motion to recuse, Plaintiffs' counsel now alleges "denial of an ADA accommodation [for Plaintiffs' counsel], ridicule of counsel's disability-related pacing, premature termination of direct examination, rejection of relevant testimony, and criticism of counsel's strategic witness order."  Doc. 262 at 6.  The Court already addressed several of the issues raised here in its Order issued on June 13, 2025.  *See id.*, Doc. 267.  But the Court will still address those issues in the group already designated as "failure to accommodate".

As to the third motion to recuse, Plaintiffs repeat their arguments from the first two recusal motions and state:

Throughout the proceedings, Judge Moorer has demonstrated a consistent and escalating pattern of conduct that undermines the appearance and reality of impartial adjudication.  The record is replete with examples of prejudgment in favor of Defendant, endorsement of Defendant's misrepresentations of law, selective and disparate enforcement of procedural rules, discriminatory comments and conduct regarding disability, refusal to accommodate Plaintiffs' counsel's known health condition, and improper threats and intimidation.

*Heimkes*, Doc. 326 at 2.

## C.    Denial of Request to Recuse

### i.    Timeliness

The Court first notes that timeliness of the first motion to recuse, filed the day before the non-jury trial was set to start which also happened to be a federal holiday.  The motion was filed

at 4:37 PM CD which would ensure the Court would not have time to address it on the record prior to the trial start date. Therefore, the Court took up the motion at the earliest opportunity (the morning of trial). Furthermore, these matters were all issues that by counsel's own admission occurred since 2022 which means the motion is untimely and counsel provides no reason which would establish good cause for the failure to file the motion sooner. In fact, some of the very rulings he complains of – denial of the preliminary injunctions – could have been appealed to the Eleventh Circuit – on an interlocutory basis (*see* 28 U.S.C. § 1291(a)(1) – yet Plaintiffs chose not to do so. Had they believed the Court was in error – that was certainly an opportunity to address it then rather than waiting over 2 years from those rulings. The untimely aspect of the motion alone provides sufficient basis for denial on that issue alone.

### ii.    Adverse Rulings

"[I]t is well settled that the allegation of bias must show that the bias is personal as distinguished from judicial in nature. As a result, except where pervasive bias is shown, a judge's rulings in the same or a related case are not a sufficient basis for recusal." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (citations omitted); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) (holding that a court's "judicial rulings alone almost never" satisfy the standard for recusal)); *Byrne v. Nezhat*, 261 F.3d 1075, 1103 (11th Cir. 2001) ("[A]dverse rulings alone do not provide a party with a basis for holding that the court's impartiality is in doubt.").

Moreover, when a motion for disqualification relies on other grounds, recusal is improper unless the moving party can show that the judge has "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky*, 510 U.S. at 556; *see id.* at 558 (Kennedy, J., concurring in judgment) ("[U]nder [28 U.S.C.] § 455(a), a judge should be

disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute."). A party cannot satisfy this standard simply because a judge "has expressed an opinion" on a legal issue "while on the bench," something the Supreme Court has long recognized is "common," and, in fact, "encourage[d]," by various codes governing judicial conduct. *Republican Party of Minn. v. White*, 536 U.S. 765, 779 (2002).

Plaintiffs make numerous complaints about the Court's rulings from the beginning to evidentiary rulings at trial. However, as noted above, adverse rulings are not a basis for recusal. The Court is not going to address each of these rulings individually as the record speaks for itself. The Court has made its ruling based upon its own research and a review of the record and evidence presented. The arguments put forth in the motions to recuse seem to argue that something along the lines of "the only reason you rule against us is because you are biased against us." While Plaintiffs' motion is rife with innuendo, none of their allegations come close to meeting the standard for disqualification.

Moreover, "candid reflections" about a "judge's assessment of a [a party's] conduct" offered "on the basis of facts presented during the proceedings . . . simply do not establish bias or prejudice." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 751 (D.C. Cir. 2016) (internal quotation marks omitted) (quoting *In re Barry*, 946 F.2d 913, 914 (D.C. Cir. 1991)).

Put simply, the party requesting recusal "must allege facts that would convince a reasonable person that bias actually exists". *Christo v. Padgett*, 223 F.3d 1324, 1333 (11th Cir. 2000) (citation omitted); *see also In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (determining that "a judge . . . should not recuse himself on unsupported, irrational, or highly tenuous speculation" (citation and quotation marks omitted)). "Adverse rulings are grounds for appeal but

rarely are grounds for recusal." *In re Walker*, 532 F.3d 1304, 1311 (11th Cir. 2008); *see also Bolin*, 225 F.3d at 1239 (stating that "it is well settled that the allegation of bias must show that the bias is personal as distinguished from judicial in nature" (citation and quotation marks omitted)); *Draper v. Reynolds*, 369 F.3d 1270, 1279 (11th Cir. 2004) (noting that adverse rulings "almost never" constitute valid grounds for recusal (citation and quotation marks omitted)).

Plaintiffs have not alleged sufficient facts to show that any potential bias is personal and distinguishable from the undersigned's judicial role.

### iii.   Co-counsel withdrawals and Communications

In addition to Mr. Eaton, at various points in this case there were additional counsel for the Plaintiffs. Specifically, four other lawyers at some point also represented the Plaintiffs. Yet on May 13, 2024, the first of several motions to withdraw were filed. The first motion was filed by Mr. Sanspree and Mr. Ingram and they cited withdrawal under Alabama Rule of Professional Conduct 1.16(b)(3). Doc. 73. Rule 1.16(b)(3) provides that "a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if: . . . (3) the client insists upon pursuing an objective that the lawyer considers repugnant or imprudent." Plaintiffs opposed the motion to withdraw by arguing that they made unsupportable and slanderous inferences to the Court about the Plaintiffs. Doc. 74.

The second motion to withdraw filed by Mr. Hadley on May 16, 2024, indicates that he was retained only for a limited purpose to help on the motion to dismiss which had been resolved. Doc. 76. Plaintiffs did not file a written opposition to his request.

The Magistrate Judge held a hearing on the motions to withdraw on May 28, 2025. *See* Transcript, Doc. 165. Mr. Eaton did not oppose the withdrawal of Mr. Hadley given the limited scope of representation. He did still oppose the withdrawal of Mr. Sanspree and Mr. Ingram. The

Court noted that they appeared approximately four months into the litigation, but that Mr. Eaton

had been on the case since its inception.  Mr. Eaton did mention he had been having health issues,

and he was surprised by the motion to withdraw and attributed it to "a bad hearing with [the

Magistrate Judge] and is ready to get out of the case and cut all ties with the case."  *Id*. at 8.[1]  Mr.

Ingram in response stated:

> Just briefly addressing very briefly Mr. Eaton's remarks, I -- to the contrary, I
> thought Your Honor was fair and equitable with all the parties at the last hearing.
> Several months ago, Mr. Eaton approached me about coming into this case and
> helping him and that he had a health issue.  I looked at it. He brought me some -- a
> lot of documents, and I determined that I thought all the plaintiffs had a very
> meritorious claim.  I then asked Mr. Sanspree to join in the case with me, as he is -
> - though I've been a plaintiff lawyer all my career for 39 years, he has much more
> experience in the federal court system than I do. And he agreed to come in. In the
> recent few weeks, we have had, meaning Mr. Sanspree and myself, disagreements
> with the plaintiffs about how to proceed in this case, discovery issues that have
> arisen in the past and are still somewhat pending in this case, and, quite frankly, we
> have vast differences of opinion, though the plaintiffs have a very meritorious claim
> on the ultimate value of these cases.  And simply put, Your Honor, having done
> this a very long time and where, in my humble opinion, the clients have
> unreasonable expectations, I know how this movie ends. And it's that the lawyer is
> blamed if the goals are not achieved.  And it would be imprudent, as we cited in
> our motion, to continue in this. And just being perfectly honest with you, I feel that
> the attorney-client relationship in these cases is irretrievably broken and that I am
> unable to steer this ship into the harbor as it is requested to be done.  And I think
> that I wish the plaintiffs very much -- the very best of success. And I hope that they
> are happy with the outcome in this case, but I'm not the one to get them there,
> respectfully, Your Honor.

Doc. 165 at 14-15.  Mr. Sanspree then added the following:

---

[1] For the purposes of this record, the Court notes the "bad hearing" referenced by Mr. Eaton
occurred before the Magistrate Judge on April 30, 2024, which related to discovery issues raised
by the Defendant in its motion to dismiss for failure to comply with discovery requirements.  *See*
Transcript, Doc. 169.  Mr. Eaton was not present, and it shows that there was at least some
underlying tension between the appearing attorneys and the clients regarding the scope of
discovery that would be produced.  Mr. Sanspree noted that he had never spoken to the clients.
Mr. Ingram had spoken to the clients on a few occasions but mostly had to go through Mr. Eaton.
Moreover, Mr. Ingram indicated he tried to impress upon the clients that they had to be in full
compliance with court orders.  The hearing occurred on April 30, 2024, and by May 13, 2024, Mr.
Sanspree and Mr. Ingram had filed their motion to withdraw.

> I mean, I would just say this: The objection ground for us withdrawing originally was that Mr. Eaton was unable to comply because of his health problems. But then he ultimately did comply. So, obviously, he can comply. And second, he stated to the Court that we were lead counsel. Then why go off on tangents, Your Honor, without running them by us and, number one, trying to schedule a deposition of opposing counsel, which I'm not -- we're not – I told him from the very beginning we're not wanting to participate in that. I think Mr. Ingram has told him we're not wanting to participate in that. But, nevertheless, there's a string of emails of Mr. Eaton trying to depose opposing counsel. In addition to what Mr. Ingram said.

*Id*. at 15-16. Ultimately, the Magistrate Judge found good cause to grant the motions to withdraw. *See* Doc. 81.

The third motion to withdraw was filed by Mr. Kelly after an adverse ruling on the motion for jury trial noting that he would not have signed on for a non-jury trial and that Plaintiffs and counsel have incompatible goals. *See* Doc. 168. The initial motion was denied because of a lack of specificity and noted: (1) it did not indicate whether he had conferred with the clients and (2) it indicated that in recent briefing he asserted that due to Mr. Eaton's health issues he had been retained to be lead counsel. *See* Doc. 171. Mr. Kelly then filed an amended motion to withdraw as counsel which the Court sealed due to certain attachments appearing to potentially be attorney work product and/or privilege. *See* Docs. 174, 175, 176. However, the motion was originally filed openly, and the Court will discuss generally some issues raised that relate specifically to the matters brought up in the recusal motions and the general issues are not privileged. First, the motion states: "Despite his designation as lead counsel, several motions have been filed in the case that L. Todd Kelly did not agree with and was not consulted with before they [sic] such filing." Next, Mr. Kelly states: "L. Todd Kelly has a vastly different evaluation in the above-referenced case which makes co-counsel Franklin H. Eaton and lead counsel L. Todd Kelly have incompatible goals. Moreover, despite the designation, Mr. Eaton has taken on the role of *de facto* lead counsel by filing motions without the input from Kelly." Doc. 174 at 2. The Court set a hearing on January

23, 2025. *See* Docs. 178, 179. The Court ordered the Plaintiffs to be present along with both Mr. Kelly and Mr. Eaton. Mr. Eaton filed a motion to continue the hearing citing health issues. *See* Doc. 183. However, within that same time frame, Mr. Eaton filed robust responses to other dispositive motions. Additionally, the Court initially received an email from Mr. Eaton's email account but signed by his wife stating that he had a flair up and would not be attending the hearing scheduled the next day. However, due to an unexpected winter storm, the Court also continued the hearing to January 28, 2025, which inherently gave him a short continuance. *See* Docs. 182, 184. The Court also informed both Mr. and Mrs. Eaton as follows:

> This is not a situation like a "note" from his wife will excuse Mr. Eaton from school. Rather, if Mr. Eaton is so ill that he cannot attend court proceedings, then the Court will need medical documentation which states what his restrictions are and for how long those restrictions will last. Additionally, should this be a continued issue, then perhaps it is a question of whether Mr. Eaton can continue the practice of law. The Court does not know and would normally not pry into counsel's health; but at this stage, the Court cannot continue to put off resolution of this motion to withdraw by Mr. Kelly, so the motion to continue is DENIED. Indeed, the Court cannot put off resolution of this case – whether through dispositive motions or ultimately the non-jury trial.
>
> The Court will extend to Mr. Eaton the same accommodation that it is providing to his co-counsel. This is a remote hearing, and Mr. Eaton may turn off the camera and/or call-in in lieu of video attendance.
>
> Further, the Court reminds the Plaintiffs that they (the clients) are also expected to attend. The Court has very specific information it intends to relay to all parties in this case and the hearing should last no more than fifteen (15) minutes. The Court does not expect any argument from counsel or anything that would require additional preparation beyond what was already submitted to the Court.

Doc. 184 at 2. Despite that admonition and warning, Mr. Eaton failed to attend the hearing and did not provide the Court any additional update. *See* Doc. 187. The Court provided a robust order summarizing the motion to withdraw hearing and also noted that the Court declined at this stage to entertain a finding of contempt or to impose sanctions. The Court also summarized the instructions given to the Plaintiffs while Mr. Kelly was also still present despite being permitted

to withdraw so that the information would be relayed to Mr. Eaton and while Defense counsel was

also on the line.  *Id.* To be clear, it was not an *ex parte* communication as indicated by Mr. Eaton

in his motions to recuse, but instead on-the-record information conveyed to his clients at a hearing

for which he (for whatever reason) failed to attend despite a clear order to do so.  Specifically, the

Court made the following findings and relayed the following information:

> (1) The Court finds that Todd Kelly has established good cause for the motion to withdraw and therefore, the motions (Docs. 174, 176, Case 1; Docs. 110, 112, Case 2) are GRANTED. Mr. Kelly is no longer co-counsel in this case which leaves Plaintiffs with just Mr. Eaton as counsel.

> (2) The Court believes that it made adequate accommodations to Mr. Eaton that he should have been able to attend the virtual hearing. The Court had provided notice that it did not expect counsel to be prepared for oral arguments or any substantive conversations beyond what had already been filed on the motion to withdraw. The purpose of the short hearing was to convey that this case will progress to its conclusion whether that is through settlement, resolution of the dispositive motions, or the non-jury trial scheduled for the June 2025 civil trial term before the undersigned. Put simply, these cases were filed in November 2022 (Case 1) and December 2022 (Case 2) and the Court will not delay this case further.

> (3) If this case proceeds to the non-jury trial, then it will occur in June 2025 with or without Mr. Eaton. Plaintiffs are put on notice that there is no constitutional right to the appointment of counsel in a civil case and the Court notes that if Mr. Eaton cannot proceed, they may either seek new counsel to work with Mr. Eaton or to take over the cases. Even if they find other counsel to take over or supplement Mr. Eaton, this case will not be continued further. Otherwise, they can proceed pro se at the non-jury trial(s).

> (4) If the Plaintiffs proceed pro se, the Court cannot provide them leniency as to the Federal Rules of Civil Procedure, Federal Rules of Evidence, and/or the S.D. Alabama local rules. The Plaintiffs may review the Pro Se Litigant Handbook and the local rules here: https://www.alsd.uscourts.gov/filing-without-attorney. Further, neither the Court nor its staff may provide legal advice or assistance in the pursuit of this case.

> (5) Mr. Kelly has been DIRECTED by the Court to convey the same message to Mr. Eaton since he was in attendance and Mr. Eaton failed to attend.

> (6) The Plaintiffs both acknowledged the Court's directives and indicated they understood.

> Mr. Eaton is once again reminded that attendance at court proceedings is not optional nor is a note from his wife an acceptable form of documentation. Finally, even if a motion is filed, it is the Court's decision and not counsel on whether or not to grant it and excuse his attendance. Future violations of the Court's orders may result in the imposition of sanctions under Fed. R. Civ. P. 11.

Doc. 187 at 5-6. This order was issued on January 29, 2025.

As part of the first motion for recusal, Plaintiffs argue that the Court allowed Sanspree and Ingram to withdraw over Eaton's objections. *See* Doc. 244 at 5. Next, Plaintiffs argue that Eaton moved to stay the cases until new lead counsel could be secured which was denied. *Id*. at 5-6. Finally, Eaton's request to extend discovery and dispositive motions deadlines due to ongoing health issues and the need for new counsel were denied. *Id*. at 6. These were not orders issued by the undersigned, but rather ones issued by the assigned Magistrate Judge. Therefore, any "bias" that Plaintiffs attempt to argue cannot be attributed to the undersigned as it was not the undersigned's order. Moreover, the timeframe for objecting to the Magistrate Judge's order had long since passed. *See* Fed. R. Civ. P. 72(a) (A party may seek review of a magistrate judge's ruling on a non-dispositive matter by serving and filing objections within fourteen days after being served with a copy.). Further, even reviewing the order, in light of the record, the Court finds that the orders were well supported by the record and not clearly erroneous. Therefore, it is merely an adverse ruling and not a "biased" ruling.

Next, the motion to recuse argues that the denial of the withdrawal hearing as to Mr. Kelly, proceeding without Mr. Eaton, and "engag[ing] in ex parte communications with plaintiffs, threatening: 'If [Eaton] does not have other counsel lined up, then Mr. Heimkes and Ms. Allfrey will be pro se'" are grounds for recusal. *Id*. at 6-7. He further argues improper ex parte communications at the January 28, 2025 withdrawal hearing. *Id*. at 8-9. The Court has already well explained the hearing that occurred on January 28, 2025. Despite protestations to the contrary,

this is not indicative of bias or even *ex parte* communications. Rather, these were on the record rulings and explanations that occurred because Mr. Eaton failed to attend despite a brief delay (due to weather) on the motion to withdraw hearing with no additional communication to the Court. This was also in spite of the Court's written order with clear instructions and an accommodation provided. Moreover, the discussion was not *ex parte* because it occurred in the presence of Mr. Kelly and defense counsel. The only person not there was Mr. Eaton – through his own decision to excuse himself. There was no threat. Rather, the Court provided an acknowledgement of the practical realities of litigation in that cases proceed on a schedule and that with or without Mr. Eaton and/or additional counsel they may secure this case was going to proceed to trial. If they did not have counsel, then they would proceed *pro se*. Finally, Plaintiffs argue that the Court allowed Mr. Kelly to withdraw on unsworn statements. However, the Court notes that Mr. Kelly filed his motions with a signature which as an officer of the court make him subject to Rule 11(b). The Court further scheduled a hearing where both Plaintiffs and Mr. Eaton could have provided any additional information, but Mr. Eaton failed to attend and Mr. Eaton failed to apprise anyone (i.e. the Court or his co-counsel) that he would not be there.

### v.    Denial of Continuances and Failure to Accommodate

Plaintiffs' counsel throughout these proceedings has claimed health problems related to "mold exposure, Long Covid-19, and side effects from the Covid-19 vaccine" and further states "[t]hese conditions cause fatigue, brain fog, and other symptoms that necessitate frequent breaks and limit sustained work periods, directing [sic] impacting counsel's ability to complete filings on strict timelines without accommodation." Doc. 302 at 3. However, even assuming that Plaintiffs' counsel is disabled, the requested accommodation must be reasonable. Plaintiffs' counsel was not seeking a reasonable accommodation, he was seeking carte blanche to take as long as he wanted

on whatever he wanted, to set his own deadlines when he felt like it, and to delay proceedings without regard to anyone's schedule but his own. Even the letter he attached (dated April 2, 2025, and written to the Presiding Circuit Judge for Baldwin County, Alabama), he essentially requests that he be permitted a permanent excuse from attending in-person proceedings. That is not a reasonable request from a lawyer who practices litigation. If a lawyer can no longer reasonably meet deadlines or attend proceedings, then he may no longer be fit to practice law in the litigation sector or he may need to apply for disability benefits. Courts, by their very nature, are public proceedings that require in-person presence, a schedule, and a need to conduct proceedings in an efficient manner so as not to burden parties and the courts themselves.

The Court saw nothing that the Court saw as health related to explain the deficiencies in Mr. Eaton's performance. Rather, it was obvious that he was simply unprepared for trial and "winging it" during the questioning. Further, he refused to cooperate with the requirement to prepare a joint pretrial document until the last possible second and even then did not provide everything. *See* Doc. 213. While the Court ultimately declined to dismiss the claims as requested by the Defendant (*See* Docs. 220, 251) as a sanction, the reality is that this is one more example of Plaintiffs' counsel thinking he can simply do whatever he wants without regard to the standing rules and court orders. Plaintiffs' counsel refuses to obey court orders when he disagrees with them (hence one reason why several co-counsel elected to withdraw), files motions without conferring with his co-counsel (another reason some chose to withdraw), and believes that he should be able to practice law in any way he wants without restriction. That is NOT a reasonable accommodation request. Nor is it a basis for recusal that the Court does not give him carte blanche to practice in whatever manner he chooses.

As noted by the Court's prior order (Doc. 267), the time limits on his presentation became

necessary due to Plaintiffs' counsels lack of preparedness and his treatment of the direct of witnesses like a deposition where he was simply fishing for information – seemingly to use this bench trial as a means to obtain discovery for the related case pending in state court. The Court will not repeat its full order here, but reiterates that Plaintiffs' counsel said that the liability portion of this trial would be approximately 2 days.[2] As the case moved into a second week, it became clear that more structure and time limits on the presentation of evidence would be necessary. *See id*. Other courts have found the same. *Id*. at 3-4 (citing collection of cases).

The bottom line is that a litigation practice is one driven by deadlines, rules, and court orders. The Court is not required to suspend those requirements simply because Plaintiffs' counsel asks for it and says it relates to his health issues. While some short delays related to a counsel's health would be reasonable to request-and were given, in this case-to expect a general and indefinite suspension of deadlines and stay of the case time and time again is not. To do so would simply not be reasonable for anyone – not the public, not the parties, opposing counsel, and indeed even the Court itself. Rather, it calls into question Mr. Eaton's continued ability to practice law. In fact, the Court has made herculean efforts to separate out his clients' claims from Mr. Eaton's poor advocacy to ensure that they were able to present their respective cases at trial. Had this case been before a jury, the Court would have been far more restrictive and stringent in its pretrial and

---

[2] The Court also notes that in a status conference on February 4, 2025, the Court also inquired of the likely trial length to which Mr. Eaton responded with the following:

> ATTORNEY EATON: If we can get some matters resolved up front, such as --
> THE COURT: Stipulations and things of that nature.
> ATTORNEY EATON: Correct. If we can narrow that down, then three days max, in my opinion.

The Court does not have an official transcript of the proceeding, but it was transcribed by the court reporter, and a rough transcript is available to the Court. Should the parties wish to request an official transcript, they are free to do so.

evidentiary rulings. Instead, because it was a bench trial, the Court was more liberal with the rules of evidence and procedure than perhaps it should have been with the Plaintiffs.

Moreover, the Court did not deny all continuances. When Mrs. Allfrey had her medical event on July 10, 2025, the Court ultimately suspended proceedings at Plaintiffs' requests until Monday, July 14, 2025, as the Court determined that request <u>was reasonable</u>. Rather, the general delays – i.e. continuances in discovery, requests to amend pleadings to correct deficiencies long after the deadlines had passed (e.g. the late filed request to correct the jury demand long after the court had notified Plaintiffs of the deficiency), and the request to wait for yet more time for additional counsel to be found after several competent and capable counsel withdrew due to clear issues in working with Mr. Eaton and the Plaintiffs – were not reasonable and therefore, the Court is not required under the ADA or any other statute to grant such requests. Plaintiffs and their counsel chose to bring this litigation, and it is the Court's obligation to push it to a conclusion not only for the parties, but for the public and the Court's judicial economy and schedule.

### III.    SANCTIONS

The Court will not address the question of sanctions here as the Court has already issued several show cause orders (Docs. 316, 318) and scheduled another hearing for September 3, 2025, to address the motions for sanctions.[3] The Court has received the full briefing (Docs. 304, 317, 319, 320, 321, 322) and will resolve those issues by separate opinion after it completes a full review to include the evidence and argument presented by counsel at the hearing.

---

[3] The motions for sanctions were originally set for a hearing that was held on August 21, 2025, but due to Plaintiffs' counsel's lack of preparedness, the Court found it necessary to reschedule the hearing.

**IV.    CONCLUSION**

Accordingly, Plaintiffs' *Motion to Recuse the Honorable Terry F. Moorer Pursuant to 28 U.S.C. § 455(a) and § 144* (Doc. 244, filed 5/26/25), *Motion for Recusal or, in the Alternative, Mistrial* (Doc. 262, filed 6/4/25) and *Motion to Recuse* (Doc. 326, filed 8/20/25) are all **DENIED**.

**DONE** and **ORDERED** this 10th day of September 2025.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE