**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**MARK HEIMKES, and SHEARLDINE**
**MARIE ALLFREY,**

      **Plaintiffs,**

**v.**                                                    **1:22-00448-TFM-N**

**FAIRHOPE MOTORCOACH**
**RESORT CONDOMINIUM OWNERS**
**ASSOCIATION, INC.,**

      **Defendant.**

**<u>PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANTS MOTION</u>**
**<u>TO STRIKE AND REPLY IN FURTHER SUPPORT OF PLAINTIFFS</u>**
**<u>MOTION TO REOPEN THE RECORD AND ADMIT NEWLY</u>**
**<u>DISCOVERED EVIDENCE</u>**

COME NOW the Plaintiffs, Mark Heimkes and Sheraldine Marie Allfrey, by and through undersigned counsel, and respectfully submit this Response in Opposition to Defendant Fairhope Motorcoach Resort Condominium Owners Association, Inc.s Motion to Strike and Reply in Further Support of Plaintiffs Motion to Reopen the Record and Admit Newly Discovered Evidence. Defendants Motion to Strike is procedurally baseless and substantively frivolous. It should be denied in its entirety. The 2025 FMRCOA Board Meeting Minutes are newly obtained, highly material party admissions that were unavailable to Plaintiffs during discovery or

trial. Their admission is essential to prevent manifest injustice and to ensure the Court has the complete and accurate picture of the very operations Defendant has denied for years before it renders any ruling on liability.

## I.   DEFENDANTS MOTION TO STRIKE IS PROCEDURALLY AND SUBSTANTIVELY FRIVOLOUS

Defendants' sole basis for striking the Motion is the electronic signature line that reads /s/ Franklin H. Eaton, Jr. By Permission. This is not a violation of Rule 11(a). The document was filed through counsel of records CM/ECF account with full authorization. The notation By Permission was included only to note internal drafting assistance provided by Mr. Kris Allfrey after counsel of record expressly authorized the filing. Counsel of record takes full responsibility for the content and filing in accordance with the Southern District of Alabama's CM/ECF Administrative Procedures and Federal Rule of Civil Procedure 11. Out of an abundance of caution, Plaintiffs' counsel will immediately file a revised signature page bearing only the standard /s/ notation if the Court deems it necessary. Defendants attempt to manufacture a technical defect where none exists is itself the type of meritless filing that has unnecessarily prolonged this litigation and imposed needless expense on Plaintiffs. The Motion to Strike should be denied outright.

## II.    THE 2025 MINUTES ARE NEWLY OBTAINED PARTY ADMISSIONS THAT REVEAL FMRCOAS HANDS-ON CONTROL OVER THE RENTAL PROGRAM AND COMMON-AREA OPERATIONS

Defendant repeatedly labels the minutes newly created and claims they are cumulative of trial evidence or irrelevant to the 2022 timeframe. These characterizations are incorrect and contradicted by Defendants own arguments in its Motion to Strike. If the Association truly has no involvement in the rental program, as it claims in its defense and in trial testimony, then the detailed, repeated Board discussions in its own minutes about the rental program manager, rental advertising, rental revenue trends, insurance classification caused by the rental program, and corporate sponsorship payments for use of the Owners Lodge beg the question: why is the Board spending its time and resources on these matters at all? The answer is clear from the minutes themselves: FMRCOA exercises direct, hands-on control over the very public-facing activities that make the Resort a place of public accommodation. These are party admissions under Federal Rule of Evidence 801(d)(2) and self-authenticating business records under Federal Rule of Evidence 803(6) and 902(11). They require no additional testimony and are directly material to the liability issues still pending before the Court.

### A.    March 14, 2025 Minutes Demonstrate the Boards Systematic Control Over Official Communications to Owners

The minutes state verbatim: Notice was posted in the Lodge and emailed to members; a new practice being adopted. This entry shows the Boards adoption of a

3

formal, systematic email communication policy for all official resort matters. When read together with the later minutes detailed below, it undercuts any claim that the Board is separated from communications that reach the public through the rental program.

**B.      June 27, 2025 Minutes Explicitly Tie the Campground Insurance Classification to the Rental Program and Show FMRCOAs Active Management of the Resulting Public-Accommodation Risk**

Under the Insurance Report the Board recorded verbatim: efforts ongoing to correct classification with underwriters from campground to HOA to reduce future exposure. Same exclusions remain. The Board reduced the per-lot insurance assessment from 565 in 2024 to 318.80 but expressly acknowledged that the classification problem persists precisely because of the rental activities. The Board further noted that costs are paid from operating dues and emergency account with replenishment from assessments to follow and that the same exclusions remain while efforts continue to correct the campground label.

These are Defendants own words in its official minutes. They prove FMRCOA itself understands that the rental program and its public advertising are the direct cause of the campground classification that every insurer applies to the Resort. The Board is not passively observing the problem; it is actively directing efforts to reclassify the property while continuing to operate the rental program that creates the exposure. This is the exact type of control over transient lodging that

4

brings the Resort within the definition of a place of public accommodation under 42 U.S.C. section 12181(7)(A). The minutes confirm the public nature of the operations and the Boards hands-on involvement in managing the resulting insurance and legal risks.

**C.      September 13, 2025, Minutes Show Direct Board Oversight of the Rental Program Manager and Public Advertising**

The minutes state: Julie Stuart was also present at the request of the Board to present and discuss issues related to the rental program. The Rental Program manager provided a detailed report on declining rental nights year-over-year since COVID peak, attributing declines to market changes and local oversaturation and social media / Yelp negative reviews and was tasked with developing a proposal/alternative structure (including fee considerations) for Board review at a dedicated Rental Meeting. Insurance discussions again blamed motor coach in the name and rental program advertising for the campground classification, with proposals for a DBA renaming to Fairhope Resort to mitigate risks.

These entries prove the Board itself summons the rental program manager to its meetings, receives detailed financial and marketing reports, directs structural and fee changes, and actively manages the public advertising that causes the campground label.

**D.      September 18, 2025, Special Meeting Minutes Reveal the Boards Active Efforts to Restructure the Rental Program to Avoid the Consequences of Operating a Public Accommodation**

The Board reopened the meeting specifically for Insurance & HOA Classification and recorded the following verbatim statements: insurers categorize the Association as a campground due to motor coach in the name and rental program advertising. Alternatives considered: Legal advice on adopting a DBA (doing business as) Fairhope Resort while retaining existing name. Separation of rental program from HOA operations to reduce exposure. State Farm specializes in HOAs but declined coverage due to rental program. If separated, premiums could be substantially reduced. Board emphasized the Association itself does not rent lots but only sets rental parameters. Motion: Pat to consult attorney Danny Calhoun for legal opinion on renaming/structural options and coordinate with insurance broker. Motion seconded and approved.

The Board's approval of paid corporate sponsorships for use of the Owners Lodge and pool is directly analogous to renting the facility to local businesses or community organizations. The U.S. Department of Justice has expressly stated in its Title III Technical Assistance Manual that when a condominium association restricts use of a party room or clubhouse to owners and guests only, the facility is not a place of public accommodation, but that the result changes if the association rents or makes the facility available to the general public or local businesses. See U.S. Dep't of Justice, ADA Title III Technical Assistance Manual, § III-1.2000, Illustration 2 (1993). FMRCOAs acceptance of 3,000 from Marathon (double the prior year's

6

amount) for a designated Marathon Night reception, and similar sponsorship from Great American, constitutes precisely such rental and opening of the Lodge and pool to non-owners and the general public. These paid events therefore render the facilities places of public accommodation under Title III during the times they are used.

Corporate sponsorships for use of the Owners Lodge and pool were also approved: Marathon (Ryan) sponsorship confirmed at 3,000, doubling last year's contribution. Friday night reception to be designated as Marathon Night. Marathon to advise on catering/format; Association will assist if needed. Great American (Louisiana partners): Invitation to attend extended. Saturday/Saturday night reception to be designated Great American Night.

These entries show the Board is actively considering structural separation of the rental program solely to reduce the public-accommodation exposure reflected in insurance denials and campground classification. The Board sets rental parameters, collects sponsorship revenue for Lodge use, and opens common areas to corporate participants and their guests. The 3,000 payment (doubling the prior year's amount) is direct revenue to the Association for use of the Lodge and pool, contradicting any claim that the facilities are closed to the public.

**E.    These Are Self-Authenticating Party Business Records Requiring No Additional Testimony**

These minutes are Defendants own regularly kept Board records. They are self-authenticating under Federal Rule of Evidence 902(11) and qualify as business records under Federal Rule of Evidence 803(6). They constitute party admissions under Federal Rule of Evidence 801(d)(2). No live witnesses or cross-examination are required. Defendants' suggestion in its Motion to Strike that admission would require new testimony is simply an attempt to manufacture delay.

## III.   DEFENDANT CANNOT HAVE IT BOTH WAYS: ITS OWN MOTION TO STRIKE AND TRIAL POSITION ARE CONTRADICTED BY ITS OWN MINUTES

In its Motion to Strike, Defendant argues the minutes are cumulative of trial testimony about the rental program and corporate sponsorships. Yet Defendant simultaneously claims the Board has no control over the rental program and that the facilities are a closed private gated residential community. If the minutes are truly cumulative, then they confirm the Boards involvement that Defendant denied at trial through coached testimony that its attorney told the Directors that the Association is not subject to the ADA. If they are not cumulative, then they are newly material evidence of control that was not fully developed at trial. Either way, the minutes are relevant and admissible.

The minutes prove the Board requires members to use the rental program or face fines, controls rental parameters and pricing, summons the rental manager to meetings, directs advertising, collects corporate sponsorship revenue for Lodge use,

and actively works to restructure the program to avoid the public-accommodation consequences. These are not the actions of a private residential community with no involvement in transient lodging. They are the actions of an entity operating a place of public accommodation.

## IV.    THE MINUTES ARE DIRECTLY RELEVANT TO THE 2022 TIMEFRAME AND TO LIABILITY

The minutes repeatedly reference declining rental nights year-over-year since COVID peak and ongoing efforts to address the campground classification caused by the rental program and advertising. These admissions confirm the rental program, public advertising, corporate sponsorship events, and Board control have continued unchanged since the discriminatory acts in 2022. The minutes therefore go directly to the character of the facility at the time of the violations and are material to the liability issues still pending before the Court. They may also be used in the damages phase if necessary.

## V.    THE COURTS BROAD DISCRETION TO REOPEN THE RECORD SHOULD BE EXERCISED TO AVOID MANIFEST INJUSTICE

Under Federal Rule of Civil Procedure 43(c), in a bench trial the Court may reopen the record to receive additional evidence where justice requires. Trial courts have discretion to reopen for newly discovered evidence to avoid injustice. No judgment has been entered. The evidence is highly material, non-cumulative, and was produced to Plaintiffs on December 20, 2025, in response to a direct request.

9

Plaintiffs promptly moved to reopen. Exclusion would reward Defendants control over the timing of its own record production and would leave the record materially incomplete on the single most important issue in the case.

## VI.    CONCLUSION

Defendants Motion to Strike should be denied in full. Plaintiffs Motion to Reopen the Record should be granted immediately, and the 2025 FMRCOA Board Meeting Minutes should be admitted into evidence. The Boards own words in these minutes provide the clearest confirmation yet that FMRCOA operates a commercial short-term rental program open to the general public, uses common areas for revenue-generating events open to non-owners, and actively manages and advertises that program while internally acknowledging the resulting campground classification and desperately trying to restructure it to avoid the legal consequences. To exclude this evidence would reward Defendants evasion and perpetuate the injustice Plaintiffs have endured since 2022. Justice and the integrity of these proceedings demand that the Court consider the Boards own admissions before rendering any decision on liability.

Respectfully submitted this 20th day of February 2026.

/s/ Franklin H. Eaton, Jr.
Franklin H. Eaton, Jr.
Attorney for Plaintiffs
THE EATON LAW FIRM, LLC

10

3145 Gulf Shores Pkwy
Gulf Shores, AL 36542
(256) 738-4730
franklineatonjr@mac.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February, 2026, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Franklin H. Eaton, Jr.*